THE HONORABLE JOHN H. CHUN

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROXANN BROWN and MICHELLE SMITH, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC; GPS SERVICES, INC.; and THE GAP, INC., inclusive,<br><br>Defendants. | Case No. 2:23-cv-00781-JHC<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND TO STRIKE IMPROPER REMEDIES**<br><br>Hearing Date: June 23, 2023 |

## I.  INTRODUCTION

Defendants Old Navy, LLC; Old Navy (Apparel), LLC; Old Navy Holdings, LLC; GPS Services, Inc.; and The Gap, Inc. (collectively, "Defendants" or "Old Navy") move to (1) dismiss Plaintiffs' claims for purported violations of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190 et seq., and Consumer Protection Act ("CPA"), RCW 19.86 et seq., and (2) strike Plaintiffs' improper request for statutory damages.

Plaintiffs allege Old Navy violated CEMA when it sent them emails that purportedly contained false or misleading information in the subject lines. Compl. ¶¶ 2, 4–5. Plaintiffs also

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 1

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

contend that Defendants' alleged CEMA violations each constitute a per se violation of the CPA. These claims fail as a matter of law because the nature of Plaintiffs' allegations does not fall within the scope of the statutory scheme enacted in CEMA. Specifically, CEMA only prohibits email subject lines that misrepresent the *commercial nature* of the email. Further, once Plaintiffs' CEMA claims are dismissed, they lack any plausible basis to allege all of the elements of a CPA claim as well.

This Court should dismiss Plaintiffs' claims now because, even if their allegations were true, they would not give rise to violations of CEMA or the CPA. In addition, Defendants move to strike Plaintiffs' request for statutory damages, which would not be available on either of Plaintiffs' claims even if this Court were to permit those claims to go forward.

## II.   BACKGROUND

Plaintiffs contend Defendants violated CEMA, and in turn the CPA, by sending emails that purportedly "contain[ed] false or misleading information in the Subject Line[s]." RCW 19.190.020(1)(b). Plaintiffs allege they received emails from Defendants notifying them of upcoming sales and discounts for a particular period of time. Examples include: "$12 women's compression leggings, today only," "No joke!  $12.50 JEANS (today only)," and "3 DAYS ONLY! 50% OFF DRESSES, SHORTS, & ACTIVE!" Compl. ¶¶ 36, 38, 40. Plaintiffs cite over 40 similar emails they claim are false or misleading, and they assert that more will be identified with further discovery. *Id.* ¶ 90.

Plaintiffs allege these emails created a false sense of urgency because Defendants would advertise that the sales were for a limited time period despite preconceived intentions to extend the sales. *See id.* ¶¶ 18–63. For the avoidance of doubt, Defendants deny that they have such a "practice of sending serial emails about sales with imaginary time limits [or] fake extensions." *See* Compl. ¶ 4. But, even accepting Plaintiffs' allegations as true for purposes of this motion, those allegations are insufficient to state a claim under CEMA or the CPA.

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 2

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

### III. ARGUMENT

In the late 1990s, the Washington Legislature sought to address the rising and persistent problem of unwanted and misidentified commercial emails, commonly known as spam. Washington residents were seeing a rise in unsolicited commercial emails that resulted in clogged emails boxes and headaches for email recipients.[1] *See* Declaration of Damon C. Elder ("Elder Decl."), at Ex. A. At the time, one common complaint among Washingtonians was that they would often receive emails containing advertisements that masqueraded under subject lines that made them appear to be non-commercial in nature. *Id.* Someone would receive an email with the subject line reading "Hi old friend," only to open the email and find a commercial email promoting various unwanted products. *Id.* at 28.

As a result, the Washington legislature enacted CEMA to prohibit sending commercial emails that contain false or misleading subject lines. RCW 19.190.020(1). At the time, the Washington consumer protection laws had been in place for over 30 years and had already prohibited false advertising in emails and other communications more generally. Thus, CEMA was enacted, in part, to combat the unique problem of preventing spammers from sending commercial emails that contained subject lines that mislead the recipient as to the *commercial nature* of the email. Only months ago, Judge Martinez expressly recognized this narrow scope of CEMA in a carefully reasoned opinion, and, therefore, dismissed analogous claims that failed to allege that a defendant retailer sent emails with subject lines that concealed their commercial nature. *See Chen v. Sur La Table, Inc.*, --- F. Supp. 3d ---, 2023 WL 1818137, at *6 (W.D. Wash.

---

[1] A compilation of the legislative history of CEMA was filed as an exhibit, and heavily relied on by this Court, in *Chen v. Sur La Table, Inc.*, --- F. Supp. 3d ---, 2023 WL 1818137 (W.D. Wash. 2023). *See* Mot. to Dismiss, Ex. A at 4–5, *Chen v. Sur La Table, Inc.*, No. 2:21-CV-00370-RSM (W.D. Wash. Feb. 8, 2023) (No. 8-3) (hereinafter "Exhibit A"). As Defendants cite the relevant portions of the *Chen* opinion that rely on that legislative history, Defendants request the Court take judicial notice of this exhibit and have attached it as Exhibit A to the declaration of defense counsel for convenience. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) ("Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports, [] court documents already in the public record and documents filed in other courts[.]") (citations omitted); *see also Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts are permitted to take judicial notice of documents on file in federal and state courts).

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 3

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Feb. 8, 2023) ("Mr. Chen's FAC does not allege that Sur La Table's [subject][2] lines concealed the commercial nature of their emails. . . . As a result, Mr. Chen fails to state a CEMA claim, and his claim must be dismissed.").

Like in *Chen*, Plaintiffs have brought a CEMA claim alleging Defendants made misleading statements in email subject lines about promotions at Old Navy. But, as described in more detail below, CEMA does not prohibit false or misleading statements in email subject lines *generally*; instead, it only prohibits false or misleading statements concealing the commercial nature of the email itself. *Id.* The Complaint is devoid of any allegations regarding subject lines falling within this proper scope. Thus, Plaintiffs' CEMA and CPA claims—the latter of which is predicated entirely on alleged CEMA violations—fail, and the Complaint should be dismissed with prejudice.

### A. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id.*

In addition, the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues

---

[2] This sentence in Judge Martinez's opinion referenced "signature" lines, but it is clear in context that the use of the word "signature" instead of "subject" was only a typographical error. *Id.*

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 4

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). A court may strike requested relief that a plaintiff does not have a right to obtain. *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) ("[w]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.") (quoting *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974)).

### B. Plaintiffs Fail to State a Claim Because CEMA Only Concerns Subject Lines that Mislead Recipients as to the Commercial Nature of the Email Itself

CEMA prohibits the sending of a commercial electronic mail message that either:

(a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message; or

(b) Contains false or misleading information in the subject line.

RCW 19.190.020(1). Plaintiffs contend that Defendants violated subsection (b) by sending promotional emails containing sales of products for a limited time. Compl. ¶ 103. Plaintiffs do not and cannot argue that the subject lines in Defendants' emails misled the recipients about the *commercial nature* of the emails—rather, they argue that Defendants misstated the *duration* of specific promotions and sales that happened to be referenced in the subject lines. Compl. ¶¶ 2–6.

Plaintiffs' CEMA claim fails because subsection (b) only prohibits subject lines that are "false or misleading" as to the *commercial nature* of the email. This position was recently adopted by Judge Martinez in *Chen* and, as set forth below, is supported by Washington's consumer protection scheme and the legislative history of CEMA.

#### 1. Judge Martinez recently decided this issue and dismissed analogous claims.

Recently, Judge Martinez wrestled with identical issues in *Chen v. Sur La Table, Inc.*, and his analysis exemplifies why CEMA is not applicable to Plaintiffs' claims. In that case, defendant Sur La Table, like Defendants here, was alleged to have sent promotional emails to consumers containing false or misleading information in subject lines. *Chen*, 2023 WL 1818137, at *1. Sur

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 5

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

La Table was accused of sending emails containing phrases like "XX% Off Your Purchase" and "XX% Off One Item" when in fact some of its most popular products were excluded from the advertised sale. *Id.*

Chen, like Plaintiffs here, alleged Sur La Table's emails violated CEMA and thus, per se, the CPA. *Id.* Sur La Table moved to dismiss, arguing that CEMA is only violated when the sender makes false or misleading statements in the subject line that conceals the commercial nature of the email. This Court reviewed the statutory text, Washington case law, and legislative history of CEMA and concluded that "subsection (b) specifically prohibits false and misleading information as to the nature of the email, i.e.[,] that the email is an advertisement." *Id.* at *6. Judge Martinez recognized that Washington courts had not directly addressed this question but found that Washington case law nevertheless supported this conclusion as well. *Id.* at *4 ("While Washington courts have not yet directly addressed the interpretation of subsection (b), Washington case law does support [defendant's] interpretation.") (citing *State v. Heckel*, 24 P.3d 404, 410 (Wash. 2001)).[3]

At bottom, CEMA was not enacted to resolve the issues for which Plaintiffs complain, and the Court should dismiss their claims.

### 2. The plain language of CEMA is susceptible to multiple interpretations.

Judge Martinez began his analysis by recognizing that subsection (b) of CEMA is vague and open to interpretation. When interpreting a state statute, federal courts must interpret the law as would the state's highest court. *See, e.g.*, *In re Kolb*, 326 F.3d 1030, 1037 (9th Cir. 2003). Washington courts first look at the plain language of a statute, assuming the legislature "meant exactly what it said." *Duke v. Boyd*, 942 P.2d 351, 354 (Wash. 1997). But when a statute is vague or ambiguous, courts should also consider legislative history and "circumstances surrounding the enactment of the statute." *Five Corners Family Farmers v. State*, 268 P.3d 892, 900 (Wash. 2011).

---

[3] Judge Martinez also noted that *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019), cited in Chen's Opposition and Plaintiffs' Complaint, did not discredit the court's interpretation that Chen had not pled a CEMA claim. *Id.* at *4.

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 6

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

1  A statute is ambiguous if susceptible to more than one reasonable interpretation. *Id.*

2  Judge Martinez reviewed the plain language of subsection (b) and determined that it was susceptible to two reasonable interpretations: "CEMA could apply to false or misleading 'knowledge obtained from the investigation, study or instruction' of the header alone (nature of the email) or it could appl[y] to false and misleading 'knowledge obtained from the investigation, study or instruction' of the header *and* body of the email (contents of the email)." *Chen*, 2023 WL 1818137, at *3 (emphasis in original). In light of this ambiguity, Judge Martinez appropriately relied on CEMA's statutory scheme and legislative history to determine the scope of CEMA and whether it encompassed the plaintiff's claims.

        3.    <u>The context of Washington's overall consumer protection scheme supports giving CEMA a narrow scope.</u>

Judge Martinez also found this interpretation of CEMA was supported by Washington's overall consumer protection scheme. The CPA, which predates CEMA, is Washington's general consumer protection act. The CPA prohibits false advertising and consumer fraud generally. *Fisher v. World-Wide Trophy Outfitters, Ltd.*, 551 P.2d 1398, 1403 (Wash. Ct. App. 1976). CEMA, meanwhile, specifically focuses on false and misleading subject lines, and not on false or misleading information in the bodies of emails. *See supra* III(B)(1). Allowing Plaintiffs' CEMA claim to proceed makes little sense when viewed in this context. To do so, the Court would have to find that the Washington legislature created a robust general prohibition on false advertising everywhere, but that this scheme goes out the window in the extremely narrow context of email *subject lines*—carving out unique treatment for misrepresentations that happen to occur in subject lines, instead of elsewhere in an email communication. Such a scheme would make little sense. Judge Martinez agreed that such an outcome defies common sense and is not supported in the legislative history of either the CPA or CEMA. *Chen*, 2023 WL 1818137 at *5–6.

Instead, CEMA is plainly aimed at curbing unlawful spam. The CPA is implicated where a statement is made anywhere in a commercial email that turns out to be false or misleading,

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 7

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

assuming all other elements of a CPA claim are met.  By contrast, CEMA is implicated when a statement in the subject line is false or misleading with respect to the commercial nature of the email itself.  For example, the CPA may be implicated if a dealership falsely represented the horsepower of a vehicle for sale, either in the subject line *or* in the body of an email (or both).  By contrast, CEMA may be implicated when the same dealership sends an email with the subject line "Hello Old Friend," and proceeds to make offers on the vehicle in the body of the email.  As discussed in greater detail below, this interpretation is confirmed by the legislative history of CEMA.  Plaintiffs' Complaint, however, fails to allege the type of misleading subject line covered by CEMA.

    4.    <u>CEMA's legislative history supports the interpretation that it only prohibits email subject lines that conceal the commercial nature of the email.</u>

As discussed by Judge Martinez at length, the foregoing interpretation of CEMA is also supported by the statute's legislative history.

Initially, the original draft legislation banned all unsolicited commercial promotional emails, except to recipients with whom the sender had a pre-existing business relationship.  Ex. A at 10–13.  Even then, the first word in the subject line of any such email must have been "ADVERTISEMENT," to inform the recipient of the commercial nature of the email.  *Id.*  This initial legislation was designed to essentially ban all unwanted spam outright and make it easier for email recipients in Washington to identify promotional emails in their inbox.  This version of the bill was ultimately rejected.  But as Judge Martinez points out, "nothing in the original draft reflected a legislative intent to apply general false advertising law more strictly to email subject lines." *Chen*, 2023 WL 1818137 at *5.

Second, the Senate Bill Report on the revised bill (ESHB 2752), which ultimately became CEMA, makes clear that the intent of the legislation was to prevent misleading email recipients as to the commercial nature of the email:

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 8

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

> Some Internet service providers (ISPs) and Internet users report that senders sometimes ***disguise advertisements*** by putting ***false or misleading information on the subject line*** of the messages, ***hide their identities*** by using third parties' Internet domain names without permission or otherwise misrepresent the points of origin or transmission paths of messages.

Ex. A at 49 (emphasis added).  This same note was included in the report to Washington's Governor regarding the legislation. *Id.* at 52–53.

Third, the written testimony of proponents of the legislation underscores that they were concerned with fraud in disguising *the commercial nature* of emails to recipients, not fraud in email subject lines more generally.  For example, the testimony of Edward J. McNichol III (*id.* at 25–38) stated:

> The clear majority of junk email is in regards to shady and fringe businesses. Most promote products such as pornographic web sites, chain letters, and such. A prime example is the attached e-mail titled "Make Money Fast . . . IT'S LEGAL TOO!!." This message is clearly a chain letter pyramid scheme and is most likely in violation of state and federal statutes. Most of these messages are sent using false "headers," the Internet's equivalent of a return address. If the recipient replies to the original mail, that new message is frequently sent either to an innocent victim or to a non-existent address. This then results in system error messages bouncing all about the net. ***And in most cases, the unsolicited commercial messages appear with deceiving text in the subject field. Topics such as "hi There!", "Information Request" and "Your Business Records" have been used. This deceptive practice makes it virtually impossible to discern junk e-mail from the messages critical to my business***. And most junk emails appear numerous times from numerous senders.

*Id.* at 28 (emphasis added).  Similarly, testimony from Joe C. Daniels (*id*. at 46–47) stated:

> We would suggest that any notice required by this act should appear in a "clear and conspicuous manner" and contain the following information . . . (a) the advertisement must be readily identifiable as promotion or contain a disclosure that it is an advertisement. . . .

*Id.* at 46.  Again, there is nothing to suggest that CEMA was enacted to ban fraud in email subject lines generally, as consumer fraud was already illegal generally under the CPA.  Instead, CEMA was passed to ban the previously legal practice of sending a promotional email with an innocuous subject line (e.g., "hi there") that contained promotional advertising in the body of the email.

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 9

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Fourth, CEMA, as originally enacted, created a Select Task Force on Commercial Electronic Messages (the "Task Force"). Ex. A at 20–24. The Task Force was commissioned to further study spam emails and report back on whether additional or modified legislation was needed to further curb abuses CEMA was designed to prohibit. *Id.* at 24. The report authored by the Task Force describes the statute in a manner consistent with the interpretation adopted by Judge Martinez and Defendants—prohibiting subject lines that misrepresent the commercial nature of the email:

> What's Illegal?
>
> The Legislature passed ESHB 2752, and Governor signed it into law as chapter 149, laws of 1998. . . . [A] violation occurs when a sender:
>
> • Misrepresents any information in identifying the point of origin or transmission path of a message (false header);
>
> • Puts false or misleading information on the subject line (false subject line); or
>
> • Uses a third party's email address (domain name) without permission.
>
> In other words, it is unlawful to misrepresent ***who is really sending the message***, ***where a message is actually originating***, ***or what the true subject of the message is.***

Ex. A at 63 (emphasis added). Again, the description of "What's Illegal" does not include general false advertising but is limited to fraud about the source of the email or "what the true subject of the message is." *Id.*

For all these reasons, Jude Martinez found that CEMA's legislative history supported the interpretation that "subsection (b) specifically prohibits false and misleading information as to the nature of the email, i.e., that the email is an advertisement." *Chen*, 2023 WL 1818137 at *6 (emphasis in original).

### 5. Plaintiffs' allegations are identical to the allegations in *Chen*.

Plaintiffs' allegations here are identical in all material respects to the allegations in *Chen*. In *Chen*, there was no allegation that the subject lines of the emails misled recipients as to the

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 10

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

commercial nature of the emails themselves. 2023 WL 1818137, at *1. Instead, the plaintiff alleged that he received promotional emails with subject lines like "xx% Off Your Order," which were purportedly misleading because Sur La Table was not offering the discount to *all* of its products and instead only a select portion of its catalogue of products. *Id*. Similarly, in this case, Plaintiffs make no allegation that the subject lines of Old Navy emails were misleading as to the commercial nature of the emails. *See, e.g.*, Compl. ¶¶ 27–63. In fact, Plaintiffs here acknowledge that "[Old Navy] sent the emails for the purpose of promoting its good for sale." *Id.* ¶ 28. Instead, Plaintiffs allege the subject lines of the emails were misleading because the promotional sales described in the subject lines would later be extended by Defendants beyond the specified end date, which is indisputably not within the scope of CEMA as applied in *Chen*. *Id*. ¶¶ 2–4.

Accordingly, the Court should adopt Judge Martinez's reasoning in *Chen* and dismiss Plaintiffs' Complaint.

### C. Plaintiffs' Per Se CPA Claim Similarly Fails

Plaintiffs' CPA claim is predicated on a per se violation of CEMA. As a result, Plaintiffs' CPA claim should be dismissed along with the CEMA claim.

To sufficiently plead a CPA claim, a plaintiff must plausibly allege all five elements of a CPA violation: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and that is (5) causally linked to the unfair or deceptive act. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535–37 (Wash. 1986). Where, such as here, a plaintiff predicates their CPA claim on a purported CEMA violation, and the CEMA claim fails as a matter of law, the per se CPA violation must fail as well. *See Chen*, 2023 WL 1818137 at *7.

Plaintiffs' CPA claim is explicitly predicated on their CEMA claim. Compl. ¶ 110. Plaintiffs do not plausibly allege any injury to themselves or their property under the CPA, nor causation, relying instead on the premise that they can establish injury and causation per se by

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 11

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

proving a CEMA violation.[4]  *Id.* ¶ 111.  But Plaintiffs cannot rely on a CEMA violation here, because their CEMA claim fails as a matter of law.  *See Chen*, 2023 WL 1818137 at *7.  Accordingly, the Court should dismiss Plaintiffs' CPA claims for the reasons discussed above.

### D. Motion to Strike

Plaintiffs seek statutory damages of $500 for each alleged violation of CEMA and treble damages under the CPA.  Compl. ¶¶ 114–15.  But Plaintiffs cannot recover damages—actual *or* statutory—under CEMA, which only permits a private plaintiff to seek statutory damages in the context of CEMA's prohibition against phishing, which is not at issue in this case.  *See* RCW 19.190.090(1) ("A person who seeks damages under this subsection may only bring an action against a person or entity that directly violates RCW 19.190.080.").[5]  Further, under the CPA, Plaintiffs can only recover **actual** damages (which may be trebled in some cases) and costs of suit—not statutory damages.  *See* RCW 19.86.090 (permitting a private plaintiff "to recover the actual damages sustained by him or her").  Accordingly, Defendants move to strike from Plaintiffs' Complaint any request for statutory damages as a matter of law.

Plaintiffs cite *Wright v. Lyft, Inc.*, 406 P.3d 1149 (Wash. 2017), as authority that plaintiffs bringing per se CPA claims can *import* the $500 statutory damages provision in CEMA into their CPA claims and recover $500 for each alleged violation notwithstanding the explicit bar against such a recovery in RCW 19.190.090(1).  Compl. ¶ 114.  But the issue in *Wright* was whether an adequately pled CEMA claim establishes the injury and causation elements necessary to **prove liability** on a per se CPA claim.  The court found that proof of a violation of CEMA automatically satisfied the injury and causation requirements of a CPA claim, and thus, the *Wright* plaintiff's CPA claim survived dismissal.  406 P.3d at 1155.  The defendant in *Wright* failed to argue that the statutory damages from CEMA could not be imported into the CPA as a form of *relief*.  *Id.* at 1151

---

[4] For example, Plaintiffs do not allege that they relied on any allegedly deceptive emails or subject lines in purchasing products they would not have otherwise purchased, or in paying higher prices than they would have otherwise paid.

[5] RCW 19.190.080 relates to phishing violations for personal identifying information.  Plaintiffs do not purport to allege violations of RCW 19.190.080 in their Complaint.

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 12

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

(noting that the defendant, Lyft, "argues [CEMA] provides the measure of any damages recoverable under a CPA suit"). As a result, *Wright* did not and could not decide this issue, because it was not properly before the court.

Further, it would be improper to assume that just because a violation of CEMA can establish the injury and causation elements of a CPA claim per se, it must also establish the measure of damages under the CPA. Washington courts consistently recognize that injury and damages are two separate inquiries under the CPA. *Handlin v. On-Site Manager Inc.*, 351 P.3d 226, 230 (Wash. Ct. App. 2015) ("Under the Consumer Protection Act, 'injury' is broader than 'damages.'") (quoting *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899–900 (Wash. 2009)).

Finally, the plain language of the CPA is inconsistent with the notion of awarding statutory damages to a private plaintiff under that statute. Specifically, the CPA provides:

> Any person who is ***injured*** in his or her business or property by a violation of [the CPA] may bring a civil action in superior court to enjoin further violations, to recover the ***actual damages*** sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the ***actual damages*** sustained[.]

RCW 19.86.090 (emphasis added). Although ***injured*** persons can bring an action, any monetary recovery is expressly limited to ***actual damages*** and costs of suit. *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 656 P.2d 1130, 1134 (Wash. 1983) (emphasis added) (holding the plaintiff's monetary recovery was limited to costs of suit when the plaintiff failed to prove actual damages).

And the statutory damages in CEMA are not intended to measure actual damages—rather, they are a civil penalty to deter violations. The plain language of CEMA makes this clear, because CEMA *specifically and expressly distinguishes statutory damages from actual damages*. *See* RCW 19.190.090 (permitting a plaintiff "to seek up to five hundred dollars per violation, ***or actual damages***, whichever is greater," but only against defendants who violate RCW 19.19.080) (emphasis added); RCW 19.190.040 ("Damages to the recipient of a commercial electronic mail

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 13

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

1  message . . . sent in violation of this chapter are five hundred dollars, ***or actual damages***, whichever is greater.") (emphasis added).

In sum, Plaintiffs are barred from seeking statutory damages under CEMA because they do not allege a violation of RCW 19.190.080. *See* RCW 19.190.090(1). And Plaintiffs are similarly barred from seeking statutory damages on their CPA claim, because the CPA only authorizes *actual* damages. *See* RCW 19.86.090. For these reasons, Plaintiffs' request for statutory damages fails as a matter of law and should be stricken from the Complaint.

### E.     Amendment is Futile

Generally, "the court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Dismissal without leave to amend is proper if "the complaint could not be saved by any amendment." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). In that regard, leave to amend is permissible only "if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *Id.* (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

In this case, the Court should deny leave to amend the Complaint because any amendment would be futile. Plaintiffs have not pled a claim under CEMA because their allegations, by their very nature, do not fall within CEMA's scope. Nor have they alleged any basis to plead an injury to their business or property under the CPA, in the absence of a viable CEMA claim. Finally, their request for statutory damages fails as a matter of law because neither CEMA nor the CPA permit them to seek statutory damages in the context of these claims. No amendment to the Complaint would salvage Plaintiffs' improper claims or remedies.

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 14

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

## IV. CONCLUSION

For all these reasons, the Court should grant Defendants' motion and dismiss the Complaint. In the event the Court does not dismiss the Complaint in its entirety, the Court should also strike Plaintiffs' request for statutory damages.

DATED: June 1, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Damon C. Elder*
Damon Elder, WSBA No. 46754
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Email: damon.elder@morganlewis.com
           andrew.decarlow@morganlewis.com

*Attorneys for Defendants*

MOTION TO DISMISS AND TO STRIKE
Case No. 2:23-cv-00781-JHC - 15

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401