THE HONORABLE JOHN H. CHUN

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

ROXANN BROWN and MICHELLE
SMITH, on their own behalf and on behalf of
9   others similarly situated,

Plaintiffs,
10

v.
11

OLD NAVY, LLC; OLD NAVY (APAREL),
12   LLC; OLD NAVY HOLDINGS, LLC; GPS
SERVICES, INC.; and THE GAP, INC.,
13   inclusive

14                   Defendant.

15

Case No. 2:23-cv-00781-JHC

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

NOTED FOR CONSIDERATION:
June 23, 2023

*Oral Argument Requested*

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 3

III. ARGUMENT AND AUTHORITY ...................................................................... 3

   A.   The plain language of the statute prohibits sending Washington consumers emails with false or misleading information in the subject line.................................................................................................................. 4

       1.   The court's contrary conclusion is *Sur La Table* is incorrect and unpersuasive................................................................................. 6

       2.   CEMA's statutory scheme supports Plaintiffs' reading of the statute ............................................................................................ 7

   B.   The legislature intended to prohibit generally false or misleading email subject lines of the type alleged in Plaintiffs' Complaint ...................................... 9

       1.   The legislature enacted CEMA to address multiple problems arising out of the increasing volume of commercial emails ...................... 9

       2.   CEMA's legislative history explains why the legislature focused on email subject lines specifically ................................................. 11

       3.   The legislature confirmed the broad scope of RCW 19.190.020 each time it amended CEMA. ................................................................. 12

   C.   Application of the law to Old Navy's alleged conduct best advances the legislature's purpose in enacting CEMA ................................................................. 13

   D.   In the alternative, this Court should certify to the Washington Supreme Court a question about the scope of CEMA's prohibition on false or misleading subject lines ...................................................................................... 15

   E.   Plaintiffs' CPA claim survives with their CEMA claim....................................... 16

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

F.      Plaintiffs may seek statutory damages under RCW 19.190.040.......................... 16

IV.     CONCLUSION.............................................................................................. 18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## <u>TABLE OF AUTHORITIES</u>

2

PAGE(S)

3

### FEDERAL CASES

4

*Ashcroft v. Iqbal,*
5
    556 U.S. 662 (2009)..........................................................................................3

6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................................3
7

*Brunozzi v. Cable Comms., Inc.,*
8
    851 F.3d 990 (9th Cir. 2017) ..........................................................................4

9

*Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.,*
10
    447 U.S. 557 (1980)........................................................................................10

11
*Chen v. Sur La Table, Inc.,*
    2023 WL 1818137 (W.D. Wash. Feb. 8, 2023).....................................*passim*
12

13
*Contest Promotions, LLC v. City & Cnty. of San Francisco,*
    874 F.3d 597 (9th Cir. 2017) .........................................................................10
14

*Cornhusker Casualty Inc. Co. v. Kachman,*
15
    514 F.3d 982 (9th Cir. 2008) .........................................................................15

16
*Gordon v. Virtumundo, Inc.,*
17
    575 F.3d 1040 (9th Cir. 2009) .................................................................6, 17

18
*Gragg v. Orange Cab Co., Inc,*
    145 F. Supp. 3d 1046 (W.D. Wash. 2015)....................................................17
19

20
*Harbers v. Eddie Bauer, LLC,*
    415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019)................................8, 10, 17

21
*Keystone Land & Dev. Co. v. Xerox Corp.,*
22
    353 F.3d 1093, 1098 (9th Cir. 2003) ............................................................15

23
*Kilgore v. SpecPro Professional Servs.,* LLC,
24
    51 F.4th 973, 983 (9th Cir. 2022) ...................................................................4

25
*Microsoft Corp. v. JDO Media, Inc.,*
    2005 WL 1838609, at *3 (W.D. Wash. Aug. 1, 2005) ..................................17
26

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - iii
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
    779 F.3d 1036 (9th Cir. 2015) ................................................................. 3

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    763 F.3d 1235, 1235 (9th Cir. 2014) ...................................................... 15

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) .................................................................. 16

## STATE CASES

*Anderson v. Morris*,
    87 Wash.2d 706, 558 P.2d 155 (1976) .................................................. 13

*Dep't of Ecology v. Campbell & Gwinn, L.L.C*,
    146 Wash.2d 1, 43 P.3d 4 (2002) ......................................................... 4, 7

*Five Corner Family Farmers v. State*,
    173 Wash.2d 269, 268 P.3d 892 (2011) ............................................... 5, 6

*Gray v. Suttell & Assocs.*,
    181 Wash.2d 329, 339, 334 P.3d 14 (2014) .............................................. 7

*Handlin v. On-Site Manager Inc.*,
    187 Wash. App. 841, 849, 351 P.3d 226 (2015) ..................................... 17

*Jametsky v. Olsen*,
    179 Wash.2d 756, 763–64, 317 P.3d 1003 (2014) ................................ 2, 7

*Rest. Dev., Inc. v. Cananwill, Inc.*,
    150 Wash.2d 674, 682, 80 P.3d 598 (2003) .............................................. 9

*State v. Heckel*,
    143 Wash.2d 824, 836, 24 P.3d 404 (2001) ..................................... 5, 9, 14

*Wright v. Lyft, Inc.*,
    189 Wash.2d 718, 722, 406 P.3d 1149 ............................................. 4, 7, 15

## STATE STATUTES

RCW 2.60.020 ............................................................................................. 15

RCW 2.60.030 ............................................................................................. 15

RCW 19.16.250 .............................................................................................. 8

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - iv
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

RCW 19.16.440 .................................................................................................8

RCW 19.86.920 .................................................................................................8

RCW 19.134.020 ...............................................................................................8

RCW 19.134.070 ...............................................................................................8

RCW 19.190.010 ...............................................................................................1

RCW 19.190.020 ........................................................................................*passim*

RCW 19.190.040 ........................................................................................*passim*

RCW 19.190.050 ...............................................................................................7

RCW 19.190.060 .......................................................................................7, 17

RCW 19.190.070 ...............................................................................................7

RCW 28C.10.110 ...............................................................................................8

## OTHER AUTHORITIES

Compact Oxford English Dictionary (2d ed. 1996).................................................6

Email Subject Line Tips That Guarantee High Open Rates ....................................14

Heather Kelly, "Email spam is breaking through again. Here's what you can do to minimize it.",
        THE WASHINGTON POST, Jan. 10, 2022 .......................................13

Ian Bogost, What Are Stores Even Thinking With All These Emails?,
        THE ATLANTIC, Aug. 5, 2021 .........................................................13

LAWS OF 1998, ch. 149, § 4 (codified in RCW 19.190.030) ................................12

The Ultimate 2023 Email Marketing Stats List .....................................................14

Urgency Emails: An All-Inclusive Guide For Marketers To Drive Maximum Conversions...14

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - v
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## I.    INTRODUCTION

Roxann Brown and Michelle Smith are Washington consumers who are fed up with Old Navy's practice of flooding their email inboxes with messages advertising urgent time limited deals that are not actually limited at all. Old Navy[1] uses false or misleading email subject lines to trick consumers into opening commercial emails and making purchases in a hurry by misrepresenting the length of time that sales or offers will be available. Old Navy's practice results in it sending numerous emails to Washington consumers announcing fake extensions or changes to its sales—sometimes up to five per day—clogging inboxes and wasting data space.

Old Navy's practice of sending email advertisements with false or misleading information in the subject lines violates the plain language of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190.010 *et seq*., and the Consumer Protection Act, RCW 19.86 *et seq.* CEMA prohibits companies from sending or working with others to send a commercial email to a Washington resident that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(b)(1). Old Navy's entire motion to dismiss turns on the Court adding words to the statute that are not there. Specifically, Old Navy claims that CEMA's prohibition is limited to "false or misleading statements concealing the commercial nature of the email itself." (Mot. at 4.) But Old Navy's interpretation is contrary to the Washington rules of statutory interpretation that this Court is bound to apply.

Old Navy's argument boils down to one plea: this court should follow *Chen v. Sur La Table, Inc.*, 2023 WL 1818137 (W.D. Wash. Feb. 8, 2023). But the *Sur La Table* order is erroneous and unpersuasive for three primary reasons.

*First*, the plain language of CEMA unambiguously prohibits sending email advertisements with false or misleading subject lines. The court's conclusion in *Sur La Table* that the statute is ambiguous is supported by minimal, unclear, and unpersuasive analysis. 2023 WL 1818137, at *3. A party's ability to proffer a narrow reading of a statute favorable to itself by adding words to the

---

[1] Plaintiffs refer to defendants Old Navy, LLC; Old Navy (Apparel), LLC; Old Navy Holdings, LLC; GPS Services, Inc.; and The Gap, Inc., collectively as Old Navy.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 1
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1    statute does not establish that the words drafted by the legislature are ambiguous. The *Sur La Table*

2    court erred in concluding otherwise.

3        *Second*, the context and statutory scheme support reading CEMA broadly in favor of

4    consumers. That is particularly true in light of the Washington Supreme Court's directive that

5    courts must "construe remedial statutes liberally in accordance with the legislative purpose behind

6    them" and "in favor of the consumers they aim to protect." *Jametsky v. Olsen*, 179 Wash.2d 756,

7    763–64, 317 P.3d 1003 (2014).

8        *Third*, even if the Court finds the plain language of CEMA ambiguous, its legislative

9    history reflects that the legislature intended to regulate all commercial emails, including by

10   specifically prohibiting false or misleading advertising in email subject lines, with the goal of

11   reducing the burdens on consumers associated with misleading and voluminous spam. The statute

12   accomplishes this in two ways. First, the statute deters spammers and scammers from sending

13   deceptive emails in the first place, thereby reducing the volume of commercial email. Second, the

14   statute ensures that consumers are provided with truthful and not misleading information in the

15   subject lines of their emails, allowing consumers to exercise judgment about which emails to

16   delete, ignore, or open.  Old Navy's interpretation of CEMA as prohibiting only a narrow type of

17   deceptive conduct was never articulated by the legislators who drafted and adopted CEMA or its

18   three amendments, and is inconsistent with the statute's broad goals. Instead, the legislature has

19   repeatedly stated its intent to prohibit commercial emails with false or misleading subject lines

20   generally. Moreover, the court in *Sur La Table* did not consider the legislative history that Plaintiffs

21   identify that supports the application of CEMA to generally deceptive commercial email subject

22   lines. The Court should thus find that Plaintiffs' interpretation of CEMA best advances the

23   legislature's purposes in enacting the statute.

24       To the extent the Court is concerned about issuing an order that is true to the plain language

25   of CEMA but conflicts with *Sur La Table*, Plaintiffs respectfully request that the Court certify a

26   question to the Washington Supreme Court. Washington's high court is the court best suited to

27   resolve questions of Washington statutory interpretation.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 2
Case No. 2:23-cv-00781-JHC

1    Finally, Old Navy's request to strike Plaintiffs' demand for statutory damages is

2 procedurally improper and gets the law wrong.

3    For all these reasons, and those explained below, Old Navy's motion should be denied.

4                      **II.    STATEMENT OF FACTS**

5    Roxann Brown and Michelle Smith are Washington consumers who have each received

6 hundreds of email advertisements from Old Navy, dozens of which contain false or misleading

7 information in the subject lines. Dkt. # 1-1 (Complaint) ¶¶ 7, 78, Ex. A (exemplar list of emails

8 Old Navy sent to Brown), ¶¶ 8, 86, Ex. B (exemplar list of emails Old Navy sent to Smith).

9    For example, on February 10, 2019, Old Navy sent an email with the subject line: "GAH!

10 This is the last chance to get up to 50% OFF . . ." However, the next day, Old Navy sent an email

11 with a subject line stating "We've announced UP TO 50% OFF STOREWIDE (starting now)."

12 The 50% off storewide promotion continued to be advertised through February 16, 2019. *Id.* ¶ 54.

13 The subject line of the email sent on February 10, 2019, stating that it was the "last chance" to get

14 50% off, was therefore false or misleading because 50% continued to be offered in the following

15 days. *Id.* ¶ 55. The complaint details numerous examples of series of messages demonstrating Old

16 Navy's pattern and practice of sending emails with subject lines that contain false or misleading

17 information about the timing of promotional offers. These emails are designed to get consumers

18 to open emails and make purchases based on a false sense urgency. *Id.* ¶¶ 56-63, Exs. A, B.

19                   **III.    ARGUMENT AND AUTHORITY**

20    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

21 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

22 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

23 plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

24 inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

25 556). The Court must "accept factual allegations in the complaint as true and construe the pleadings

26 in the light most favorable to the non-moving party." *Northstar Fin. Advisors Inc. v. Schwab Invs.*,

27 779 F.3d 1036, 1042 (9th Cir. 2015).

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 3
Case No. 2:23-cv-00781-JHC

**A.    The plain language of the statute prohibits sending Washington consumers emails with false or misleading information in the subject line.**

When interpreting a state statute as a matter of first impression, a federal court's role is to "determine what meaning the state's highest court would give to the law." *Brunozzi v. Cable Comms., Inc.*, 851 F.3d 990, 998 (9th Cir. 2017). "In interpreting a state statute," a federal court "must follow the state's rules of statutory interpretation." *Kilgore v. SpecPro Professional Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022).

Washington's CEMA provision at issue here, Revised Code of Washington section 19.190.020(1), is entitled "Unpermitted or misleading electronic mail—Prohibition." It provides in full:

> No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:
>
> (a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message; or
>
> (b) Contains false or misleading information in the subject line.

RCW 19.190.020(1).

The Washington Supreme Court discussed and applied its statutory interpretation rules when it last considered the meaning of CEMA on questions certified by this court. It said, "[o]n matters of statutory interpretation, our fundamental objective is to ascertain and carry out the Legislature's intent." *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 722, 406 P.3d 1149 (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C*, 146 Wash.2d 1, 43 P.3d 4 (2002)). "If the statute's meaning is plain on its face, then the court must give effect to the plain meaning as an expression of legislative intent." *Id.* The Washington Supreme Court further explained: "We presume the legislature means exactly what it says." *Id.* at 272. "Omissions are deemed to be exclusions." *Id.*

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 4
Case No. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Here, the language enacted by the legislature is plain on its face. *Id.* at 722. It is a "prohibition" on sending emails that contain "false or misleading information in the subject line." RCW 19.190.020(1). Companies cannot send Washington consumers marketing emails with subject lines containing information that is "false or misleading," i.e., information that is not true. *See State v. Heckel*, 143 Wash.2d 824, 836, 24 P.3d 404 (2001) (rejecting dormant commerce clause challenge to CEMA and explaining that "the only burden the Act places on spammers is a requirement of truthfulness" adding "[s]pammers must use an accurate, nonmisleading subject line"). The Court's inquiry should end there.

Old Navy points to nothing in the text of RCW 19.190.020 or anywhere else in CEMA suggesting that the prohibition is limited to subject lines that mislead the recipient "as to the commercial nature of the email." That phrase appears nowhere in the statute. It seems to have been created out of whole cloth by a defendant in a prior case and adopted by the court without adequate explanation. *See Chen v. Sur La Table, Inc.*, 2023 WL 1818137, at *3 (W.D. Wash. Feb. 8, 2023). Reading in a new phrase that appears nowhere in the provision at issue or in the larger statutory scheme is rewriting a statute, not interpreting it. The *Sur Le Table* court's analysis is not consistent with the Washington Supreme Court's commands to determine legislative intent solely from the plain language enacted by the legislature where possible.

The Washington Supreme Court's analysis in *Five Corner Family Farmers v. State*, 173 Wash.2d 269, 311, 268 P.3d 892 (2011), is informative. There, the court declined to apply the cannon of construction to avoid literal readings that result in absurd consequences because the cannon results in "disregarding an otherwise plain meaning and inserting or removing statutory language, a task that is decidedly the province of the legislature." *Id.* Impermissibly "inserting statutory language" is exactly what the court did in *Sur La Table*. The court took the text of RCW 19.190.020(1)(b), which prohibits sending an email advertisement that "[c]ontains false or misleading information in the subject line," and added the words "as to the commercial nature of the email," after the word "information" and before the word "in." This Court should not repeat that error. Just as concerns about absurd consequences are not a basis for rewriting statutes, any

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 5
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  concern about the widespread liability for email marketers that may result from applying CEMA's

2  plain terms, are not a basis for inserting statutory language as the court did in *Sur La Table*. *See,*

3  *e.g.*, *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1059 (9th Cir. 2009) (finding that while CEMA's

4  language is so broad it may include "unintentional clerical errors,' imperfect representations, or

5  immaterial misstatements," molding a statute is "a matter for the State, as sovereign, to resolve."

6  (citation omitted)).

7       1.     The court's contrary conclusion is *Sur La Table* is incorrect and unpersuasive.

8       Old Navy offers no independent analysis of the plain language of CEMA. It simply argues

9  that this Court should follow *Sur La Table*. But the *Sur La Table* order offers a single paragraph

10  of conclusory analysis in support of its conclusion that CEMA's prohibition on false or misleading

11  subject lines is ambiguous. 2023 WL 1818137, at *3. The court looked to the online Merriam

12  Webster definition of the term "information" and used the first definition "knowledge obtained

13  from investigation, study or instruction." 2023 WL 1818137, at *3. That definition makes little

14  sense in the context of email subject lines, but even if it did, that definition does not create

15  ambiguity in the short statutory provision at issue. Merriam Webster's third definition of

16  "information," which makes substantially more sense here, is "facts, data." https://www.merriam-

17  webster.com/dictionary/information. The Oxford English Dictionary published close in time to the

18  statute's enactment also provides a useful definition of "information": "Knowledge communicated

19  concerning some particular fact, subject, or event; that of which one is apprised or told." Compact

20  Oxford English Dictionary (2d ed. 1996). In short, dictionary definitions confirm the plain

21  meaning of the statute—marketing emails cannot contain subject lines with false or misleading

22  statements about facts or events (such as the duration of sales). Yet that is exactly what Old Navy's

23  marketing emails do.

24       The *Sur La Table* order's conclusion is that the term "information" can be read to mean

25  "information about the commercial nature of the email" and the statute is therefore subject to more

26  than one reasonable interpretation, is unpersuasive because it is unmoored from either the text of

27  the statute or any dictionary definition. *See Five Corners*, 173 Wash.2d at 305 ("The fact that two

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 6
Case No. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  or more interpretations are conceivable does not render a statue ambiguous."). Because there is no

2  ambiguity in the text of RCW 19.190.020(1)(b), there is no need for a foray into legislative history.

3         2.  <u>CEMA's statutory scheme supports Plaintiffs' reading of the statute.</u>

4       If the Court goes any further, it should look to CEMA's context and statutory scheme.

5  "When possible, the court derives the legislative intent *solely from the plain language enacted by*

6  *the legislature*, considering the text of the provision in question, the context of the statute in which

7  the provision is found, related provisions, and the statutory scheme as a whole." *Gray v. Suttell &*

8  *Assocs.*, 181 Wash.2d 329, 339, 334 P.3d 14 (2014) (emphasis added) (answering certified

9  question of statutory interpretation in favor of broad reading advocated by consumer). Only if the

10  statute remains ambiguous after this inquiry is it appropriate to resort to other interpretative aids

11  such as legislative history. *Campbell & Gwinn*, 146 Wash.2d at 12.

12       The statutory scheme suggests that CEMA's prohibitions are to be read broadly, not

13  narrowed by words that don't appear in the statute's text. For example, the statute creates a blanket

14  immunity from liability for an email service provider that blocks advertising emails the service

15  provider reasonably believes violate CEMA's prohibitions. RCW 19.190.050. And the statute

16  outright prohibits all commercial text messages to cell phones unless the recipient has "clearly and

17  affirmatively assented" to receive the text messages. RCW 19.190.060, .070.

18       A broad reading of CEMA also comports with the Washington Supreme Court's command

19  to "construe remedial statutes liberally in accordance with the legislative purpose behind them"

20  and "in favor of the consumers they aim to protect." *Jametsky*, 179 Wash.2d at 763–64 ; *Wright*,

21  189 Wash.2d 718, 723–24. CEMA is a remedial statute. The provisions at issue were designed to

22  (i) reduce the volume of commercial electronic mail burdening both consumers and internet service

23  providers; and (ii) prohibit advertisers from mispresenting a message's point of origin so that

24  service providers could screen out unsolicited email. (*See* Dkt. # 6 ("Ex. A") at 13 (Sec. 1).)[2]

25

26  [2] In its Exhibit A, Old Navy reproduces the legislative report submitted by the defendant in *Chen*
27  *v. Sur La Table, Inc.* (*See* Dkt. # 8-3, 2:21-CV-00370-RSM, 2023 WL 1818137 (W.D. Wash. Feb. 8, 2023).)

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 7
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  CEMA was thus "enacted to protect concrete interests in being free from deceptive commercial e-

2  mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019). The CPA

3  is also a remedial statute that is to be "liberally construed that its beneficial purposes may be

4  served." RCW 19.86.920.

5          Old Navy's argument that because the CPA broadly prohibits false advertising, it would

6  not make sense for the legislature to specifically prohibit use of false or misleading subject lines

7  in advertising emails demonstrates a startling unfamiliarity with how per se CPA violations operate

8  in Washington. There are many statutes in which the legislature declares specific types of false

9  statements per se CPA violations despite the CPA's broad prohibition on deceptive conduct. For

10  example, Washington's Credit Services Organization Act prohibits credit services organizations

11  from making "any untrue or misleading representations in the offer or sale of the services of a

12  credit services." RCW 19.134.020(4). Violation of this prohibition is a per se unfair or deceptive

13  act under the CPA. RCW 19.134.070(5). Similarly, Washington's collection agency act prohibits

14  deceptive conduct including collection agents possessing law enforcement badges or uniforms

15  (RCW 19.16.250(4)), using names other than the legal name of the collection agency (RCW

16  19.16.250(7), and communicating with a debtor using forms that simulate judicial process (RCW

17  19.16.250(14)). A collection agency's commission of any of these prohibited practices is a per se

18  unfair or deceptive act or practice under the CPA. RCW 19.16.440. The same is true under

19  Washington's Private Vocational Schools law, which makes it a per se unfair or deceptive act or

20  practice to "[m]ake or cause to be made any statement or representation in connection with the

21  offering of education if the school or agent knows or reasonably should have known the statement

22  or representation to be false, substantially inaccurate, or misleading." RCW 28C.10.110(2)(j).

23  Contrary to Old Navy's argument (Mot. at 7), the Washington legislature routinely prohibits

24  specific types of false or misleading conduct and makes violation of those prohibitions per se CPA

25  violations, despite the CPA's prohibition on deceptive conduct more generally. That is just what

26  the legislature did with CEMA.

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 8
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

In short, the statutory scheme supports Plaintiffs' plain language reading of CEMA's prohibition on sending advertising emails with false or misleading information in the subject line.

**B.      The legislature intended to prohibit generally false or misleading email subject lines of the type alleged in Plaintiffs' Complaint.**

Even if the Court were to find that the statute is subject to more than one interpretation (it is not), the legislative history does not support the narrow interpretation that Old Navy encourages the Court to adopt. Where a "statute is subject to more than one reasonable interpretation, th[e] court may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wash.2d 674, 682, 80 P.3d 598 (2003).

Old Navy does not merely read words into CEMA that simply are not there, but also ignores a long legislative history that is irreconcilable with its proffered interpretation. The legislative history of CEMA and the circumstances surrounding its enactment show that the legislature intended to reduce the volume of commercial email that consumers unwittingly open and read. The legislature sought to minimize the burdens on consumers  of unwanted spam within constitutional bounds by prohibiting false or misleading email subject lines generally. Importantly, the plaintiff in *Sur La Table* "did not identify any legislative history supporting its interpretation of CEMA." 2023 WL 1818137, at *6 (W.D. Wash. Feb. 8, 2023).

1.      The legislature enacted CEMA to address multiple problems arising out of the increasing volume of commercial emails.

The legislative findings accompanying CEMA evince multiple motivations for its passage. Specifically, the legislature noted that the "volume of commercial electronic mail is growing" such that internet service providers "cannot handle the volume of electronic mail being sent." (Ex. A at 20, Sec. 1.) The legislature was also concerned with the burdens imposed on recipients of commercial email. (*Id.* at 48 ("The sending of email messages uses resources of recipients.").) *See Heckel*, 143 Wash.2d at 836 (CEMA's purpose is to "ban[] the cost-shifting inherent in the sending

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 9
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

of deceptive spam"); *Harbers*, 415 F. Supp. 3d at 1007 ("CEMA was enacted to protect the public's interest in being free from certain forms of deceptive spam.").

The legislature therefore sought to decrease the volume of commercial email and make it easier for consumers to sort through unwanted email. Proposed House Bill 2752, which was ultimately not enacted, would have prohibited all "unsolicited" commercial email except those emails sent to existing customers or with consent of the recipient, and sought to require a label for all commercial email. (Ex. A at 11, Secs. 3, 4.)  But in response to First Amendment concerns the legislature set aside a total ban on unsolicited commercial email in favor of prohibitions on fraudulent conduct, including false or misleading advertising, which would not offend the constitution. (*Id.* at 53.)[3]  The bill as enacted thus confirms the legislature's intent to regulate all commercial email by placing constitutional prohibitions on the sending of "commercial electronic mail message[s]" (*id.* at 14, Sec. 3), not just the "unsolicited electronic mail message[s]" identified in the House Bill (*id.* at 11, Sec. 3). This description is consistent with references throughout the legislative history to allowing "legitimate" advertising via email to continue without prohibition. (*Id.* at 47, 53, 64.) The legislature further confirmed the broad focus of the law by defining "commercial electronic mail message" to refer to "an electronic mail message sent for the purpose of promoting real property, goods, or services for sale or lease" (*id.* at 14, Sec. 2(1)), and by creating a task force to study "the utilization of electronic mail messages for commercial purposes" (*id.* at 14, Sec. 1).

There is very little discussion of the false subject line provision of the law in the legislative history identified by Old Navy. However, the Commercial Electronic Mail Messages Select Task Force Report ("Task Force Report"), which was drafted after the law was passed, appears to address the exact question Old Navy poses for the Court: whether the prohibition on false or

---

[3] It is well established that misleading commercial speech is not protected by the First Amendment. *See, e.g., Contest Promotions, LLC v. City & Cnty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2017) (confirming that under the test for commercial speech described in *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557 (1980), and as applied in the Ninth Circuit, the first prong considers whether the speech at issue is misleading).

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 10
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  misleading email subject lines in CEMA includes false or misleading advertising generally. The

2  Task Force viewed the prohibition broadly, stating:

3         Fraudulent or misleading advertising is always illegal (and
   criminal). The forum one uses for promoting fraudulent or

4         misleading advertising generally does not matter, as the conduct
   itself is illegal. Although offers to sell fraudulent products or

5         services are clearly illegal, whether fraud laws apply to misleading
   information in an email message's header or subject line is less

6         clear. Enactment of Washington's new commercial email law,
   however, clarifies that sending commercial email messages that

7         contain misleading or false information in the subject line or header
   violates the Consumer Protection Act.

8

9  (Ex. A at 62.) In short, the Task Force viewed the provision at issue as enabling the application of

10  general false or misleading advertising laws to email subject lines.

11         2.       <u>CEMA's legislative history explains why the legislature focused on email subject</u>

12                     <u>lines specifically.</u>

13         Consumers rely on the subject lines to determine whether to open an email, delete it, or

14  ignore it. Prohibiting false or misleading email subject lines assists consumers in managing

15  overflowing inboxes by ensuring that their decision about whether to open, delete or ignore a given

16  email is not influenced by false information. As House Bill 2752 noted, "unsolicited commercial

17  electronic mail messages are often indistinguishable from other electronic mail messages," and

18  "diminish the utility of electronic mail service because users must wade through unwanted

19  advertisements to obtain those messages they wish to receive." (*Id. See also id*. at 27 (testimony

20  of Edward J. McNichol III stating that misleading email subject lines "makes it virtually

21  impossible to discern junk email" from wanted email).)

22         Given these concerns, "unique treatment for misrepresentations that happen to occur in

23  subject lines" (Mot. at 7-8) is warranted. As the legislature recognized when enacting CEMA, the

24  harm from an unsolicited and deceptive email occurs at the time a deceptive email *is received* due

25  to the costs involved in receiving and storing email, as well as the burdens imposed on consumers

26  who must wade through commercial email to find the emails they actually want to review. (E.g.,

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 11
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Ex. A at 48.) As discussed in section III.A.2, supra, the Washington legislature routinely singles out specific misrepresentations for "unique treatment" as per se CPA violations, just as it did here.

      3.    <u>The legislature confirmed the broad scope of RCW 19.190.020 each time it amended CEMA.</u>

When taken as a whole, CEMA's legislative history shows that the legislature knew, and said, exactly what it meant, when it drafted RCW 19.190.020. The history of CEMA's three subsequent amendments, in 1999, 2003, and 2005, shows that the legislature has never considered narrowing CEMA's broad prohibition as suggested by Old Navy. (*See* Declaration of Sophia Rios, Exhibits B, C, D, and E.) Instead, the prohibition on false or misleading information in email subject lines has remained unchanged since CEMA was first enacted. *See* LAWS OF 1998, ch. 149, § 4 (codified in RCW 19.190.030).

Moreover, the legislature has repeatedly affirmed the broad purpose of RCW 19.190.020 when conceiving further amendments. First, the legislature described the original provisions of CEMA while considering each amendment, and never described the law as limited to prohibiting emails that are false or misleading only with regards to the commercial nature of the email. (*See e.g.,* Ex. B at 3; Ex. C at 1; Ex. D at 1-2.) Thus, to accept Old Navy's interpretation as true, the Court would have to find that the legislature omitted important, limiting words from (i) the statute itself; (ii) the 1998 legislative history; and (iii) the legislative history associated with the amendments of CEMA in 1999, 2003, and 2005. Second, the legislature broadly characterized the law, stating, for example, that commercial emails "that contain deceptive or false information may not be sent" and that "[a] violation occurs when the message sender . . . puts false or misleading information in the subject line of the message." (Ex. C at 1.) Third, the amendments to CEMA themselves confirm the legislature's goal to reduce spam advertising due to concerns over the cost

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 12
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and burden to the consumer resulting from voluminous commercial correspondence that is potentially misleading.[4]

**C.  Application of the law to Old Navy's alleged conduct best advances the legislature's purpose in enacting CEMA.**

Plaintiffs' interpretation of the statute should be adopted because it best advances the legislative purpose" of CEMA. *Anderson v. Morris*, 87 Wash.2d 706, 716, 558 P.2d 155 (1976) ("[I]f alternative interpretations are possible, the one that best advances the overall legislative purpose should be adopted.").

In 1998, the Washington legislature passed CEMA as it was grappling with a then-unfamiliar and rapidly expanding use of technology—advertising via email. At the time, spam emails were largely sent by fly-by-night operations on the cutting edge of technological fraud. But times change. Major corporate entities are now generating vast amounts of email marketing and, in many ways, the fears of the Washington legislature that consumers would be inundated with commercial emails has come to pass. (*E.g.*, Ex. at 63 ("will a person want to sort through an inbox to locate the few messages that were sent by friends, family, and business associates?")[5]

Old Navy is contributing to that problem. As Plaintiffs allege, Old Navy "may send a single consumer up to five marketing emails *per day*, and commonly sends three marketing emails *every day*." Complaint ¶ 33. Plaintiffs further allege that "Old Navy uses the purportedly limited nature of its offers to send *more* emails to consumers than it otherwise might," clogging up their email inboxes with spam and wasting limited data space. *Id.* It is well established that subject lines

---

[4] *See* Ex. E at 2 ("[U]nsolicited text messages also cost in terms of missed messages because the memory of these devices is not large enough to handle a flood of unwanted text messages."); Ex. D at 3 (noting that "phishing" schemes that deceive consumers into revealing identifying information, in part by "creat[ing] a sense of urgency" through fraudulent means).

[5] The flood of corporate marketing emails received by consumers is well-documented by reputable media sources. *See*, *e.g.*, Ian Bogost, What Are Stores Even Thinking With All These Emails?, The Atlantic, Aug. 5, 2021, https://www.theatlantic.com/technology/archive/2021/08/why-stores-send-you-so-many-emails-spam/ 619670/; Heather Kelly, "Email spam is breaking through again. Here's what you can do to minimize it.", The Washington Post, Jan. 10, 2022, https://www.washingtonpost.com/technology/2022/01/10/email-spam-stop/.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 13
Case No. 2:23-cv-00781-JHC

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

conveying a sense of urgency (e.g., "BUY NOW," "HURRY") have a higher open rate than emails without such subject lines.[6] Old Navy uses this tactic in its commercial emails to stand out in the crowded virtual marketplace. But, as Plaintiffs allege, the urgency is false or misleading. The identified emails are not, in reality, about a sale in its "FINAL HOURS" (*id.* ¶ 58), or a sale that had been "EXTENDED!!" (*id.* ¶ 60). Instead, the true subject of Old Navy's emails was a sale that was not ending and was continuing as originally planned. Plaintiffs allege that they "cannot tell which emails from Old Navy contain truthful information or which emails are spam with false and misleading information." (*Id.* ¶¶ 81, 89.)

Plaintiffs thus allege that they have suffered the same harms CEMA was intended to prevent, as described time-and-time again by the Washington legislature when passing and amending CEMA. The subject lines identified by Plaintiffs use false or misleading information to trick the recipient into opening the email message. Finding that Old Navy's alleged conduct violates the law may reduce the volume of commercial email Old Navy sends by requiring that it only send emails with truthful subject lines.  *Heckel*, 143 Wash. 2d at 836 ("the truthfulness requirements . . . make spamming unattractive to the many fraudulent spammers, thereby reducing the volume of spam.").

On the other hand, Old Navy's interpretation limits the capacity of CEMA to protect consumers from the burdens of misleading and voluminous commercial email. The legislature intended that consumers would have accurate information when sorting through all commercial email. The placement of a limitation on the types of deceptive conduct prohibited by the statute

---

[6] *See* The Ultimate 2023 Email Marketing Stats List, https://codecrew.us/email-marketing-stats-you-need-to-know-the-ultimate-list/ ("subject lines with a sense of urgency (BUY NOW, HURRY) have a 22% open rate. That's quite a bit higher than normal."); Urgency Emails: An All-Inclusive Guide For Marketers To Drive Maximum Conversions, https://email.uplers.com/blog/complete-guide-to-urgency-emails/; Email Subject Line Tips That Guarantee High Open Rates, https://www.loginradius.com/blog/growth/email-subject-line-tips-for-high-open-rates/ ("subject lines displaying exclusivity and urgency increases open rates upto 22%").

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 14
Case No. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  when no such limitations are found in the language of the statute itself, does not advance the

2  legislature's goal of reducing the volume of commercial email.

3      Plaintiffs' interpretation best advances the legislative goals in enacting CEMA.

4  **D.    In the alternative, this Court should certify to the Washington Supreme Court a
        question about the scope of CEMA's prohibition on false or misleading subject lines.**

5

6      Washington's Federal Court Local Law Certificate Procedure Act,  provides: "When in the

7  opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the

8  local law of this state in order to dispose of such proceeding, and the local law has not been clearly

9  determined, such federal court may certify to the supreme court the question of local law involved

10  and the supreme court shall render its opinion in answer thereto." RCW 2.60.020. The certification

11  procedure is found in RCW 2.60.030.

12      This Court may certify questions of state law to the Washington Supreme Court when the

13  question is (1) necessary to dispose of the federal court proceeding and (2) "not entirely settled"

14  under Washington law. *Cornhusker Casualty Inc. Co. v. Kachman*, 514 F.3d 982, 988–89 (9th Cir.

15  2008); *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1098 (9th Cir. 2003). A federal

16  court may also consider whether the answer to the question "will have far-reaching effects" on

17  individuals subject to Washington law. *Queen Anne Park Homeowners Ass'n v. State Farm Fire*

18  *& Cas. Co.*, 763 F.3d 1235, 1235 (9th Cir. 2014) (certifying question about the meaning of a term

19  in an insurance contract). All of these factors favor certification of the following important and

20  unsettled question regarding the scope of CEMA's prohibition on false or misleading subject lines:

21          Does Revised Code of Washington section 19.190.020(1)(b)
            prohibit sending Washington consumers a commercial email with a
22          subject line containing any false or misleading information, or is the
            prohibition limited to subject lines containing false or misleading
23          information about the commercial nature of the email message?

24

25      This question is necessary to dispose of the federal court proceeding—if Old Navy's view

26  of the statute is correct, Plaintiffs' claims will be dismissed. If Plaintiffs' interpretation is correct

27  the case will proceed to discovery, class certification, and trial. This question is not settled as a

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 15
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 matter of Washington law—there is no Washington decision on the question. The only decision

2 addressing the issue is a recent order of this Court. Resolution of CEMA's proper scope will have

3 far reaching effects on both Washington consumers and businesses that send them marketing

4 emails.

5 **E.    Plaintiffs' CPA claim survives with their CEMA claim.**

6 Old Navy concedes that under *Wright*, a CEMA violation establishes all five elements of a

7 CPA violation, including injury and causation. (Mot. at Sec. 3(D)); *see also Wright,* 189 Wash. 2d

8 718 at 729. Plaintiffs concur. As described above, Plaintiffs have properly pleaded a violation of

9 CEMA and their CPA claim must survive.

10 **F.    Plaintiffs may seek statutory damages under RCW 19.190.040.**

11 Old Navy's request that the Court strike Plaintiffs' demand for damages must be denied as

12 procedurally improper. The Ninth Circuit has held "that Rule 12(f) does not authorize district

13 courts to strike claims for damages on the ground that such claims are precluded as a matter of

14 law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) (explaining that

15 Rule 12(f) allows striking material that is "(1) an insufficient defense; (2) redundant; (3)

16 immaterial; (4) impertinent; or (5) scandalous," but a claim for damages is none of those things).

17 Old Navy's argument is also wrong on the merits.

18 Old Navy argues that "Plaintiffs cannot recover damages—actual *or* statutory—under

19 CEMA, which only permits a private plaintiff to seek statutory damages in the context of CEMA's

20 prohibition against phishing, which is not at issue in this case." (Mot. at 12.) Old Navy's first

21 mistake is focusing on RCW 19.190.090, and ignoring RCW 19.190.040, which provides:

22 "Damages to the recipient of a commercial electronic mail message. . . sent in violation of this

23 chapter are five hundred dollars, or actual damages, whichever is greater."

24 Old Navy's second mistake is a misreading of the Washington Supreme Court's controlling

25 decision in *Wright v. Lyft, Inc*. In *Wright*, the Washington Supreme Court held that RCW

26 19.190.040:

27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 16
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

> [D]oes not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic.* It is nonsensical for the legislature to write a damages provision free of preconditions, only for this court to read in elements that lawmakers did not include.

189 Wash. 2d at 729 (emphasis in original). Elsewhere the court describes RCW 19.190.040 as "liquidated damages" provision. *Id.* at 726. Ultimately the court held that RCW 19.190.040 "establishes the injury and causation elements of a CPA claim as a matter of law." *Id.* at 732. Against that backdrop, Old Navy argues that because establishing injury and causation are separate issues under the CPA, the Court should decline to award the "automatic damages" CEMA provides under the CPA. But as the very case Old Navy cites makes clear, "injury is broader than damages" under the CPA. *Handlin v. On-Site Manager Inc.*, 187 Wash. App. 841, 849, 351 P.3d 226 (2015). Here the injury and the damages are the same—while in other cases injuries may be unquantifiable and therefore not recoverable as damages. *Id.* No Washington court has ever suggested that a plaintiff cannot recover statutory damages under the CPA.

And this Court has held the opposite in the context of CEMA specifically. In *Gragg v. Orange Cab Co., Inc*, 145 F. Supp. 3d 1046 (W.D. Wash. 2015), the court concluded that the "[t]he named plaintiff…having established a violation of RCW 19.190.060(1) and the elements of a CPA claim, is entitled to *recover* the damages set forth in CEMA (RCW 19.190.040(1)) and to seek the other remedies available under the CPA." *Gragg*, 145 F. Supp. 3d at 1054. Ultimately, the court reasoned, the only way to "give effect to the legislature's stated intent" was to award a successful CEMA plaintiff the statutory damages stated at RCW 19.190.040, as well as other remedies available under the CPA. *Id* at 1053. Other courts agree. *See Gordon*, 575 F.3d at 1057 ("A recipient of commercial e-mail or electronic text messages may recover $500 per violation") (*citing* RCW 19.190.040); *Harbers*, 415 F. Supp. 3d 999 at 1007 ("the legislature authorized the recipient of a false or misleading e-mail 'to pursue the remedies afforded by the CPA,' which include bringing 'a civil action against the sender for the greater of $500 or actual damages'") (*quoting Gragg*, 145 F. Supp. 3d at 105); *Microsoft Corp. v. JDO Media, Inc.*, 2005 WL 1838609, at *3 (W.D. Wash. Aug. 1, 2005) (In the context of RCW 19.190.040(2), the court found that "it

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT - 17
Case No. 2:23-cv-00781-JHC

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  has no discretion in the amount of damages it awards" and awarding the statutory amount of $1000

2  for each violative email).

3       Old Navy's motion to strike Plaintiffs' request for the "automatic" damages of $500 per

4  violation of CEMA should be denied because it is procedurally improper. Old Navy's motion

5  should also be denied because it gets the law wrong—Plaintiffs' damages demand is proper under

6  the plain language of RCW 19.190.040 and the cases interpreting it.

7                              **IV.    CONCLUSION**

8       For all these reasons, Plaintiffs respectfully request that Old Navy's motion be denied.

9  Alternatively, Plaintiffs request that the Court certify a question to the Washington Supreme Court,

10 or that they be granted leave to amend the Complaint.

11       RESPECTFULLY SUBMITTED AND DATED this 20th day of June, 2023.

12                              TERRELL MARSHALL LAW GROUP

13
                                        I certify that the foregoing memorandum contains
14                                      6364 words in compliance with the Local Civil
                                        Rules.
15

16                                      By: */s/ Blythe H. Chandler*
                                        Beth E. Terrell, WSBA #26759
17                                      Email: bterrell@terrellmarshall.com
                                        Jennifer Rust Murray, WSBA #36983
18                                      Email: jmurray@terrellmarshall.com
                                        Blythe H. Chandler, WSBA #43387
19                                      Email: bchandler@terrellmarshall.com
                                        936 North 34th Street, Suite 300
20                                      Seattle, Washington 98103
                                        Telephone: (206) 816-6603
21                                      Facsimile: (206) 319-5450

22
                                        BERGER & MONTAGUE, P.C.
23

24                                      Sophia M. Rios, Admitted *Pro Hac Vice*
                                        Email: srios@bm.net
25                                      401 B Street, Suite 2000
                                        San Diego, California 92101
26                                      Telephone: (619) 489-0300
                                        Facsimile: (215) 875-4604
27

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 18
Case No. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

E. Michelle Drake, Admitted *Pro Hac Vice*
Email: emdrake@bm.net
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5933

Mark DeSanto, Admitted *Pro Hac Vice*
Email: mdesanto@bm.net
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3046

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT - 19
Case No. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com