THE HONORABLE JOHN H. CHUN

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROXANN BROWN and MICHELLE SMITH, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

v.

OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC; GPS SERVICES, INC.; and THE GAP, INC., inclusive,

Defendants.

Case No. 2:23-cv-00781-JHC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND TO STRIKE IMPROPER REMEDIES**

Hearing Date: June 23, 2023

## I. INTRODUCTION

Defendants Old Navy, LLC; Old Navy (Apparel), LLC; Old Navy Holdings, LLC; GPS Services, Inc.; and The Gap, Inc. (collectively, "Defendants" or "Old Navy") moved to dismiss Plaintiffs' Complaint because it does not allege any viable claims under Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190 et seq., or Consumer Protection Act ("CPA"), RCW 19.86 et seq. In their Opposition ("Opp."), Plaintiffs respond by asking this Court to create a split of authority within the Western District of Washington by rejecting precedent established by Judge

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Martinez and disregarding the legislative history of CEMA, based solely on *their* alternative interpretation of the statute that has never been adopted by any court.

In one fell swoop, Plaintiffs' Opposition calls Judge Martinez's decision in *Sur La Table v. Chen*, --- F. Supp. 3d ---, 2023 WL 1818137, at *1 (W.D. Wash. Feb. 8, 2023), "erroneous" and "unmoored," while treating their own unsupported statutory interpretation as gospel. But, despite such a cavalier attitude towards this Court's prior ruling, Plaintiffs offer no persuasive authority to the contrary. The fact is that Judge Martinez's decision is the only precedent directly addressing the issue before this Court, and Judge Martinez did so after careful consideration of the wording of the statute, legislative history, and statutory scheme. And instead of addressing much of the legislative history discussed in *Chen*, Plaintiffs only offer additional legislative history that does nothing more than restate the text of the statute.

Conceding the law of this Court is against them, Plaintiffs ask the Court to certify the issue to the Washington Supreme Court, evidently because they hope they can achieve a different result by proceeding in a different forum. Opp. 2:24–27. But the Washington Supreme Court cannot resolve *every* issue of state statutory interpretation, and there is no reason why this particular issue, on which there is already undisputed precedent, needs to be referred to that Court.

Finally, regardless of whether the Court resolves Defendants' request to strike Plaintiffs' demand for statutory damages on 12(b)(6) or 12(f) grounds, the Court should find that Plaintiffs' request for statutory damages is improper. Plaintiffs are asking this Court to impose improper, draconian penalties totally disconnected from any ***actual*** damages, which are the only damages (aside from limited trebling) available under the CPA. If this case goes forward notwithstanding the fundamental legal defects in Plaintiffs' CEMA and CPA claims, the threat of such improper penalties should not hang over the proceedings.

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

## II. ARGUMENT

### A. Plaintiffs' Plain Reading of the Statutes Ignores the *Chen* Decision, Overall Statutory Scheme, and Legislative History

Plaintiffs implicitly concede Judge Martinez's opinion in *Chen* would doom their CEMA claim under RCW 19.190.020(1)(b). Instead of trying to distinguish that decision, Plaintiffs ask this Court to *reject* a ruling issued from this Court only a few months ago in order to let their claims proceed. Plaintiffs effectively suggest that Judge Martinez did not meaningfully consider his decision, disregarding all notions of judicial comity. But even putting that issue aside, and as made clear in Defendants' motion, Judge Martinez's analysis in *Chen* holds up even under the strictest of scrutiny.

Specifically, Judge Martinez properly held that subsection (b) only prohibits email subject lines that are "false or misleading" *as to the commercial nature of an email*. *Chen*, 2023 WL 1818137, at *6; *see also* Mot. to Dismiss at 5–6. Contrary to Plaintiffs' arguments, Judge Martinez conducted a thorough examination of RCW 19.190.020 by looking at the plain language, the overall statutory scheme, Washington case law, and legislative history. *Chen*, 2023 WL 1818137, at *4.

#### 1. As Judge Martinez concluded, the plain language of the statute is ambiguous.

Plaintiffs argue the language of the statute is plain on its face and thus Judge Martinez should have applied the text of CEMA without looking to the legislative history and greater statutory scheme. Opp. at 6:8–7:2. Specifically, Plaintiffs suggest that the phrase "as to the commercial nature of the email" was manufactured by Judge Martinez and adopted without adequate explanation. *Id.* at 5:9–13. However, as demonstrated in Defendants' Motion and *Chen*, CEMA subsection (b) is in fact properly limited to subject lines that mislead the recipient as to the commercial nature of the email.

On matters of statutory interpretation, a court's "fundamental objective is to ascertain and give effect to the legislature's intent." *Hama Hama Co. v. Shorelines Hr'gs Bd.*, 536 P.2d 157, 160

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

(Wash. 1975). When reviewing the language of a statute, the court should consider "the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Lenander v. Washington State Dep't of Ret. Sys.*, 377 P.3d 199, 206 (Wash. 2016). When a statute is vague or ambiguous, courts should also consider the legislative history and "circumstances surrounding the enactment of the statute." *Five Corners Family Farmers v. State*, 268 P.3d 892, 900 (Wash. 2011). The Court must read the "act as a whole," viewing the words of the statute together and giving them a related meaning. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 985 P.2d 262, 267 (Wash. 1999) ("We construe an act as a whole, giving effect to all the language used.").

Judge Martinez began with the plain language of RCW 19.190.020 and found it susceptible to more than one reasonable interpretation as to the "scope of what false or misleading information can trigger CEMA." *Chen*, 2023 WL 1818137, at *3. Specifically, Judge Martinez determined "CEMA could apply to false or misleading 'knowledge obtained from the investigation, study or instruction' of the header alone (nature of the email) or it could appl[y] to false and misleading 'knowledge obtained from the investigation, study or instruction' of the header *and* body of the email (contents of the email)." *Id.* (emphasis in original). Judge Martinez was right. Indeed, a reasonable reading of the plain language of the statute immediately begs this fundamental question: why would the Legislature choose to ban false or misleading information *specifically* in subject lines in CEMA, without addressing false or misleading information in the body of the email? And Judge Martinez's analysis provides the satisfactory answer to this question—i.e., the Legislature sought to ban subject lines that were misleading as to the *nature* of the email, which trick people to open commercial emails they otherwise would not have opened, recognizing that broader misrepresentations were already banned by another statute, the CPA.

Plaintiffs argue Judge Martinez's analysis improperly inserts language into the statute which the Legislature left out. Opp. at 11–12. But Judge Martinez properly considered the entire text of

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

RCW 19.190.020 to determine that subsection (b) was limited to the "commercial nature of the email." *Lenander*, 377 P.3d at 206. The entirety of the pertinent section of the statute states:

> (1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:
>
> > (a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message; or
> >
> > (b) Contains false or misleading information in the subject line.

RCW 19.190.020. Judge Martinez analyzed both subsections (a) and (b) and determined the two subsections should be read to have related meanings: the prohibition on "'false or misleading information in the subject line' should similarly be read to prohibit 'false or misleading information' that obscures the commercial nature of the email." *Chen*, 2023 WL 1818137, at *3; *see also Aguayo v. U.S. Bank*, 653 F.3d 912, 927 (9th Cir. 2011) ("Generally, all the words used in a list should be read together and given related meaning when construing a statute or regulation.").

Plaintiffs would rather the Court have completely ignored subsection (a) and instead zoomed in on the text of subsection (b). But to do so would ignore the canons of statutory interpretation. *See C.J.C.*, 985 P.2d at 267. And when RCW 19.190.020 is read all together, as Judge Martinez did in *Chen*, subsections (a) and (b) demonstrate clear ambiguity on what the Legislature intended to regulate in subsection (b).

2. <u>Plaintiffs' interpretation is inconsistent with CEMA's statutory scheme.</u>

Plaintiffs argue that the larger statutory scheme of CEMA sought to reduce the volume of commercial emails by prohibiting false or misleading email subject lines generally. As evidence, Plaintiffs offer broad statements from the Legislature evincing a general concern for the growing number of commercial electronic mail consumers were receiving. Opp. at 7:18–24, 9:21–11:10.

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

But Plaintiffs cannot reconcile such an expansive legislative intent with their own narrow reading of RCW 19.190.020(b).

As discussed at length in Defendants' Motion, Washington's overall consumer protection scheme supports Judge Martinez's interpretation of CEMA. *See* Mot. to Dismiss at III(B)(3). Washington's general Consumer Protection Act already prohibits "false advertising and consumer fraud generally." *Chen*, 2023 WL 1818137, at *4; *see also Fisher v. World-Wide Trophy Outfitters, Ltd.*, 551 P.2d 1398, 1403 (Wash. App. 1976). Contrastingly, CEMA was intended to address the issue of unwanted and unlawful spam which arose when consumers were misled as to the commercial nature of emails due to intentionally vague and misleading email subject lines or misrepresenting the true origin of the email.

Plaintiffs' interpretation would go against the very broad legislative intent they attempt to assert. To Plaintiffs, the Washington Legislature passed CEMA to address the growing issue of misleading information in email communications but would only ban misleading information in the subject lines, not misleading information in the entire body of the email. Plaintiffs' version would mean that the Legislature passed CEMA to prohibit misleading information in the subject line, something they concede the CPA would have already prohibited, but would have done nothing for emails that mislead the reader as to the commercial nature of the email. Indeed, under Plaintiffs' view, CEMA would have done nothing to prevent email spam that misled the reader as to what was actually in the body of the email, and instead only would have reiterated conduct already prohibited under the CPA.

Plaintiffs also cite examples of other statutes that make certain false statements per se CPA violations. *See* Opp. at 8:5–26. But the difference here is that Plaintiffs' interpretation of CEMA cannot be reconciled when one considers the practical effect of their position. Adopting Plaintiffs' reading of CEMA would mean the Legislature sought to ban all misleading statements in email subject lines, but simply did not care about identical misleading statements in the body of an email. Such an interpretation is illogical and would result in "absurd consequences." *Five Corner Family*

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

*Farmers*, 268 P.3d at 900. Plaintiffs fail to demonstrate how their interpretation of CEMA would fit in the already robust consumer protection scheme.

3. Plaintiffs fail to address the expansive legislative history Judge Martinez discussed at length in *Chen* and in Defendant's Motion.

Plaintiffs largely ignore Judge Martinez's lengthy overview of CEMA's legislative history, and instead argue that CEMA was designed to stop email spam generally. Opp. at 9:15–16. But the legislative history demonstrates a concern with fraud in disguising *the commercial nature* of emails to recipients, not fraud in email subject lines more generally. *See* Mot. to Dismiss Ex. A at 28. The only legislative history Plaintiffs offer in the alternative simply restate the statutory language that CEMA prohibits "false or misleading information in the subject line" and, therefore, is unhelpful to the Court's analysis. Opp. at 9:21–11:2.

The original draft of CEMA first tried to ban all unsolicited commercial promotional emails, except to recipients with whom the sender had a pre-existing business relationship. *See* Mot. to Dismiss Ex. A at 10–13. Under this version, all unwanted spam would be banned outright and allow Washington consumers to easily sort through other promotional emails. Even at this first version, nothing "reflected a legislative intent to apply general false advertising law more strictly to email subject lines." *Chen*, 2023 WL 1818137 at *5. This idea was also carried through to the eventual bill. In the note accompanying the report to Washington's Governor for the final bill, the Legislature describes the prevailing issue of internet service providers (ISPs) "disguise[ing] advertisements" in the subject lines of emails. Mot. to Dismiss Ex. A at 49. Notably, Plaintiffs omit this important language in their recital of the legislative history.

Testimony by Edward J. McNichol III further demonstrates that CEMA was concerned with email subject lines concealing the commercial nature of the email: "the unsolicited commercial messages appear with deceiving text in the subject field. Topics such as 'hi There!', 'Information Request' and 'Your Business Records' have been used. This deceptive practice makes it virtually impossible to discern junk e-mail from the messages critical to my business." *Id.* at 28. The "costs

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

involved in receiving" junk emails and associated "burdens imposed on consumers," described in Plaintiffs' Opposition, are related to this exact scenario. Opp. at 11:23–26. And again, Plaintiffs do not engage with this part of the legislative history, and instead look to only legislative history that restates the statutory text of subsection (b).

In sum, Plaintiffs fail to show that this Court should follow their interpretation of CEMA or that this Court should create a District-split with Judge Martinez. The Court correctly decided *Chen* by finding the plain language of CEMA subsection (b) ambiguous and that the overall statutory scheme and legislative history supported Defendants' interpretation.

**B. Certification is Unnecessary and Inappropriate in This Case**

Plaintiffs concede that they ask the Court to completely reject a decision from this Court issued only a few months ago. In doing so, Plaintiffs urge this Court to adopt an interpretation that disregards the plain meaning, statutory interpretation, and overall statutory scheme of CEMA and the CPA. Alternatively, Plaintiffs ask this Court to certify the issue to the Washington Supreme Court in hopes of a different outcome. But certification is discretionary and makes no sense in this case. Certification was not designed so that the Washington Supreme Court could address *all* issues arising under Washington law, and it is especially not called for in circumstances where the same issue has already been resolved by this Court in a prior case.

Certification is discretionary with this Court. RCW 2.60.020; *see White v. Celotex Corp.*, 907 F.2d 104, 106 (9th Cir. 1990). Here, certification is not "necessary" for a variety of reasons. First, this Court is well-equipped to handle a matter of basic statutory interpretation, especially when there is already undisputed precedent on the issue. *See S.D. Myers, Inc. v. City and Cty. of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001) (stating courts must draw on "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements" to predict how the highest state court would decide an issue). This is standard statutory interpretation of a state law that this Court is well-equipped to decide. As demonstrated in Defendants' Motion and above, the plain language of CEMA is ambiguous. *See* Mot. to Dismiss III(B)(2); *supra* II(A)(1). However,

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

the robust statutory history and overall statutory scheme make it very clear that the Legislature intended to prohibit subject lines that misrepresent the commercial nature of the email. *Supra* (II)(A)(2)–(3). Such clear legislative intent makes certification unnecessary when the Washington Supreme Court "is in no better position" to interpret the law. *Micomonaco v. State of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995).

Additionally, this issue is not sufficiently "complex" to warrant certification. *Potter v. City of Lacey*, 46 F.4th 787, 792 (9th Cir. 2022). This motion does not require unique analysis on which this Court needs direction from the state courts. While Plaintiffs argue certification is necessary because this matter involves important policy considerations, a decision from this Court will not disturb the already vast statutory scheme the State of Washington has enacted to protect consumers against false advertising. *See, e.g.*, (RCW 46.70.180(1) (false or misleading representations related to motor vehicle sales); RCW 19.170.010 (deceptive promotional advertising of prizes); RCW 19.178.100 (false advertising in going-out-of-business sales); RCW 19.138.030 (false advertising by sellers of travel); RCW 19.25.100 (false advertising regarding music); RCW 15.86.030, RCW 19.86.023 (false representations of organic products); RCW 69.90.020 and .030 (false representations of kosher food products)). Indeed, while Judge Martinez acknowledged that Washington courts had yet to directly address the question raised by this motion, he also found that the Washington Supreme Court appeared to support Defendants' interpretation in *State v. Heckel*, 24 P.3d 404, 410 (Wash. 2001). *Chen*, 2023 WL 1818137, *4. Plaintiffs failed to address this in their Opposition after Defendants raised this issue in their Motion. *See* Mot. to Dismiss at III(B)(1).

For the foregoing reasons, certification is unnecessary and inappropriate in this case.

### C. Plaintiffs Cannot Seek Statutory Damages as a Remedy, and Defendants' Motion to Strike is Proper

Plaintiffs misplace their reliance on *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010), in opposition to Defendants' request to strike an improper demand for damages. The *Whittlestone* court made clear that such a request is still appropriate under Rule

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

12(b)(6), even if not 12(f). Regardless of whether Defendants move under Rule 12(b)(6) or Rule 12(f), Plaintiffs' request for statutory damages under the CPA is improper.

Plaintiffs argue that RCW 19.190.040 provides a proper basis for statutory damages under CEMA and allows for "damages to the recipient of a commercial electronic mail message. . . sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040. But Plaintiffs are not entitled to damages under CEMA, which only permits a private plaintiff to seek statutory damages in the context of CEMA's prohibition against phishing. RCW 19.190.080; *see also* Mot. to Dismiss at III(D).

Plaintiffs have similarly failed to show they are entitled to statutory damages for their per se CPA claim. Again, Plaintiffs improperly apply *Wright v. Lyft, Inc.*, 406 P.3d 1149 (Wash. 2017). The issue of whether statutory damages from CEMA could be imported into the CPA *as a form of relief* was not the issue before the court. *Id.* at 1151. The issue before the court was whether CEMA established *liability* under the CPA per se, because the defendant in that case failed to raise any argument regarding the proper form of relief. *Id*. Certainly, Plaintiff can cherrypick language from the court's opinion *suggesting* that it was authorizing statutory damages, but the fact remains that the form of relief available under a CPA claim premised on CEMA was not properly presented to the court, and thus cannot be considered a decided issue. Plaintiffs' citation to *Gragg v. Orange Cab Co., Inc* is similarly misplaced. 145 F. Supp. 3d 1046, 1054 (W.D. Wash. 2015) ("Having now determined that there is no private right of action under CEMA, the only way to give effect to the Legislature's stated intent is to construe the liquidated damages provision as *establishing the injury and causation elements* of a CPA claim.") (emphasis added).

Injury and damages are two separate inquiries under the CPA. *Handlin v. On-Site Manager Inc.*, 351 P.3d 226, 230 (Wash. Ct. App. 2015). This is further supported by the plain language of the CPA. There, the statutory language expressly limits any monetary reward to ***actual*** damages and the costs of the suit. *See* RCW 19.86.090 ("Any person who is ***injured*** in his or her business or property by a violation of [the CPA] may bring a civil action in superior court to enjoin further

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

violations, to recover the ***actual damages*** sustained by him or her, or both, together with the costs of the suit.") (emphasis added). Therefore, Plaintiffs fail to demonstrate why they could be legally entitled to statutory damages under CEMA or the CPA, even if their claims were allowed to proceed.

**D. Plaintiffs Fail to Defend Their CPA Claim.**

In their Motion, Defendants pointed out that Plaintiffs' CPA claim fails as a matter of law if the CEMA claim is dismissed, because Plaintiffs' CPA claim is premised entirely on a per se violation of CEMA. Mot. to Dismiss at III(C). In their Opposition, Plaintiffs do not respond to this point. Instead, they merely contend that the CPA claim should survive ***if*** the CEMA claim is not dismissed. Opp. at 16:5–9. Thus, Plaintiffs implicitly concede that if the CEMA claim fails, so too does their CPA claim, and both should be dismissed simultaneously.

**E. Plaintiffs Should Not Be Granted Leave to Amend**

Plaintiffs have not satisfied their burden to show they can amend the Complaint to plead viable claims. *See, e.g.*, *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (finding leave to amend should be denied when amendment is futile such that "no set of facts can be proved under the amendment to the pleading that would constitute a valid and sufficient claim or defense"). They cannot, for example, meaningfully argue that a factual amendment to the Complaint would bring their allegations within the scope of CEMA as established in *Chen*. Indeed, no amendment can salvage Plaintiffs' improper claims under the CPA and CEMA. The Court should dismiss Plaintiffs' claims without leave to amend.

**III. CONCLUSION**

The Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a claim, with prejudice.

///

///

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

DATED: June 23, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Damon C. Elder*
Damon Elder, WSBA No. 46754
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Email: damon.elder@morganlewis.com
andrew.decarlow@morganlewis.com

*Attorneys for Defendants*

REPLY IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' COMPLAINT
(Case No. 2:23-cv-00781-JHC) - 12

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401