IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROXANN BROWN and MICHELLE SMITH, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC; GPS SERVICES, INC.; and THE GAP, INC., inclusive,<br><br>Defendants. | Case No. 2:23-cv-00781-JHC<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br>June 27, 2025 |

## I.     <u>INTRODUCTION</u>

This is a putative class action brought under a state statute, enacted in 1998, that seeks to regulate commercial email. According to Plaintiffs, Washington's Commercial Electronic Mail Act ("CEMA") prohibits sending a commercial email with *any* false information of *any* kind in the subject line—even if, as here, the misstatement was immaterial, was never relied upon, and caused no injury.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Plaintiffs allege that Defendants sent them emails with subject lines misstating how long certain sales would be offered. Plaintiffs do not allege that the offered products were misrepresented in any way, but instead allege principally that various sales ultimately lasted *even longer* than Defendants initially advertised. Plaintiffs do not allege that any sale period was *shorter* than advertised or that they were otherwise denied any advertised discount or promotion. Nor do Plaintiffs allege that any reasonable consumer would decide to make a purchase because of any alleged misstatement, that any Plaintiff relied on any alleged misstatement, or that any Plaintiff suffered any injury as a result thereof. Nor could they.

Notwithstanding the absence of plausible, non-conclusory allegations that any purported misstatement regarding the duration of any sale was material, was relied upon, or caused any injury, the Complaint seeks statutory damages of $500 for each email received by each putative class member in which a sale *lasted longer* than initially advertised.

This strict liability theory faces glaring problems from the outset. First, Congress expressly preempted state regulations, like CEMA, that ban immaterial misstatements in a commercial email. Five years after CEMA's enactment, Congress established a comprehensive scheme to regulate commercial email, codified in the "Controlling the Assault of Non-Solicited Pornography And Marketing (CAN-SPAM) Act of 2003." The CAN-SPAM Act expressly preempts state statutes, like CEMA, that "regulate[] the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1).

To avoid this broad, mandatory preemption, Plaintiffs will likely point to a "limited, narrow exception" that Congress created for state laws prohibiting "falsity or deception." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009). But the Ninth Circuit has made clear that this exception is only for claims involving "*traditionally tortious* or wrongful conduct," and that claims based on "*immaterial* inaccuracies or omissions" are preempted.[1] *Id.* at 1062. Plaintiffs'

---

[1] All emphases are Defendants' unless otherwise noted.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

asserted theory is not based on traditionally tortious conduct. Instead, their complaint seemingly presumes CEMA bans emails containing inaccurate information of any kind in the subject line—*regardless* of whether the misstatement was intentional, material, or relied upon by the recipient.

To the extent Plaintiffs now try to reverse field and advance a theory involving alleged fraudulent misstatements, that tactic fails under the applicable pleading standards. For one, a theory involving intentional misstatements would trigger Rule 9(b)'s heightened pleading standard, meaning that Plaintiffs would need to have "*differentiate[d] their allegations*" and "inform[ed] each defendant *separately* of the allegations surrounding [their] alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Rule 9(b) "does not allow a complaint to merely lump multiple defendants together." *Id.* But that is exactly what Plaintiffs do here. With the exception of Plaintiffs' allegations that each Defendant is a distinct corporate entity (Dkt. 1, Compl. ¶¶ 9-13), the Complaint is devoid of a *single, individualized allegation* against *any* Defendant. Plaintiffs simply lump all Defendants together—collectively referring to them as "Defendants" or "Old Navy" (Compl. ¶ 1)—and then aver throughout that "Defendants" or "Old Navy" sent emails with misleading subject lines. Further, because "[t]he requirement to differentiate allegations regarding multiple defendants applies to allegations under Federal Rule of Civil Procedure 8 as well," *Sechrist v. Rev Recreation Grp., Inc*., 2023 WL 8351517, at *2 (C.D. Cal. Oct. 23, 2023), Plaintiffs' claims also should be dismissed because they violate Rule 8(a)(2).

Because Plaintiffs' CEMA claim fails, their Washington Consumer Protection Act ("CPA") claim based thereon also fails. The Court should dismiss the Complaint with prejudice.

## II. BACKGROUND

### A. The Complaint

In May 2023, Plaintiffs filed a putative class action against five Defendants. Compl. ¶¶ 9–13. The words "Old Navy" do not even appear in the names of two named Defendants, GPS Services, Inc. and The Gap, Inc. *Id.* Nor does the Complaint include individualized allegations

DEFENDANTS' MOTION TO DISMISS - 3
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

against *any* Defendant. Instead, the Complaint simply lumps all five Defendants together, labeling them "Old Navy" or "Defendants," *id.* ¶ 1, and alleges that "Old Navy" or "Defendants" violated CEMA. *Id.* ¶ 4.

According to Plaintiffs, CEMA is violated "anytime a commercial e-mail is transmitted that contains false or misleading information in the subject line." *Id.* ¶ 21. Here, Plaintiffs allege that "Old Navy" sent emails to Plaintiffs with subject lines that *understated* the length of the advertised sale. For example, some subject lines allegedly stated "today only" or "this week only," when the sale ultimately lasted for a longer period. *See, e.g.*, *id.* ¶¶ 38, 42, 47, 48. Another subject line contained the words "A Sunday treat"; Plaintiffs maintain this was "false and misleading because the advertised deals were not limited to that Sunday." *Id.* ¶ 51.

Plaintiffs allege the subject lines of the emails understated the ultimate length of the sale or promotion in four possible ways:

> (1) "a sale, discount, price, or other offer would only be available for a limited time, and the sale, discount, price, or other offer was in fact offered for a longer period of time;"
>
> (2) "a sale, discount, price, or other offer was new or only offered that day, and the sale, discount, price, or other offer was in fact already being offered;"
>
> (3) "a sale, discount, price, or other offer would (sic) ending soon, and the sale, discount, price, or other offer continued to be offered for at least another day;" or
>
> (4) "a sale, discount, price, or other offer was being extended, when the sale, discount, price, or other offer was previously planned to continue through the extension advertised."

*Id.* ¶ 91. Plaintiffs assert the transmittal of these emails violated CEMA and "per se" violated the CPA. *Id.* ¶¶ 102, 110.

**B.      Procedural History**

In June 2023, Defendants moved to dismiss the Complaint based on *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082 (W.D. Wash. Feb. 8, 2023), the sole opinion in this District that had then addressed whether CEMA was limited to subject lines misrepresenting the commercial nature

DEFENDANTS' MOTION TO DISMISS - 4
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

of an email. Dkt. 5. After Defendants moved to dismiss—citing *Chen*—this Court certified to the Washington Supreme Court whether CEMA's prohibition on false and misleading subject lines: (i) is "limited to subject lines containing false or misleading information about the commercial nature of the email," or (ii) applies to subject lines "containing *any* false or misleading information." Dkt. 27. The Court then denied Defendants' motion to dismiss "without prejudice" "[i]n light of the Order Certifying Question to Washington State Supreme Court." Dkt. 28.

After accepting certification, the Washington Supreme Court issued a 5-4 decision in April 2025, in which it read CEMA expansively to "prohibit[] the use of *any* false or misleading information in the subject line." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). The Court held that, "[t]o violate [CEMA], an e-mail subject line does *not* need to deceive consumers about the subject or purpose of the e-mail—it merely needs to contain false or misleading information" of any kind. *Id*. at 44. The Court clarified that CEMA was intended to address "the growing 'volume' of commercial e-mails." *Id.* at 41. When CEMA was enacted, the Court explained, "[i]nternet access was comparatively slow and expensive" and "[c]onsumers often paid for access 'by the minute or hour.'" *Id.* The legislature was therefore "concerned about the added cost consumers faced when a barrage of commercial e-mails meant that they paid internet providers for time spent sifting through in-boxes cluttered by spam." *Id.*

Following the Washington Supreme Court's expansive reading of CEMA, Defendants brought this motion to dismiss on alternative grounds.

### III. ARGUMENT

Plaintiffs' claims should be dismissed for two reasons: they are preempted by federal law and they fail to comply with Rules 8(a)(2) and 9(b).

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted), and to "raise a right to relief above the speculative level[.]"

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law" and "unwarranted inferences are insufficient to defeat a motion to dismiss." *Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023) (Chun, J.) (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)). Because plaintiffs must "differentiate allegations regarding multiple defendants," a complaint "based on a theory of collective responsibility must be dismissed." *Sechrist*, 2023 WL 8351517, at *2.

To the extent Plaintiffs now contend their claims are based on intentional rather than inadvertent misstatements, they also must comply with Rule 9(b)'s heightened pleading standard. Rule 9(b) "requires more specificity," including the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. Like Rule 8(a)(2), Rule 9(b) "does not allow a complaint to merely lump multiple defendants together." *Id.* The Complaint does not satisfy these pleading requirements.

### B. Plaintiffs' CEMA Claim Should Be Dismissed Because It Is Preempted by Federal Law.

#### 1. The CAN-SPAM Act Expressly Preempts CEMA.

Under the Supremacy Clause, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). Congress may choose to "explicitly define[] the extent to which its enactments preempt state law." *Virtumundo*, 575 F.3d at 1060 (quoting *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)).

That is what occurred here. When Congress passed the CAN-SPAM Act in 2003—five years after CEMA's enactment—it chose to expressly preempt state laws that regulate commercial email, in favor of a national standard. Congress recognized that the existing patchwork of "disparate" state laws regulating commercial email had proven unworkable:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part

DEFENDANTS' MOTION TO DISMISS - 6
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

because, **since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply**.

15 U.S.C. § 7701(a)(11). Congress replaced this jumble of state laws with a national set of rules and liability standards. In so doing, Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*"); *see also Virtumundo*, 575 F.3d at 1049 ("[D]espite what Gordon and likeminded anti-spam enthusiasts might contend, the purpose of the CAN–SPAM Act was not to stamp spam out of existence"; "there are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote"). On the one hand, Congress imposed new national restrictions on commercial email, including a nationwide prohibition on commercial emails with subject lines that are "likely to mislead a recipient" about "a *material* fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704. On the other hand, Congress expressly limited who could enforce the statute, largely entrusting enforcement to government bodies. *See id.* § 7706.

To ensure no state could upend this delicate balance, Congress barred any state from foisting its own set of liability standards onto the marketplace. To that end, Congress expressly mandated that the CAN-SPAM Act would "supersede[] any statute, regulation, or rule of a State" that "expressly regulates the use of electronic mail to send commercial messages." *Id.* § 7707(b). Congress utilized this expansive language to "*broadly preempt* state regulation of commercial e-mail with *limited, narrow exception*." *Virtumundo*, 575 F.3d at 1061.

CEMA—"Washington's statute regulating commercial e-mail messages"—fits squarely within this express preemption proviso. *Virtumundo*, 575 F.3d at 1057 (holding that CAN-SPAM Act preempts CEMA claims); Compl. ¶¶ 19-20 (alleging CEMA "regulates deceptive email marketing" and "was enacted to protect concrete interests in being free from deceptive commercial e-mails") (citations omitted).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### 2. The Limited, Narrow Exception to Preemption Reserved for Traditional Torts Does Not Apply.

To avoid preemption, Plaintiffs can be expected to invoke a "limited, narrow exception," created by Congress for state laws based on "*traditional tort theories*." *Virtumundo*, 575 F.3d at 1061-62 (citing 15 U.S.C. § 7707(b)(2)). Because that exception is inapplicable, this strategy fails. For one, CEMA is not based on traditional tort theories like fraud or deceit. For example, a plaintiff need not plead and prove reliance or injury—cornerstones of such claims—to establish a CEMA violation. Further, Plaintiffs do not plead (and apparently believe they are not required to plead) materiality—an element that the Ninth Circuit has expressly ***required*** to invoke the narrow exception to preemption.

Plaintiffs' pleading strategy reflects a calculated choice. By premising their allegations on what is effectively a strict liability theory, Plaintiffs hope to circumvent otherwise insurmountable proof obstacles and barriers to class certification—including having to establish that each *individual class member* actually read, relied upon, and suffered injury as a result of each material misstatement in each email he or she received. However, the strict liability theory that Plaintiffs advance to bypass these obstacles is preempted, because it does not satisfy the "limited, narrow exception" Congress created for fraud and deceit claims. *Virtumundo*, 575 F.3d at 1061-62.

### 3. Only Claims Involving Traditional Fraud or Deceit Survive Preemption.

The contours of the preemption exception for "traditional tort theories" have been enunciated in a controlling decision by the Ninth Circuit, as well as a decision of the Fourth Circuit on which the Ninth Circuit heavily relied. *Id.* at 1063. In both cases, the court reached the same conclusion after close analysis: only claims premised on "*traditionally tortious*" conduct survive preemption. *Id*. at 1062.

In *Omega*, the Fourth Circuit addressed whether the CAN-SPAM Act preempts claims based on the Oklahoma analogue to CEMA. 469 F.3d at 354. Like CEMA, the Oklahoma statute "reach[ed] beyond common law fraud or deceit." *Id*. at 353 ("By its terms, the statute is not limited to inaccuracies in transmission information that were material, led to detrimental reliance by the

DEFENDANTS' MOTION TO DISMISS - 8
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

recipient, and were made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth.").

The Fourth Circuit concluded that the plaintiff's claims, premised on "immaterial errors," were preempted. *Id*. Of particular relevance here, the court narrowly construed the exception for claims based on "falsity or deception," 15 U.S.C. § 7707(b)(1)—the same exception that Plaintiffs now appear to invoke:

> The pre-emption clause links "falsity" with "deception"—**one of the several tort actions based upon misrepresentations**. Keeton et al., Prosser and Keeton on the Law of Torts § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false-statement tort); Restatement (Second) of Torts § 525 (describing elements of deceit). **This pairing suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort.**

*Id.* at 354. "Torts involving misrepresentations"—in particular, common law fraud and deceit specifically referenced in *Omega*—require materiality, reliance, actual injury, and deceptive intent. *Id.* (citing *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003)); Restatement (Second) of Torts § 525 (stating that claim for "deceit," *i.e.*, "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss"); *accord Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (2012) (summarizing "nine essential elements of fraud").

The Fourth Circuit explained how its narrow reading of the exception was further supported by "[o]ther sections of the CAN-SPAM Act," which contain a materiality component, *Omega*, 469 F.3d at 354. Indeed, if claims premised on "bare error" survived preemption, it would "upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Id.* at 354. And expanding the exception to include "strict liability" claims premised on "insignificant inaccuracies" would "undermine[] to the point of near-irrelevancy" the "national standard" that Congress created and its "plain intent." *Id*. at 355. Indeed, "[t]he *strict liability standard imposed by a state such as Oklahoma would become a de facto national standard, with*

DEFENDANTS' MOTION TO DISMISS - 9
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*all the burdens that imposed* [on companies], even though the CAN–SPAM Act indicates that Congress believed a *less demanding* standard would best balance the competing interests at stake." *Id*. By contrast, limiting the exception to "*more narrowly tailored causes of action*" based on traditional fraud or deceit would "effectively respond to the obstacles to convenience and efficiency that unsolicited messages present." *Id*. at 355 (citations omitted).

Three years later, in *Virtumundo*, the Ninth Circuit "independently analyzed the CAN–SPAM Act's text, structure, and legislative purpose" and "reach[ed] the same conclusion as the district court and the Fourth Circuit." 575 F.3d at 1061. The Ninth Circuit agreed that the preemption exception Congress created is "narrow," "limited" to claims involving "*traditionally tortious* or wrongful conduct." *Id*. at 1062. Accordingly, the Ninth Circuit held that only claims akin to a "*tort action based on misrepresentations*" survive preemption. *Id*. The Ninth Circuit found its narrow reading of the exception further supported by the "statutory text"—which "counsels against any interpretation that preempts laws relating to 'acts of fraud'"—and by "[f]urther scrutiny of congressional intent." *Id*. Finally, the Ninth Circuit agreed with the Fourth Circuit that a "contrary reading" of the statute would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo*, 575 F.3d at 1061 (citing *Omega*, 469 F.3d at 355).

Accordingly, the Ninth Circuit held that CEMA claims based on "*immaterial* inaccuracies or omissions" are preempted. *Id*. at 1062; *id*. at 1065 (requiring misrepresentation of "something of *material importance*") (emphasis in original); *id*. at 1061 (stressing that "*materiality component* comported with the policy pursued by the federal legislation as a whole"). The Ninth Circuit also underscored the plaintiff's own admission that "he was not in any way misled or deceived"—*i.e*., that he did not rely on any alleged misstatement, a prerequisite to establish fraud or deceit. *Id*. at 1063. Hence, *Virtumundo*'s determination that Section 7701(b)(1) creates a "limited, narrow exception," 575 F.3d at 1061, forecloses the erroneous, "broader" exception certain other courts had previously found, which was "not limited *just* to common-law fraud and other similar torts."

DEFENDANTS' MOTION TO DISMISS - 10
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (emphasis in original); *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

Prior to *Virtumundo*, the district court in *Kleffman v. Vonage Holdings Corp*. similarly concluded that the plaintiffs' claims under a California law regulating commercial emails were "clearly preempted." 2007 WL 1518650, *3 (C.D. Cal. 2007). "Though Congress did not define the terms 'falsity' or 'deception'" in the preemption exception, *Kleffman* found that "it is clear that it meant these terms to refer to *traditional, tort-type concepts*." *Id*. *Kleffman* stressed Congress's concern that expanding the exception to insulate claims in which there was no actual, detrimental reliance or injury would result in the very "patchwork of state laws" Congress sought to avoid. *Id*. (citing § 7701(a)(11)). By contrast, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern" because they target misconduct that, under longstanding tort theories, a "legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id*. (citing S.Rep. No. 108–102, at 21–22). Hence, Congress "left states room *only* to extend their *traditional fraud prohibitions* to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such *well-established prohibitions*." *Id*.; *accord Silverstein v. Liquid Minds LLC*, B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) (minute order) (finding section 17529.5 preempted because not based on traditional fraud theory).

4. Plaintiffs' CEMA Claim Does Not Survive Preemption Because It Is Not Based on Fraud or Deceit.

To circumvent the class certification and substantive proof obstacles associated with a traditional tort theory, Plaintiffs advance, instead, a strict liability theory under CEMA. But such a theory does not fit within the "limited, narrow exception" Congress created for fraud and deceit claims. As such, Plaintiffs' asserted theory is preempted.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

As an initial matter, scrutiny of CEMA's text and historical context reveals the numerous ways a claim under the statute differs from the fraud or deceit claims that Congress exempt from preemption. Enacted five years before the CAN-SPAM Act, CEMA's central purpose was not to create an additional remedy for fraud but rather to help internet users avoid the inconvenience of "sifting through in-boxes cluttered by spam." *Brown*, 567 P.3d at 41. CEMA was passed at a time when "[i]nternet access was comparatively slow and expensive" and "[c]onsumers often paid for access 'by the minute or hour.'" *Id.* The legislature was therefore "concerned about the added cost consumers faced" from having to sort through emails with subject lines containing false information, *see id.* at 41, and "sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails," *id.* at 45.

Consistent with this goal of reducing inbox clutter, the text of CEMA does not contain the traditional elements of a tort claim based on fraud or deception. *See Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) ("*Isomedia*") (finding the "required elements of a claim under CEMA" do not "include all the elements of common law fraud"). Instead, the text of the statute "purport[s] to regulate a *vast array* of *non-deceptive* acts and practices." *Virtumundo*, 575 F.3d at 1059 (noting CEMA imposes liability for "*unintentional*" errors or "*imperfect* representations") (citations omitted). But CEMA's expansive sweep is no longer consistent with federal law. That is because, a few years after CEMA was enacted, Congress adopted a national standard for regulating commercial email, in which it expressly preempted state laws that ban emails containing *any* immaterial false information whatsoever.

Plaintiffs plead their claims as if the CAN-SPAM Act does not exist. Indeed, they advance the very kind of strict liability theory that Congress preempted and *Virtumundo* and *Omega* rejected—without alleging *any*, much less all, elements of a traditional fraud or deceit claim.

***First***, whereas fraud or deceit requires a *materially* false statement, *Elcon*, 273 P.3d at 971, the Complaint does not plausibly allege that any alleged misstatement was material to Plaintiffs— presumably reflecting Plaintiffs' position that CEMA imposes expansive liability even for

DEFENDANTS' MOTION TO DISMISS - 12
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*immaterial* misstatements. *Virtumundo*, 575 F.3d at 1059; RCW § 19.190.020. Nowhere do Plaintiffs allege that they failed to receive any discount, sale price, or other promotion advertised. Compl. ¶ 91. Instead, each Plaintiff alleges that Defendants' sales ultimately lasted "for a *longer period of time*" than initially advertised. *Id*. But the Complaint "does *not* allege that this information [wa]s material" to *any* identified purchase decision by Plaintiff, *Isomedia,* 2009 WL 10676391, at *4—a prerequisite to establish fraud or deceit. *Id*., ¶¶ 27-63; *Elcon*, 174 Wash. 2d at 167 (materiality absent because alleged misstatements were not material *to the plaintiff*); *Martin v. Miller*, 24 Wash. App. 306, 309 (1979) (analyzing whether "representations were *material to the plaintiffs' decision* to enter into a purchase and marketing agreement with the defendant"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc*., 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "*material to [the plaintiff's] decision-making*"); *Brummett v. Washington's Lottery*, 171 Wash. App. 664, 678 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance").[2]

For example, Plaintiffs allege that email subject lines contained misrepresentations such as "$20 Rockstars + 40% OFF (final reminder!)," and "CYBER EVENT CONFIRMED FIFTY PERCENT OFF + $7 PJ pans." Compl. Ex. B (9/20/2018); *see, e.g*., *id*. ("50% OFF *all* tees today + our jeans sale is ending soon") (9/24/2018); *id*. ("SALE NOTIFICATION: You're the recipient of up to 50% OFF + permission to DOUBLE DIP[]") (10/21/2021); *id*. ("CYBER WEEKEND IS HAPPENING [] $1 cozy socks in-store, $10 jeans, $6 Thermal Tees, 50% off & more") (11/27/2021); *id*. ("You've earned it! 50% OFF & $7 PJ pants, plus more Cyber Monday deals") (11/29/2021); *id*. ("FORTY PERCENT OFF ending soon!") (3/20/2022); *id*. ("ENDING SOON: don't miss our entire store on sale + $2 tanks!") (5/29/2022); *id*. ("CYBER WEEKEND OFFICIAL: 50% off EVERYTHING (for real!) + $12 jeans & $2 cozy socks") (11/22/2022); *id*. ("Well-deserved: $12.50 jeans today") (4/30/2022); *id*. ("CUTTING IT CLOSE: $8 dresses and

---

[2] *Kenda Corp. v. Pot O'Gold Money Leagues, Inc*., 329 F.3d 216, 225 (1st Cir. 2003) (false statement must be "material to the *plaintiffs'* decision to sign the contract").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

HALF OFF all shoes (please don't forget!)") (6/25/2022); *id*. ("Tick-tock: 50% OFF for the fam ends soon") (7/11/2022). It is hard to see how these statements would even be false under Plaintiffs' theory of the case, let alone that any hypothetical inaccuracy in these statements was material to Plaintiffs' or anyone else's shopping decisions. The Ninth Circuit has made clear that the CAN-SPAM Act preempts claims like those Plaintiffs assert here, premised on *immaterial inaccuracies. See Virtumundo*, 575 F.3d at 1065 (requiring "something of *material* importance") (emphasis in original).

Several years before the Ninth Circuit's binding decision in *Virtumundo*, a court in the Eastern District of Washington held that § 19.190.020(1)(b) did not require materiality or knowledge, and that a claim under that proviso was not preempted because the statute prohibited falsity and deception. *See Gordon v. Impulse Mktg. Group*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005). However, *Impulse Marketing* is incompatible with the Ninth Circuit's ensuing decision in *Virtumundo*. As such, it is no longer good law. If § 19.190.020(1)(b) does not require materiality, as *Impulse Marketing* found, then a claim under that proviso would be preempted. *Virtumundo*, 575 F.3d at 1061-62 (deeming claims premised on "immaterial inaccuracies" preempted). But on this Motion, this Court need not resolve whether materiality is an element of § 19.190.020(1)(b), nor whether claims under that proviso are facially preempted in all circumstances. At this stage, Defendants advance a narrower basis for dismissal: Plaintiffs do not even plausibly *plead* a theory of liability based on material misstatements (or any other element of a traditional fraud or deceit claim), and that fact alone requires preemption under *Virtumundo*.[3] *Id.*

---

[3] If this case ultimately proceeds, the Court likely will need to decide whether materiality is an element of a claim under § 19.190.010(1)(b), pursuant to state law. If it is not, then the Court will need to resolve whether that means Plaintiffs' claims are facially preempted in their entirety, regardless of their specific allegations, or whether Plaintiffs could survive preemption under *Virtumundo* by proving the additional element that the alleged misrepresentations were material. As Plaintiffs do not plead materiality in the first instance, however, these issues need not be decided at this stage, and the Complaint should be dismissed based on the pleadings.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

("Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions.").

**Second**, because Plaintiffs advance a strict liability theory under CEMA, "there is no allegation of 'reliance' to be found *anywhere* in the [Complaint]." *Isomedia*, 2009 WL 10676391, at *4. Plaintiffs' bare allegation that they *"received"* Defendants' emails "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Id.*; Compl. ¶¶ 75-76, 78, 83-84, 86. Had either Plaintiff actually read and detrimentally relied on any alleged misstatement by Defendants, the Complaint would have said so. But neither Plaintiff did so.

**Third**, neither Plaintiff alleges she even *read*—let alone suffered an actual injury as a result of her reliance on—any purported misstatement in the subject line of any email. Neither Plaintiff alleges, for example, that she made any shopping decision to her detriment based on the promotional period advertised, or that she even opened any email. Nor is it even plausible that Plaintiffs suffered actual injury merely because a sale ultimately lasted "for a *longer* period" than advertised. Compl. ¶ 91. Instead, each Plaintiff merely complains about the *volume* of emails received, which is not actionable under Plaintiffs' theory of the case, premised on the *substance of the subject lines. See* Compl. ¶¶ 3, 33, 75-76, 78, 83-84, 86.

**Fourth**, the Complaint also does not plausibly allege that defendants knew the subject lines of the emails sent were "misleading" on the date sent, as required to establish traditional fraud or deceit. *Isomedia*, 2009 WL 10676391, at *4.

In sum, Plaintiffs do not plausibly allege "that Defendants knew the subject lines were misleading, that they intended the emails to be deceptive, or that Plaintiffs took any action in reliance on Defendants' alleged misrepresentations." *Gordon v. Virtumundo, Inc.*, 2006 WL 3873368 at *2-3 (W.D. Wash. Dec. 8, 2006). Because Plaintiffs do not adequately plead that Defendants engaged in fraud or deceit, their claims do not survive preemption. *Id.*; *Kleffman,* 2007 WL 1518650, at *3 (Section 17529.5 claims are "clearly preempted" because plaintiff "does not

DEFENDANTS' MOTION TO DISMISS - 15
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage emails").[4]

## C. The Complaint Should Be Dismissed Because Plaintiffs Impermissibly Lump All Defendants Together, In Violation of Rules 8(A)(2) And 9(B).

Plaintiffs' claims fail on a separate, independent ground: Plaintiffs impermissibly lump all Defendants together, in violation of Fed. R. Civ. P. 8(a) and 9(b), and fail to plead materiality, reliance, and actual injury *at all*—much less with particularity, as required.

### 1. The Complaint Violates Rule 9(b)'s Heightened Pleading Standard.

#### a. *Plaintiffs' Claims Must Comply with Rule 9(b).*

To circumvent preemption, Plaintiffs may now seek to advance a fraud theory to squeeze themselves within the limited, narrow exception Congress created. In that case, Plaintiffs must— but fail to—comply with Rule 9(b). *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) may apply to claims—that although lacking fraud as an element—are 'grounded' or 'sound' in fraud.") (citations omitted); *accord In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005), *abrogation on other grounds recognized by Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023). So, Plaintiffs' CEMA claim must be dismissed for this reason as well.

#### b. *Plaintiffs' Claim Violates Rule 9(b)'s Particularity Requirements.*

Plaintiffs violate Rule 9(b)'s heightened pleading standard for a host of reasons. First, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together." *Swartz*, 476 F.3d at 764–65. Instead, "[a]t a minimum," Plaintiffs must "identif[y] the role of [each] defendant[] in

---

[4] Plaintiffs may try to rely on district court cases rejecting preemption based on claims premised on different legal theories and statutes, but those cases are inapposite. For example, preemption has been rejected where plaintiffs alleged *materially* and *intentionally* false statements under a California statute that required those elements, even though they did not allege other elements. *See Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at \*4 (N.D. Cal. Mar. 31, 2010); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at \*11 (N.D. Cal. Apr. 1, 2010) (finding claims based on Section 17529.5(a)(3) survive preemption because "Section 17529.5(a)(3) is also quite distinct from the Washington statute in *Virtumundo*"). Here, by contrast, Plaintiffs advance a strict liability theory.

the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989) (dismissing claim that "does not attribute specific conduct to individual defendants").

Plaintiffs violate this requirement. With the exception of Plaintiffs' allegations that each Defendant is a distinct corporate entity (Compl. ¶¶ 9-13), the Complaint is devoid of a *single, individualized allegation* against *any* Defendant. Plaintiffs do not separately describe each individual Defendant's role in drafting, approving, and distributing the offending emails, as Rule 9(b) requires. Instead, Plaintiffs simply lump all Defendants together—collectively referring to them as "Defendants" or "Old Navy" (*id*., ¶ 1)—and then aver throughout that "Defendants" or "Old Navy" sent emails with misleading subject lines. As the Complaint is "shot through with general allegations" against all "defendants" without any attempt to distinguish or differentiate them, *Swartz*, 476 F.3d at 765, it is deficient.

Moreover, neither Plaintiff pleads *at all*—much less with particularity—that she relied upon, and suffered actual injury as a result of, any purported misstatement in the subject line of any email. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (holding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (finding complaint "failed to plead reliance with particularity"). Nor does either Plaintiff plead specific facts establishing that any alleged misstatement was material to her or anyone else. *Supra* at § III.B.4. So, the Complaint violates Rule 9(b) for this reason as well. *See Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting defendant judgment on the pleading because plaintiff failed to plead with sufficient particularity any "material representation to him that he had right to and did rely upon to his detriment"); *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of its damages," which must be plead with particularity"); *McAfee v. Select Portfolio Servicing, Inc.*,

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

192 Wn. App. 1059 (2016) (unpublished) (affirming dismissal of fraud claim that failed to "state facts supporting her fraud claims with sufficient particularity").

These deficiencies require dismissal of the Complaint; they are not a ticket to discovery. *Johnson v. Allegretti*, 778 F. App'x 549, 550 (9th Cir. 2019) (affirming dismissal of complaint because "many of plaintiffs' allegations lump Allegretti and HBK with other defendants, it is not clear which defendant allegedly made which misrepresentation"); *Mostowfi,* 269 F. App'x at 624 (affirming dismissal of complaint because "plaintiffs lump together the defendants without identifying the particular acts or omissions that each defendant committed); *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (reversing and requiring dismissal of complaint because plaintiff failed to "differentiate their allegations" as to each defendant and, instead, resorted to "group allegations"); *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of complaint because "the complaint grouped multiple defendants together and failed to 'set out which of the defendants made which of the fraudulent statements/conduct'").

To the extent Plaintiffs contend they need discovery to comply with Rule 9(b), they have it backwards. "The Ninth Circuit has held that a plaintiff may not use discovery to cure a facially insufficient pleading." *Derakhshan v. Wells Fargo Bank*, N.A., 2024 WL 5317248, at *2 (C.D. Cal. Dec. 17, 2024). Indeed, such an approach would be "*directly contrary* to the purpose of Rule 9(b)," which requires that Plaintiffs demonstrate "some substance to their claim of fraud *before* subjecting a defendant to the rigors of the discovery process." *Periguerra v. Meridas Cap., Inc.*, 2010 WL 395932, at *5 (N.D. Cal. Feb. 1, 2010) (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)). Accordingly, Rule 9(b) "will have failed in its purpose" if Plaintiffs' "conclusory generalizations," simply lumping all Defendants together, "will permit [Plaintiffs] to set off on a long and expensive discovery process" against each Defendant, "in the hope of uncovering some sort of wrongdoing." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982).

DEFENDANTS' MOTION TO DISMISS - 18
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Numerous other courts have reached the same conclusion. *See Kennedy v. Full Tilt Poker*, 2010 WL 11597364, at *2 (C.D. Cal. May 6, 2010) (forbidding use of discovery to bolster complaint because the "clear intent" of Rule 9(b) is to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed") (citations omitted); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (requiring compliance with Rule 9(b) "*before access to the discovery process is granted*"); *Williams v. Scottrade, Inc.*, 2006 WL 1722224, *2 (E.D. Mich. June 19, 2006); *4MVR, LLC v. Warren W. Hill Const. Co.*, 2013 WL 310290, at *7 (D. Mass. Jan. 25, 2013).

The Complaint should be dismissed at the threshold.

## 2. Plaintiffs' Group Allegations Violate Rule 8(a)(2).

Apart from Rule 9(b)'s heightened pleading requirements, the Complaint must be dismissed because Plaintiffs' group pleading strategy runs afoul of Rule 8(a)(2).

"The requirement to differentiate allegations regarding multiple defendants applies to allegations under Federal Rule of Civil Procedure 8 as well." *Sechrist*, 2023 WL 8351517, at *2 (citations omitted); *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996 (D. Haw. 2019) (dismissing "under *both* Rule 8(a) and Rule 9(b)" complaint that "improperly lumps Pyramid together with the other Broker Defendants," "fails to plead specific acts by Pyramid," and fails to "differentiate between the various Defendants"); *Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, 2017 WL 2927481, at *14 (D. Or. Apr. 10, 2017) ("Plaintiffs fail to satisfy the requirements of *either* Rule 9(b) *or* Rule 8[(a)] by referring generally to [a group of different entities] making misrepresentations and omissions.").

Under Rule 8(a)(2), "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Sechrist*, 2023 WL 8351517, at *2. Hence, "[a] complaint based on a theory of collective responsibility must be dismissed." *Id.* This result is sensible. A pleading that fails "to allege what role each Defendant played in the alleged harm" "makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *In re iPhone*

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

*Application Litig*., 2011 WL 4403963, at *8 (N.D.Cal. Sept. 20, 2011); *Washington v. Fern*, No. 2024 WL 5424375, at *3 (C.D. Cal. Oct. 28, 2024) (requiring plaintiff to provide "specific factual detail regarding each Defendant's acts and omissions that caused a violation of Plaintiff's rights"); *Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, 2022 WL 6733328, at *3 (D. Or. Oct. 11, 2022) ("Plaintiffs must identify what action *each* Defendant took that caused Plaintiffs' harm, *without* resort to generalized allegations against Defendants *as a whole*.").

Hence, a complaint that "lumps all Defendants together" violates *Twombly's* pleading standard. *Smith v. NaphCare, Inc*., 2022 WL 2983942, at *6 (W.D. Wash. July 28, 2022); *Estrada v. Washington State Dep't of Soc. & Health Servs., Div. of Child Protective Servs.*, 2018 WL 3727589, at *2 (W.D. Wash. Aug. 6, 2018) (rejecting as insufficient under *Twombly* complaint that "attempts to lump in the other Defendants without specifying what they did"); *ThinkBronze, LLC v. Wise Unicorn Ind. Ltd*., 2013 WL 12120260, at *10 (C.D. Cal. Feb. 7, 2013) ("Unicorn's argument that *Twombly* does not require that it plead facts showing the participation of each defendant, moreover, is not supported by case law[.]").

As discussed, the Complaint violates this fundamental pleading requirement by simply "lump[ing] together" all defendants. *Gen-Probe, Inc. v. Amoco Corp*., 926 F. Supp. 948, 961 (S.D. Cal. 1996); Compl. ¶ 1. Indeed, "[e]very single non-jurisdictional allegation in Plaintiff's [] Complaint is alleged jointly against 'Defendants,' rather than distinguishing the particular roles of either each [sic] individual Defendant," *Wheeler v. MicroBilt Corp.*, 2015 WL 13683632, at *1 (C.D. Cal. Dec. 10, 2015), and thus "fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe, Inc.*, 926 F. Supp. at 961. Indeed, it would be unfairly prejudicial (and highly impractical) to require each Defendant to answer a Complaint that makes no effort to distinguish among Defendants or specify what each individual Defendant did that was wrong.

To the extent Plaintiffs argue they need discovery to adequately plead a claim, they put the cart before the horse. "Ninth Circuit case law . . . precludes the use of anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

advance to discovery." *Solar Integrated Roofing Corp. v. Massey*, 2024 WL 1973503, at \*4 (S.D. Cal. May 3, 2024); *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("[D]iscovery cannot cure a facially insufficient pleading"); *accord Audubon Imports, LLC v. Bayerische Motoren Werke Aktiengesellschaft*, 2021 WL 4958987, at \*1 n.1 (9th Cir. Oct. 36, 2021). Indeed, Rules 8 and 12(b)(6) must be satisfied at the pleading stage—plaintiffs may not 'rely on anticipated discovery' to reach the discovery stage." *Hoang v. Hulme*, 2024 WL 1406268, at \*5 (D. Haw. Feb. 1, 2024) (citing *Whitaker*, 985 F.3d at 1177.

Accordingly, this action should be dismissed at the threshold—not advance to discovery. *See Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996 (D. Haw. 2019) (dismissing "under *both* Rule 8(a) and Rule 9(b)" complaint that "improperly lumps Pyramid together with the other Broker Defendants," "fails to plead specific acts by Pyramid," and fails to "differentiate between the various Defendants"); *Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, 2017 WL 2927481, at \*14 (D. Or. Apr. 10, 2017) (dismissing complaint because "Plaintiffs fail to satisfy the requirements of *either* Rule 9(b) *or* Rule 8[(a)] by referring generally to [a group of different entities] making misrepresentations and omissions"); *Washington v. Allison*, 2024 WL 5424374, at \*3 (C.D. Cal. Dec. 2, 2024) (dismissing action under Rule 8(a)(2) and requiring Plaintiffs to "provide *specific factual detail* regarding each Defendant's acts and omissions that caused a violation of Plaintiff's rights"); *Cent. Tel. Co. v. K&N Gen. Constr., Inc.*, 2023 WL 9035279, at \*3 (D. Nev. Dec. 29, 2023) (dismissing action under Rule 8(a)(2) that "almost exclusively contains generalized allegations against all Defendants as a whole").

**D. Plaintiffs' Procedural Objections Are Meritless.**

In the parties' joint status report, Plaintiffs objected that this Motion is procedurally barred, because Fed. R. Civ. P. 12(g)(2) supposedly strictly limits a defendant to one motion to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiffs are wrong for five independent reasons.

*First*, Plaintiffs ignore that this Court denied Defendants' motion to dismiss "*without prejudice*." Dkt. 28. A dismissal without prejudice avoids the procedural bar Plaintiffs posit. *See*

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Rogers v. JP Morgan Chase Bank*, 2022 WL 17361234, at *1 (E.D. Cal. Nov. 17, 2022) (permitting renewal of motion to dismiss denied without prejudice); *accord Jackson v. Gaspar*, 2020 WL 5991510, at *4 (C.D. Cal. May 18, 2020); *Castillo v. Cho*, 2023 WL 2583930, at *3 (W.D. Tex. Mar. 20, 2023); *Bailey v. Shelby Cnty., Tenn*., 2005 WL 946976, at *3 (W.D. Tenn. Mar. 18, 2005). Plaintiffs' contrary argument reads the words "without prejudice" out of the Court's ruling.

*Second*, when this Court denied the prior motion to dismiss without prejudice, it recognized that Defendants' arguments for dismissal would turn, to a significant extent, on how the Washington Supreme construed CEMA. Subsequent developments confirmed this Court's foresight. After Defendants moved to dismiss, the Washington Supreme Court read CEMA expansively to ban *any* type of false or misleading statement in the subject line of an email. This broad construction further demonstrates why Defendants' claims do not fit within "the limited, narrow exception" for fraud and deceit claims addressed in *Virtumundo*. 575 F.3d at 1061.

Talismanic enforcement of Rule 12(g)(2) is particularly inappropriate where, as here, dismissal is sought based on developments *after* the initial motion to dismiss was filed. *See* Fed. R. Civ. P. 12(g)(2) (focusing on whether the motion "rais[es] a defense or objection that was [then] available to the party"); *see Banko v. Apple, Inc*., 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) (permitting renewed motion to dismiss because "it is reasonable for the court to consider more fully how its prior holding impacts the viability of Banko's remaining claims"); *Vega v. State University of New York Board of Trustees*, 2000 WL 381430, *2 (S.D.N.Y. Apr. 13, 2000) (allowing successive motion to dismiss based on subsequent developments and stressing that "it is understandable that the first motion was unable to address all of the appropriate issues," given the associated "procedural complexity").

*Third*, the Ninth Circuit has cautioned against a wooden application of Rule 12(g)(2). In *In re Apple iPhone Antitrust Litig*., 846 F.3d 313, 318 (9th Cir. 2017), which Plaintiffs cited in their objections to counsel, the Ninth Circuit cautioned against the mechanical application of Rule 12(g)(2) that Plaintiffs now urge. Instead, the Ninth Circuit stressed that "[d]enying late-filed Rule

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id*.

Here, this logic applies with particular force. If the Court disallows Defendants' motion, then they would promptly re-raise identical arguments in a motion for judgment on the pleadings under Rule 12(c) as soon as their Answer is filed—a waste of judicial and party resources. Nor would Plaintiffs be prejudiced by allowing the motion, given that any motion for judgment on the pleadings that Defendants subsequently filed would be governed by an identical legal standard. *Id.* In this situation, courts, therefore, routinely refuse to enforce Rule 12(g)(2) mechanically:

> Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. If the Court were to evade the merits of Defendants' . . . defenses here, Defendants would be required to file answers within 14 days of this Order. They would presumably assert [the same defenses] in those answers. Defendants would then file Rule 12(c) motions, the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months. That is not the intended effect of Rule 12(g), and the result would be in contradiction of Rule 1's mandate[.]

*Id*. (citation omitted); *Doe v. White*, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (permitting successive, "meritorious" motion to dismiss and collecting supporting authority).

*Fourth*, Plaintiffs' main argument—that Defendants could have raised their current defenses when they initially moved to dismiss—has been flatly rejected by numerous courts. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) (permitting second motion to dismiss—*even though* "Defendants' timeliness defense could and should have been raised in their initial motions"—because: (i) Defendants "recognized their omission before they were required to file answers"; (ii) Rule 12(g) is solely "designed to avoid repetitive motion practice, delay, and ambush tactics"; and (iii) "[a]ddressing the arguments [] will prejudice neither side and will promote the efficient and just resolution of this case"); *Banko*, 2013 WL 6623913, at *2 ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that *could have been made* in a prior motion," courts confronting a successive motion "*often* exercise their discretion to consider the new arguments in the interests of judicial

DEFENDANTS' MOTION TO DISMISS - 23
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

economy"); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.,* 2010 WL 4622514, at *5 (W.D. Wash. Nov. 3, 2010) (stating that, while "[t]he Court agrees that Defendants *should have and could have* raised the issues earlier," it would consider successive motion to dismiss because "[t]he pleadings have not closed" and defendant would be free to "bring a successive motion to dismiss for failure to state a claim" under Rule 12(c)) (Pechman, J.).

*Fifth and finally,* postponing adjudication of Defendants' defenses until *after* an Answer is filed and *after* substantial discovery is underway would needlessly squander judicial and party resources. In that case, (a) the parties would expend substantial time and money searching for, collecting and producing documents and responding to written discovery, as well as on the inevitable associated motion practice, and (b) the Court would need to resolve associated disputes—all of which would be for naught if the Court ultimately agrees that Plaintiffs' claims are preempted or inadequately pled. Hence, "[j]udicial economy favors ignoring the motions'" alleged "technical deficiencies." *Nat. City Bank, N.A. v. Prime Lending,* 2010 WL 2854247, at *2 (E.D. Wash. July 19, 2010); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 2011 WL 2690437, at *2 n.1 (N.D. Cal. July 8, 2011) (citing *id.)*; *Davidson v. Countrywide Home Loans, Inc*., 2011 WL 1157569, at *4 (S.D. Cal. Mar. 29, 2011) ("[E]ven if Defendants had brought successive motions, the Court has discretion to consider the arguments to expedite a final disposition on the issue.").

### E. Plaintiffs' CPA Claim Must Be Dismissed Because It Is Predicated on Their Failed CEMA Claim.

For the avoidance of doubt, "[b]ecause [Plaintiffs'] CEMA claims fail as a matter of law," their CPA claims, which are "grounded in CEMA violations, are likewise inadequate and [a]re properly dismissed." *Virtumundo*, 575 F.3d at 1065; *Taie v. Ten Bridges LLC*, 704 F. Supp. 3d 1147, 1154 (W.D. Wash. 2023) (dismissing CPA claim where underlying statutory claim failed); Compl. ¶¶ 107-116.

DEFENDANTS' MOTION TO DISMISS - 24
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

## IV.  CONCLUSION

For the above reasons, the Court should dismiss the Complaint with prejudice.


DATED this 30th day of May, 2025.


*I certify that this memorandum contains 8,244 words, in compliance with the Local Civil Rules*


**MORGAN, LEWIS & BOCKIUS LLP**


By: *s/ Damon C. Elder*
Damon C. Elder, WSBA No. 46754
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: damon.elder@morganlewis.com
andrew.decarlow@morganlewis.com

Ari Micah Selman (*pro hac vice pending*)
101 Park Avenue
New York, New York 10178-0060
Phone: (212) 309-6000
Email: ari.selman@morganlewis.com

*Counsel for Defendants*

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401