1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8  ROXANN BROWN and MICHELLE SMITH,
   on their own behalf and on behalf of others
9  similarly situated,

10              Plaintiffs,

11         v.

12  OLD NAVY, LLC; OLD NAVY (APPAREL),
13  LLC; OLD NAVY HOLDINGS, LLC; GPS
   SERVICES, INC.; and THE GAP, INC.,
14  inclusive,

15              Defendants.

16

NO. 2:23-cv-00781-JHC

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS**

17

18

19

20

21

22

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

III.  ARGUMENT AND AUTHORITY ................................................. 4

    A.  Rule 12(b)(6) standard. ................................................. 4

    B.  CEMA's prohibition on false or misleading subject lines in advertising emails is not preempted by CAN-SPAM. ................................. 4

        1.  The plain language of CAN-SPAM's savings clause covers CEMA claims for false or misleading subject lines. ............... 4

        2.  The Washington Supreme Court ruled in this case that CEMA prohibits commercial email subject lines that contain materially false or misleading information. ............................ 6

        3.  Old Navy extrapolates from *Virtumundo* and *Omega World Travel* a rule that only state anti-spam laws incorporating all elements of common law fraud are saved from preemption. A string of authorities reject that misreading of the cases. ............ 8

    C.  Rule 8(a) applies because Plaintiffs' CEMA claims do not sound in fraud. ............................................................... 11

    D.  Defendants are intertwined corporate entities, so Plaintiffs properly alleged that they have all done the same thing. ...................... 12

    E.  Old Navy's successive motion to dismiss should be denied under Rule 12(g)(2). ............................................................ 15

    F.  If the Court accepts any of Old Navy's arguments, Plaintiffs should be granted leave to amend. .................................................. 18

IV.   CONCLUSION ................................................................. 19

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

PAGE(S)

## FEDERAL CASES

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*
  410 F.3d 492 (9th Cir. 2005) ....................................................................4, 5

*Altamont Summit Apartments LLC. v. Wolff Props. LLC,*
  2002 WL 926264 (D. Or. Feb. 13, 2002)...................................................12

*Aquilina v. Certain Underwriters at Lloyd's,*
  407 F. Supp. 3d 978 (D. Haw. 2019) ..........................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC,*
  662 F. Supp. 2d 935 (N.D. Cal. 2009) ..................................................9, 10

*Asis Internet Servs. v. Member Source Media, LLC,*
  2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .............................................9

*Asis Internet Servs. v. Subscriberbase Inc.,*
  2009 WL 4723338 (N.D. Cal. Dec. 4, 2009) ...............................................9

*Beyond Sys., Inc. v. Kraft Foods, Inc.,*
  777 F.3d 712 (4th Cir. 2015) .....................................................................8, 9

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) ....................................................................19

*Cent. Tel. Co. v. K&N Gen. Constr., Inc.,*
  2023 WL 9035279 (D. Nev. Dec. 29, 2023)...............................................15

*Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP,*
  2017 WL 2927481 (D. Or. Apr. 10, 2017) .................................................15

*Collazo v. Wen by Chaz Dean, Inc.,*
  2015 WL 4398559 (C.D. Cal. July 17, 2015).............................................14

*Concha v. London,*
  62 F.3d 1493 (9th Cir. 1995) ......................................................................12

*Copperweld Corp. v. Indep. Tube Corp.,*
  467 U.S. 752 (1984)....................................................................................12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*De Coster v. Amazon.com, Inc.*,
    2024 WL 4949037 (W.D. Wash. Dec. 3, 2024) .......................................................16

*Fair v. King County*,
    2024 WL 4476616 (W.D. Wash. Oct. 11, 2024) .....................................................16

*Fairhaven Health, LLC v. BioOrigyn*,
    2021 WL 5987023 (W.D. Wash. Dec. 17, 2021) ...................................................16

*Gordon v. Impulse Mktg. Group, Inc.*,
    375 F. Supp. 2d 1040 (E.D. Wash. 2005) ......................................................1, 11

*Gordon v. Virtumundo*,
    575 F.3d 1040 (9th Cir. 2009) .............................................................*passim*

*Harbers v. Eddie Bauer, LLC*,
    415 F. Supp. 3d 999 (W.D. Wash. 2019).............................................................9

*Hoang v. Reunion.com, Inc.*,
    2010 WL 1340535 (N.D. Cal. Mar. 31, 2010).....................................................9

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
    424 F. Supp. 3d 882 (E.D. Cal. 2019)..............................................................14

*In re Apple Antitrust Litig.*,
    846 F.3d 313 (9th Cir. 2017) ..........................................................................16

*In re Wash. Mut. Sec. Derivative & ERISA Litg.*,
    2010 WL 4622514 (W.D. Wash. Nov. 3, 2010)................................................17

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ..................................................10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ...........................................................................4

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) .......................................................................19

*May v. Google LLC*,
    2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ..................................................14

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996).........................................................................................4

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - iii
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ............................................................. 12, 15

*Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*,
    578 F. Supp. 2d 1242 (E.D. Cal. 2008) ........................................................ 14

*Nemykina v. Old Navy, LLC*,
    461 F. Supp. 3d 1054 (W.D. Wash. 2020) ............................................. 12, 13

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 384 (4th Cir. 2006) ................................................................ 6, 8

*Plain Brown v. Dynamic Pet Prods. & Frick's Meat Prods., Inc.*,
    2017 WL 4680125 (S.D. Cal. Oct. 18, 2017) ................................................ 14

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 F. App'x. 564 (9th Cir. 2017) ......................................................... 2, 12

*Ryan v. Salisbury*,
    380 F. Supp. 3d 1031 (D. Haw. 2019) ...................................................... 19

*Sagastume v. Psychemedics Corp.*,
    2021 WL 3932299 (C.D. Cal. Feb. 16, 2021) .............................................. 17

*Simmers v. King County*,
    2022 WL 3585146 (W.D. Wash. Aug. 22, 2022) ......................................... 14

*Smith v. NaphCare, Inc.*,
    2022 WL 2983942 (W.D. Wash. July 28, 2022) ......................................... 15

*Swartz v. KPMG LLC*,
    476 F.3d 756 (9th Cir. 2007) ......................................................... 14, 15, 19

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ............................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 19

*Wagner v. Digital Publ'g Corp.*,
    2014 WL 5140288 (N.D. Cal. Oct. 10, 2014) ............................................... 8

*Wagner v. Spire Vision*,
    2014 WL 5140288 (N.D. Cal. Mar. 3, 2014) ............................................... 9

*Washington v. Allison*,
    2024 WL 5424374 (C.D. Cal. Dec. 2, 2024) .............................................. 15

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ........................................................................4

**STATE CASES**

*Brown v. Old Navy, LLC*,
    567 P.3d 38 (Wash. 2025).......................................................................*passim*

*Hypertouch Inc. v. Valueclick, Inc.*,
    192 Cal. App. 4th 805 (2011) ........................................................8, 10, 11

**FEDERAL STATUTES**

15 U.S.C. § 7704(a) ....................................................................................5

15 U.S.C. § 7707(b)(1) ...............................................................................5

**FEDERAL RULES**

Fed. R. Civ. P. 8............................................................................2, 11, 14

Fed. R. Civ. P. 9(b) ...........................................................................*passim*

Fed. R. Civ. P. 12(g)(2)..........................................................................16, 17

**STATE STATUTES**

RCW 19.190.020(1)(a) ...............................................................................6

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I. INTRODUCTION

Old Navy's second Motion to Dismiss, filed more than two years after the inception of this action, should be denied for at least four primary reasons.

*First,* Plaintiffs' claims are not pre-empted by the CAN-SPAM Act. The plain language of CAN-SPAM's preemption provision saves any state law that "prohibits falsity or deception in any portion of a commercial electronic mail message." This language alone makes it abundantly clear that Plaintiffs' claims under CEMA, which all pertain to CEMA's prohibition on "false or misleading" email subject lines are not preempted. Rather than grappling with the plain text of CAN-SPAM's savings clause, Old Navy instead turns to isolated and acontextual snippets from cases applying the savings clause to an entirely different provision of CEMA, namely the provision which prohibits sending an email that "obscures" the identity of the sender. Old Navy cobbles these snippets together and argues that the CAN-SPAM Act does not, as it says, save all causes of action that prohibit "falsity or deception," but instead only saves statutes that precisely replicate all elements of common law claims for fraud. Numerous courts have rejected similar attempts to render the CAN-SPAM Act's savings clause precisely coextensive with common law fraud claims. Old Navy omits all reference to these cases in its brief, instead making an argument that no court has adopted, and that at least four other district courts have rejected. Old Navy's persistent failure to grapple with the plain language of the statute and cases rejecting its positions dooms its preemption arguments.

*Second,* Plaintiffs have sufficiently pled the substance of their claims. Old Navy's argument that Rule 9(b) should apply to Plaintiffs' claims is built on the faulty premise that any claim not preempted by CAN-SPAM must constitute a fraud claim and must therefore also be governed by Rule 9(b). This argument ignores the difference between CEMA's prohibitions and claims sounding in "fraud," a distinction that at least one other court deciding this exact same issue found was dispositive when it held that Rule 9(b) does not apply to CEMA claims. *See Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Third*, Plaintiffs have sufficiently pled claims against each Defendant. Old Navy complains that Plaintiffs have not sufficiently alleged the precise role that each of its named corporate affiliates played in its violations of CEMA. But both Rule 8 and Rule 9 require notice pleading and plausibility, not summary-judgment level factual allegations. For that reason, courts applying both Rule 8 and Rule 9(b) have found complaints contained sufficient allegations against all defendants where the complaint sufficiently identifies the defendants and places them on notice of the claims asserted. Where the defendants are corporate relatives and the complaint alleges that "defendants" engaged in illegal conduct, courts considering Rule 12 motions do not require plaintiffs to make allegations about each specific defendant's precise role because such information is "exclusively within the opposing party's knowledge." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x. 564, 567 (9th Cir. 2017). Instead, at the Rule 12 stage, courts make the reasonable inference that the complaint has pled defendants acted "in concert" when they engaged in the prohibited conduct.

*Finally,* Old Navy's motion is procedurally infirm and should be denied on that basis alone. All of Old Navy's current arguments were available to Old Navy when it filed its first motion to dismiss. Successive motions to dismiss the *same complaint* are prohibited by the plain language of Rule 12(g), and Old Navy's motion should be denied.

## II.     BACKGROUND

Plaintiffs filed this action more than two years ago. In their Complaint, Plaintiffs allege that Old Navy violated CEMA by sending text messages with false subject lines. Plaintiffs allege that Old Navy did so in order to "drive sales by creating a false sense of urgency." ECF 1-1 ("Compl.") ¶¶ 2. This conduct tricks consumers into "thinking that the offer is rarer than it really is and that they should act to take advantage of the special offer." *Id.* ¶ 46. The false and misleading email subject lines Old Navy uses are "intended to seduce consumers into making a purchase." *Id.* ¶ 34. The subject lines "give consumers a false sense of urgency and spur impulse buys by consumers who do not want to miss the deal." *Id.* ¶ 53. Plaintiffs also allege that Old Navy's purported "extensions" were fake, and that Old Navy had "always planned to continue"

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

the sale. *Id.* ¶ 60. *See also* ¶¶ 61-63 (alleging Old Navy had always intended to extend its sales).[1] The Federal Trade Commission has long warned that sellers should not make false representations regarding purportedly "limited" offers which are, in fact, not limited at all. *Id.* ¶ 32. In short, Plaintiffs allege that Old Navy's false or misleading subject lines are material to consumer purchasing decisions.

After removing to this Court, Old Navy filed a motion to dismiss making a single argument—that Plaintiffs' claims under CEMA and Washington's Consumer Protection Act failed under a narrow interpretation of CEMA previously adopted in this district. (Dkt. #5.) Plaintiffs opposed, arguing that Old Navy's interpretation was not consistent with the plain language of CEMA. In the alternative, Plaintiffs sought certification of the statutory interpretation question to the Washington Supreme Court. (Dkt. # 14.) This Court certified the question and denied Old Navy's first motion to dismiss without prejudice. (Dkt. # 27.)

In April, the Washington Supreme Court issued an opinion adopting Plaintiffs' plain language interpretation of CEMA. The court held that CEMA "prohibits sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025). The court further held that "instances of mere puffery are not prohibited by" CEMA. *Id.* The court explained that mere puffery "includes subjective statements, opinions, and hyperbole." *Id.* Notably, the Washington Supreme Court credited Plaintiffs' allegations as to the materiality of the representations they challenge, holding, "[m]ere puffery is contrasted by representations of fact—like the duration or

---

[1] *See* Alex Marin, *The Ultimate 2023 Email Marketing Stats List*, CodeCrew (May 8, 2023), https://codecrew.us/email-marketing-stats-you-need-to-know-the-ultimate-list/ ("[S]ubject lines with a sense of urgency (BUY NOW, HURRY) have a 22% open rate. That's quite a bit higher than normal."); *Urgency Emails: An All-Inclusive Guide For Marketers To Drive Maximum Conversions*, Email Uplers (Dec. 16, 2022), https://email.uplers.com/blog/complete-guide-to-urgency-emails/; Deepak Gupta, *Email Subject Line Tips That Guarantee High Open Rates*, LoginRadius, https://www.loginradius.com/blog/growth/email-subject-line-tips-for-high-open-rates/ (last visited Mar. 7, 2024) ("subject lines displaying exclusivity and urgency increases open rates up to 22%") (Chandler Decl. Ex. F).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.*

## III.    ARGUMENT AND AUTHORITY

### A.    Rule 12(b)(6) standard.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677–78.

### B.    CEMA's prohibition on false or misleading subject lines in advertising emails is not preempted by CAN-SPAM.

#### 1.    The plain language of CAN-SPAM's savings clause covers CEMA claims for false or misleading subject lines.

"When interpreting the scope of an express preemption clause, as is the case here, we must identify the domain expressly pre-empted by its language." *Gordon v. Virtumundo,* 575 F.3d 1040 (9th Cir. 2009) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484 (1996)) (internal quotation marks omitted). "[T]his inquiry is guided by two principles about the nature of preemption." *Id.* "First, there is a presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Id.* (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id.* (quoting *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,* 410 F.3d 492,

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

496 (9th Cir.2005)). "Second, the preemption analysis is guided by the oft-repeated comment ... that the purpose of Congress is the ultimate touchstone in every preemption case." *Id.* (cleaned up).

Congress enacted the Controlling the Assault of Non-Solicited Pornography and Marketing (CAN-SPAM) Act in 2003. Congress enacted CAN-SPAM "to curb the negative consequences of spam and spamming practices without stifling legitimate commerce." *Virtumundo*, 575 F.3d at 1045. Among other things, CAN-SPAM prohibits the transmission of materially false or misleading information in email subject headings. 15 U.S.C. § 7704(a).

CAN-SPAM includes an express preemption provision and savings clause:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message* or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). Because CEMA's subject line provision prohibits only "false or misleading" information in email subject lines, RCW 19.190.020(1)(b), it is saved from preemption under the plain language of CAN-SPAM.

*Virtumundo* did not address whether CEMA's subject line provision is preempted under CAN-SPAM because the plaintiff did not meet his obligation to show that the defendant had violated CEMA in the first instance. 575 F.3d at 1058. The district court had correctly ruled on summary judgment that the plaintiff had no claim under RCW 19.190.020(1)(b) because he had failed to demonstrate that any of the subject lines he challenged were "false or misleading" as required by CEMA. *Id.* ("Because Gordon has failed to present a prima facie case in opposition to summary judgment, his claim that Virtumundo's subject lines violate CEMA fails as a matter of law, and summary judgment was appropriate."). As a result, there was no reason for the Ninth Circuit to consider whether CAN-SPAM preempts subsection (1)(b)—the provision at issue here—and the court did not do so. Instead, the court analyzed whether a different provision of CEMA was preempted.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1    The Ninth Circuit held that CAN-SPAM's exception to preemption "refers to

2 'traditionally tortious or wrongful conduct.'" *Id.* at 1062 (quoting *Omega World Travel, Inc. v.*

3 *Mummagraphics, Inc.*, 469 F.3d 384 (4th Cir. 2006)). Under this rule, state anti-spam laws that

4 create liability for "immaterial inaccuracies or omissions" are preempted. *Id.* at 1062. The Ninth

5 Circuit supported its holding with CAN-SPAM's legislative history: "a State law requiring some

6 or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain

7 specified content, would be preempted[,] ... a State law prohibiting fraudulent or deceptive

8 headers, subject lines, or content in commercial e-mail would not be preempted." *Id.* at

9 1062 (quoting S. Rep. No. 108–102, at 21).

10    The court applied that rule to CEMA's provision prohibiting sending a commercial email

11 that uses a "third party's domain name without permission," or "otherwise misrepresents or

12 obscures" information about the sender. RCW 19.190.020(1)(a). That provision was preempted

13 because an intermediate Washington appellate court had interpreted the words "misrepresents or

14 obscures" broadly to "regulate a vast array of non-deceptive acts and practices." *Virtumundo*,

15 575 F.3d at 1059. The court explained that should Washington courts interpret the CEMA sender

16 provision, (1)(a), to "extend only to acts of deception," then it would be saved from preemption.

17 *Id.*

18    In sum, "Congress carved out from preemption state laws that proscribe falsity or

19 deception in commercial email communications." *Virtumundo*, 575 F.3d at 1061. CEMA's

20 prohibition on false or misleading subject lines is such a state law. *Old Navy*, 567 P.3d at 45

21 (finding nothing absurd about "CEMA's allocation of statutory damages to *falsity in the subject*

22 *lines*" of emails) (emphasis added).

23    2.    The Washington Supreme Court ruled in this case that CEMA prohibits commercial

24 email subject lines that contain materially false or misleading information.

25    The Washington Supreme Court's opinion in this case rejected Old Navy's atextual

26 argument that CEMA targets only subject lines that are false or misleading as to the commercial

27 nature or content of the email. Instead, the court held that CEMA "prohibits sending Washington

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 6
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Old Navy,* 567 P.3d at 47. The court's use of the word "any" is a response to Old Navy's argument that only false or misleading information about the content of the email is prohibited. *Id.* at 41 (summarizing issue before the court). The court did not use the word "any" to mean the statute reaches immaterial inaccuracies or omissions.

The fact that the court's holding was limited to material misrepresentations is clear from the court's final holding that CEMA does not prohibit mere puffery. *Id.* at 47. The court explained that mere puffery "includes subjective statements, opinions, and hyperbole." *Id.* Adding, "[m]ere puffery is contrasted by representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.* In other words, CEMA prohibits false statements about objective facts that are material because those statements would be important to consumer purchasing decisions.

And as the Ninth Circuit said in *Virtumundo*, a state court's interpretation of its state's statute in a manner that saves it from preemption under CAN-SPAM is determinative. 575 F.3d at 1059. Old Navy does not acknowledge the Washington Supreme Court's analysis or make any argument as to why it does not save CEMA's prohibition on false or misleading subject lines from preemption. Instead, Old Navy argues that Plaintiffs were required to plead how each deceptive email subject line was material to them in order to avoid preemption. That is not how preemption analysis works. What matters is the Washington Supreme Court's explanation that misleading subject lines that would not be material to consumers do not create liability under CEMA.

Old Navy argues (Mot. at 13-14) that a handful of the email subject lines listed in the Exhibits to Plaintiffs' Complaint are not deceptive. The fact finder will ultimately decide which email subject lines are false or misleading based, for example, on evidence about whether Old Navy pre-plans the cadence of its email advertising or actually decides to extend sales at the last minute as its email subject lines suggest. But that has nothing to do with whether CEMA's email

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 subject line provision, RCW 19.190.020(1)(b), is preempted by federal law. Nor is it a question

2 that should be resolved on a motion to dismiss. *See Wagner v. Digital Publ'g Corp.*, 2014 WL

3 5140288, at *3–4 (N.D. Cal. Oct. 10, 2014) (denying summary judgment because there were

4 questions of fact about whether specific email subject lines were likely to mislead and leaving

5 question to jury).

6         3.   <u>Old Navy extrapolates from *Virtumundo* and *Omega World Travel* a rule that only

7 state anti-spam laws incorporating all elements of common law fraud are saved from preemption. A string of authorities reject that misreading of the cases.</u>

8       As Old Navy emphasizes, the Ninth Circuit in *Virtumundo*, 575 F.3d at 1061, agreed with

9 the Fourth Circuit's analysis of CAN-SPAM preemption in *Omega World Travel, Inc. v.*

10 *Mummagraphics, Inc.*, 469 F.3d 384 (4th Cir. 2006). Old Navy argues (Mot. at 12), that CEMA

11 is preempted because a CEMA claim does not require proof of all traditional elements of fraud.

12 Or alternatively, that Plaintiffs' Complaint must be dismissed because they do not plead all

13 elements of a common law fraud claim. But neither *Virtumundo* nor *Omega World Travel* say

14 that claims under a state's anti-spam statute must incorporate all common law fraud elements in

15 order to avoid preemption.

16       The Fourth Circuit made it clear there is no such requirement when it applied *Omega*

17 *World Travel* and found both Maryland and California's anti-spam statutes saved from

18 preemption. *See Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015). In

19 doing so, the court emphasized state court interpretations of their own statutes. For Maryland, it

20 was enough to avoid preemption that an intermediate appellate court had said that violations of

21 the anti-spam statute, "like violations of the Consumer Protection Act, are in the nature of a tort."

22 *Id.* at 717. The Fourth Circuit then cited the California Court of Appeal's decision in *Hypertouch*

23 *Inc. v. Valueclick, Inc.*, 192 Cal. App. 4th 805 (2011), as "limit[ing] the application of

24 California's anti-spam law to deceptive emails." *Beyond Systems*, 777 F.3d at 717 (quoting

25 *Hypertouch*). Relying on *Hypertouch*, the Fourth Circuit found that California's statute was in

26 the vein of tort and not preempted. *Id.* The express holding of *Hypertouch* is that California's

27 anti-spam law "dispenses with many of the elements associated with common law fraud." 192

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 Cal. App. 4th at 820. If Old Navy were correct that a state anti-spam law must incorporate the

2 elements of a fraud claim to survive preemption, then *Beyond Systems* would have come out the

3 other way, with California's statute preempted.

4       Just as Maryland and California courts had interpreted their statutes in a manner showing

5 they were in the vein of a tort, so has the Washington Supreme Court done in this case. The

6 Washington Supreme Court held that CEMA prohibits only "false or misleading" subject lines.

7 *Old Navy*, 567 P.3d at 47. The Court also held that the "mere puffery" standard developed in

8 false advertising cases, which are plainly "in the vein of a tort," applies to CEMA claims under

9 subsection (1)(b). *Id*. As one Court put it in finding that a plaintiff making CEMA claims has

10 Article III standing: "[t]he harms resulting from deceptive commercial e-mails resemble the type

11 of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d

12 999, 1008 (W.D. Wash. 2019). Under *Beyond Systems*, Washington courts' interpretations of the

13 applicable provision of CEMA put Plaintiffs' claims squarely in the vein of tort and thus avoid

14 preemption.

15       District courts in the Ninth Circuit applying *Virtumundo* have ruled that state anti-spam

16 laws need not require consumers to plead or prove "all the elements of common law fraud," to

17 avoid preemption. *Wagner v. Spire Vision*, 2014 WL 5140288, at *2-4 (N.D. Cal. Mar. 3, 2014);

18 *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20,

19 2010) (finding *Virtumundo* does not directly address issue and concluding a plaintiff "need not

20 plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v.*

21 *Reunion.com, Inc.*, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reconsidering earlier

22 order dismissing claims on preemption grounds in light of *Virtumundo*, and ruling "plaintiffs'

23 failure to allege they relied to their detrimental [sic] on the alleged false statements in defendant's

24 e-mails does not constitute a ground for dismissal of their claims"); *Asis Internet Servs. v.*

25 *Subscriberbase Inc.*, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009) ("Plaintiffs therefore do

26 not need to plead reliance and damages in order to avoid preemption of their claims."). Old Navy

27 fails to acknowledge any of this caselaw. Instead, Old Navy merely proclaims that *Asis Internet*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *Servs. v. Consumerbargaingiveaways, LLC*, 662 F. Supp. 2d 935, 940–944 (N.D. Cal. 2009), a

2  pre-*Virtumundo* decision reaching the same conclusion, was later "foreclosed by *Virtumundo*."

3  At least four district courts that have considered the impact of *Virtumundo* disagree. Given this

4  authority, Old Navy's bald assertion that *Asis* is no longer good law is wrong.[2]

5  Old Navy's other cited authority, *Kleffman v. Vonage Holdings Corp.*, 2007 WL

6  1518650, at *2-3 (C.D. Cal. May 23, 2007), is distinguishable. First, *Kleffman* was decided

7  before *Virtumundo*. Second, there the plaintiff challenged Vonage marketing emails sent from

8  various domain names that Vonage owned. The plaintiff alleged that Vonage had violated

9  California law because Vonage used the multiple domain names to avoid spam filters but

10 admitted that "they literally and truthfully identify the sender," because Vonage owned all

11 domains. *Id.* at *2. The court found this did not violate California's anti-spam law. *Id.* The court

12 then went on to say in dicta that if the statute were interpreted to impose an affirmative

13 requirement that the "from" field included the "name of the person or entity who actually sent

14 the email or who hired the sender," the law would be preempted. *Id.* at *2–3. Here, Plaintiffs'

15 claims have nothing to do with imposing a requirement on Old Navy to affirmatively disclose

16 who sent the emails or how the senders are identified. Instead, Plaintiffs allege that Old Navy's

17 email subject lines contain affirmative false statements about the duration of sales for the

18 purpose of creating a false sense of urgency that increases purchases. Compl. ¶¶ 2, 32, 34, 53,

19 60-63.

20 Finally, the California court's decision in *Hypertouch* also persuasively explains why a

21 rule tying CAN-SPAM preemption to whether a state anti-spam law incorporates the elements of

22

---

23 [2] Old Navy's argument is also inconsistent with arguments it made in the Washington Supreme
   Court that Plaintiffs' interpretation of CEMA about CEMA would create special liability for fraud in email
24 subject lines. *See Old Navy*, 567 P.3d at 45 (Old Navy argues that "subsection (1)(b) was not
   created as an 'enhanced anti-fraud provision' that encompasses only the commercial e-mail's
25 subject line" (quoting Old Navy's brief); rejecting Old Navy's argument that Plaintiffs'
   interpretation would make CEMA about "fraudulent conduct in general that happens to be
26 carried out over those messages"; rejecting Old Navy's argument that "plaintiffs' interpretation
   would render subsection (1)(b) superfluous and absurd given that the CPA already banned false
27 or misleading marketing *in any medium*") (emphasis original).

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 10
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  fraud would not serve Congress's purpose. First, the CAN-SPAM "savings clause does not

2  reference either fraud or the common law" but rather uses the words "falsity or deception."

3  *Hypertouch*, 192 Cal. App. 4th at 826. Second, the purpose of CAN-SPAM preemption is to

4  avoid states putting unexpected or conflicting *content* requirements on email advertising.

5  *Virtumundo*, 777 F.3d at 1063. Old Navy's proposed rule would do nothing to serve that purpose

6  because "[t]he elements of reliance and damages, for example, have nothing to do with the

7  content of an email." *Hypertouch*, 192 Cal. App. 4th at 829. A state law "imposing strict liability

8  for advertising in commercial e-mails that contain materially deceptive content does not alter the

9  type of content that might subject a person to liability." *Id.* "Instead it broadens the class of

10 persons who may be held responsible for such content." *Id.* In short, the purpose of CAN-SPAM

11 preemption is to avoid inconsistent content standards, not to protect corporations from liability

12 for false or misleading email advertisements.

13 **C.    Rule 8(a) applies because Plaintiffs' CEMA claims do not sound in fraud.**

14      Old Navy argues (Mot. at 16) that Rule 9(b) applies because "Plaintiffs may now seek to

15 advance a fraud theory to squeeze themselves within the limited, narrow exception [to

16 preemption] Congress created." Plaintiffs have not alleged fraud and they need not do so to avoid

17 CAN-SPAM preemption.

18      Courts have already held that CEMA claims do not sound in fraud such that Rule 9(b)

19 applies. "Although the Court concluded Plaintiff's claims under Washington's Commercial

20 Electronic Mail Act were not preempted by the federal CAN–SPAM Act because the Washington

21 Act prohibits falsity and deception, this does not require the Court also conclude that Plaintiff's

22 Complaint 'sounds in fraud.'" *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048

23 (E.D. Wash. 2005). The Court should apply the same rule here.

24      If the Court concludes that Rule 9(b) does apply because the consumers' claims involve

25 tortious misrepresentations, the heightened pleading standard is met as to the elements of the

26 CPA claim they assert. The consumers' complaint contains a non-exhaustive list of the false or

27 misleading subject lines they challenge, including the date on which Old Navy sent each email

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

containing a false or misleading subject line, and what about the subject line was false or misleading. Compl. ¶¶ 27-63, 78, 86, Exhibits A & B. This satisfies any requirement to plead with particularity. *See Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1059-60 (W.D. Wash. 2020) (Old Navy's argument that a plaintiff's deceptive pricing claim was not pled with sufficient particularity "borders on frivolous"). Indeed, Old Navy doesn't directly challenge the adequacy of Plaintiffs' allegations on the elements of their CPA claims, asserting instead that Plaintiffs must plead all elements of fraud. That is wrong because Plaintiffs are not making a fraud claim.

**D. Defendants are intertwined corporate entities, so Plaintiffs properly alleged that they have all done the same thing.**

Even if the Court were to find that the heightened pleading standards of Rule 9(b) apply, Plaintiffs have not engaged in impermissible group pleading. "Rule 9(b)'s requirements may be relaxed as to matters that are exclusively within the opposing party's knowledge." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 Fed.Appx. 564, 567 (9th Cir. 2017) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Rule 9(b) only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). In particular, Rule 9(b)'s requirements "may be relaxed in cases of corporate fraud when the factual information is peculiarly within the corporation's knowledge or control and inaccessible to the claimant until discovery has been completed." *Altamont Summit Apartments LLC. v. Wolff Props. LLC.*, 2002 WL 926264, at *5 (D. Or. Feb. 13, 2002).

In other words, under Rule 9(b) "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *cf. Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of

2   horses drawing a vehicle under the control of a single driver.")

3          Here, Plaintiffs allege that the Defendants are related corporate entities with Old Navy

4   LLC, GPS Services, Inc. and Old Navy (Apparel), LLC functioning as wholly-owned

5   subsidiaries of The Gap, Inc. Compl. ¶ 9, 10, 12, 13.[3] The Complaint specifically alleges how

6   Defendants violate CEMA and the CPA. The Complaint pleads that Old Navy initiated or

7   conspired to initiate the transmission of dozens of commercial email messages with false or

8   misleading subject lines to Plaintiffs. Compl. ¶ 27. It alleges that the emails were sent at Old

9   Navy's direction and were approved by Old Navy. Compl. ¶ 29. The Complaint attaches as

10  Exhibits A and B charts listing dozens of misleading email subjects and the reasons why they are

11  misleading. Compl., Exhibits A and B. The Complaint alleges that these emails with misleading

12  subject lines were sent between September 20, 2018, and December 11, 2022. Compl. ¶ 90.

13         The fact that Plaintiffs brought claims against Old Navy and related corporate entities is

14  not an accident. The same Defendants were sued for the "deceptive practice of advertising items

15  at a claimed 'discount' or sale price, when in reality many of those items are 'rarely if ever'

16  offered at a higher original price." *Nemykina*, 461 F. Supp. 3d at 1056. All of the Defendants

17  were parties to the class action settlement agreement in *Nemykina*. *See Settlement Agreement*

18  attached to Declaration of Blythe H. Chandler ("Chandler Decl.") as Ex. A. Further, it is

19  abundantly clear Defendants' operations are closely intertwined. For example, the Old Navy

20  website, https://oldnavy.gap.com/ states that it is copyrighted by Old Navy, LLC. *See* Chandler

21  Decl., Ex. B. However, when one clicks on the link for the "Privacy Policy," one is taken to the

22  "The Gap Inc. Privacy Policy" that covers Gap Inc. and its subsidiaries,

23  https://www.gapinc.com/en-us/consumer-privacy-policy. *See* Chandler Decl., Ex. C. Likewise,

24  when one clicks on Terms of Use on the Old Navy website, it takes one to a page Terms of Use

25

26  [3] Defendants state in their Corporate Disclosure Statement that "Old Navy, LLC as successor in
    interest, by and through its counsel, certifies that Old Navy (Holdings), LLC has been merged

27  into Old Navy, LLC and no longer exists as a separate entity." (ECF No. 3). Plaintiffs therefore
    will agree to dismiss Old Navy (Holdings), LLC.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

for the "Gap Inc. websites." *See* Chandler Decl., Ex. D. Notably, Defendants have not identified the entity they believe the appropriate defendant to be.

In any event, Plaintiffs' Complaint makes sufficient allegations to give Defendants notice of Plaintiffs' claims and satisfy Rule 9(b). *See, e.g., Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 891 (E.D. Cal. 2019) ("a complaint need not distinguish between defendants that had the exact same role in a fraud"); *Plain Brown v. Dynamic Pet Prods. & Frick's Meat Prods., Inc.,* 2017 WL 4680125, at *3 (S.D. Cal. Oct. 18, 2017) (denying motion to dismiss in consumer fraud case against parent and subsidiary where court was "was to draw reasonable inference" that reference to "Defendants" in complaint meant the defendants working in concert); *Collazo v. Wen by Chaz Dean, Inc.,* 2015 WL 4398559, at *6 (C.D. Cal. July 17, 2015) (denying motion to dismiss and finding when complaint "identif[ied] role of each defendant in a fraud suit"); *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 578 F. Supp. 2d 1242, 1249 (E.D. Cal. 2008) (denying motion to dismiss because plaintiffs "identified the date and content of the alleged misrepresentations" which "gives defendant sufficient notice to defend against the particular misconduct').

For the same reasons, Defendants' challenge under Rule 8 also fails. *See Simmers v. King Cnty.*, 2022 WL 3585146, at *11 (W.D. Wash. Aug. 22, 2022) (denying motion to dismiss and stating that group "allegations may be sufficient where they are directed at a group of 'similarly situated defendants' such that the court can discern which individuals are alleged to have taken part in which conduct alleged in the complaint"); *May v. Google LLC*, 2024 WL 4681604, at *7 (N.D. Cal. Nov. 4, 2024) (denying motion to dismiss where complaint "fairly claims that the Google entities are related" and finding it "is entirely plausible that the Google entities acted in concert in carrying out the alleged wrongdoings").

Defendants' cases are easily distinguishable as they fail to cite a single case in which the defendants were related corporate entities. Rather, the cases they cite involved several unrelated entities working together. For example, in *Swartz v. KPMG LLC*, the plaintiff brought suit against several separate and unrelated entities including a bank, a law firm, an accounting firm

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and a management company that allegedly conspired to create a fraudulent scheme. 476 F.3d

756, 757 (9th Cir. 2007). Similarly, in *Moore v. Kayport Package Express, Inc*., investors

brought a RICO claim against stockbrokers, lawyers and accountants who worked for separate

entities. 885 F.2d 531, 541 (9th Cir. 1989). Those facts are not at all similar to the facts alleged

in the Complaint. However, even under the facts of *Swartz*, the court clarified that "[t]here is no

absolute requirement that where several defendants are sued in connection with an alleged

fraudulent scheme, the complaint must identify *false statements* made by each and every

defendant." 476 F.3d 756, 764.

Other cases involve unrelated entities or circumstances far afield from those asserted

here. *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 989 (D. Haw. 2019)

(plaintiffs alleged a fraudulent kickback scheme between independent insurance brokers and

underwriters); *Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, 2017 WL

2927481, at *2 (D. Or. Apr. 10, 2017) (plaintiffs alleged a fraudulent scheme between

independent law firms, auditors, an accounting firm and a commercial bank); *Smith v.

NaphCare, Inc.*, 2022 WL 2983942, at *1 (W.D. Wash. July 28, 2022) (plaintiff sued a

municipal county, a prison healthcare provider, and individuals in wrongful death lawsuit);

*Washington v. Allison*, 2024 WL 5424374, at *3 (C.D. Cal. Dec. 2, 2024) (*pro se* prisoner suing

the Director of the California Department of Corrections and Rehabilitation, a Superior Court

Clerk, and a Deputy District Attorney for civil rights violations); *Cent. Tel. Co. v. K&N Gen.

Constr., Inc*., 2023 WL 9035279, at *3 (D. Nev. Dec. 29, 2023) (finding that plaintiff failed to

link allegations of entities to any claims). Here, the alleged "lumping together" of Defendants

that are in fact part of the same related corporate structure is distinguishable from allegations of

fraud by multiple unrelated entities in which liability, knowledge and level of participation may

vary among the entities.

**E.    Old Navy's successive motion to dismiss should be denied under Rule 12(g)(2).**

Rule 12(g)(2) provides that a party who makes a motion under Rule 12 "must not make

another motion under this rule raising a defense or objection that was available to the party but

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Rule is mandatory: parties "must

2  not" make successive Rule 12 raising arguments available when a first motion was made.

3       The Ninth Circuit has confirmed the Rule means exactly what it says. "Rule 12(g)(2)

4  provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer

5  Rule 12 motion cannot assert that defense in a later motion under Rule 12(b)(6), but the defense

6  may be asserted in other ways." *In re Apple Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir.

7  2017). Specifically, such omitted defenses can be raised "in a pleading under Rule 7, in a post-

8  answer motion under Rule 12(c), or at trial." *Id.* at 318. The Ninth Circuit recognized that strict

9  enforcement of Rule 12(g)(2) "can produce unnecessary and costly delays" contrary to the

10 efficiency principles found in Federal Rule 1, and has therefore adopted a generally "forgiving"

11 standard of review when district courts consider successive motions that are procedurally

12 improper under Rule 12(g)(2). Essentially, the appellate court will forgive the error in the

13 interests of promoting efficiency. *Fairhaven Health, LLC v. BioOrigyn*, 2021 WL 5987023, at *6

14 n.4 (W.D. Wash. Dec. 17, 2021) ("Though it said it would be *forgiving* of a district court's

15 mistake, the Ninth Circuit far from *required* a district court to consider a successive Rule

16 12(b)(6) motion") (emphasis in original) (cleaned up). The Ninth Circuit has not endorsed

17 district courts ignoring the rule's plain meaning, which is to bar motions like the one here.

18      This Court recently denied successive Rule 12(b)(6) motions on the basis of their

19 procedural impropriety. *De Coster v. Amazon.com, Inc.*, 2024 WL 4949037, at *6 (W.D. Wash.

20 Dec. 3, 2024) (applying Rule 12(g)(2) and declining to consider arguments directed at an

21 *amended* pleading because "Amazon could have made this argument . . . in its prior motions to

22 dismiss."); *Fair v. King Cnty.*, 2024 WL 4476616, at *7 (W.D. Wash. Oct. 11, 2024) (refusing to

23 consider an argument that King County "could have raised in its prior motion to dismiss" despite

24 second motion being directed at amended pleading); *see also Fairhaven Health*, 2021 WL

25 5987023, at *6 (declining to consider "new arguments" the defendant "could have raised before

26 but did not"). The Court should apply that same rule here and decline to consider Old Navy's

27 arguments, which were plainly available to it when it filed its first motion to dismiss because its

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 16
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

second motion is directed to the very same pleading as the first. *See Sagastume v. Psychemedics Corp.*, 2021 WL 3932299, at *3 n.2 (C.D. Cal. Feb. 16, 2021) ("Although district courts have discretion in this area, the Court believes the best approach is not to consider arguments that violate Rule 12(g) in the first place.")

Instead of acknowledging that Rule 12(g)(2) is a procedural bar to its motion and asking forgiveness for its error, Old Navy insists that the rule does not mean what it says. This despite Plaintiffs having put Old Navy on notice of the procedural bar to its motion nearly a month before it was filed. Chandler Decl. Ex. E (May 7 email chain). Old Navy's arguments against the plain language of Rule 12(g)(2) all fail.

*First*, the Clerk's order denying Old Navy's first motion to dismiss "without prejudice" (Dkt. # 28), has no bearing on the Rule 12(g)(2) analysis. The obvious reason Old Navy's first motion was denied without prejudice is that if Old Navy prevailed in the Washington Supreme Court then its motion to dismiss would have been granted, likely without the need for further briefing. But Old Navy lost in the Supreme Court, so its first motion to dismiss remains denied on its merits. Old Navy cites a series of orders denying first motions to dismiss without prejudice (Mot. at 21-22), but none discuss Rule 12(g) or the impact those motion denials would have had on a successive Rule 12(b)(6) motion.

*Second*, Rule 12(g)(2) applies when a defendant could have raised its current defenses at the time it filed an earlier motion to dismiss. Fed. R. Civ. P. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"). No court has "rejected" that plain language, "flatly" or otherwise. (Mot. at 23). Instead, some courts have excused defense noncompliance with rules in specific cases. *See In re Wash. Mut. Sec. Derivative & ERISA Litg.*, 2010 WL 4622514, at * 5 (W.D. Wash. Nov. 3, 2010).

Old Navy's Rule 9(b) challenges were plainly available to it before the Washington Supreme Court's decision, and it does not even offer an argument to contrary, so the Rule 9(b) arguments should not be considered now. *See Sagastume*, 2021 WL 3932299, at *3 (denying

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 17
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  successive motion on arguments the defendant "simply failed to raise this argument the first time

2  around.").

3       The Washington Supreme Court's decision was not necessary for Old Navy to make its

4  preemption arguments either. The Ninth Circuit decision on which the argument is based was

5  decided over a decade before Old Navy's first motion to dismiss was filed. *See Virtumundo*, 575

6  F.3d at 1043 (case decided in 2009). And Plaintiffs' theory, which is what Old Navy challenges

7  (*see* Mot. at 11 ("Plaintiffs' asserted theory is preempted")), has been the same from the outset.

8  Indeed, while courts routinely apply Rule 12(g)(2) to bar arguments made for the first time in

9  Rule 12 motions challenging amended pleadings, here Old Navy makes a successive motion

10  directed *at the same pleading* as its first motion. The Washington Supreme Court's opinion in

11  this case gets only one passing mention in Old Navy's preemption argument (Mot. at 12), while

12  Plaintiffs' Complaint, which has never been amended, is discussed repeatedly (Mot. at 7, 13, 15).

13       *Third*, Old Navy's strategic choice has caused delays, not avoided them. It would have

14  been far more efficient if Old Navy had made its preemption argument in its first motion to

15  dismiss. If it had, the Court might have found certification unnecessary nearly two years ago, or

16  it may have asked the Washington Supreme Court to address the state statutory interpretation

17  factors relevant to preemption. *See Virtumundo*, 575 F.3d at 1059 (preemption analysis may

18  change depending on state court's interpretation of CEMA provisions at issue in that case).

19       *Finally*, Old Navy's preference not to produce discovery in a case that is already more

20  than two years old is not a reason to ignore the plain language of Rule 12(g)(2). Old Navy should

21  not be permitted to continue to hold up the discovery process through inappropriate motion

22  practice.

23  **F.    If the Court accepts any of Old Navy's arguments, Plaintiffs should be granted leave
24        to amend.**

25       Old Navy's challenge to Plaintiffs' CPA claim (Mot. at 24), fails for all the reasons its

26  challenges to Plaintiffs' CEMA claim fail.

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 18
CASE NO. 2:23-cv-00781-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1　　　　If the Court finds deficiencies in the Complaint, Plaintiffs should be allowed to amend.

2　Rule 15(a) provides that leave to amend should be freely granted "when justice so requires."

3　Leave to amend should be granted unless the court determines that the pleading cannot be cured

4　by the allegation of additional facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Courts

5　routinely allow leave to amend in order for plaintiffs to allege facts with more specificity. *See*

6　*Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007), *Vess v. Ciba-Geigy Corp. USA*, 317

7　F.3d 1097, 1108 (9th Cir. 2003), *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

8　*Ryan v. Salisbury*, 380 F. Supp. 3d 1031, 1046 (D. Haw. 2019).

9　　　　　　　　　　　　**IV.　　CONCLUSION**

10　　　　Plaintiffs request that the court deny Old Navy's successive motion to dismiss because it

11　is both without substantive merit and procedurally improper.

12　　　　RESPECTFULLY SUBMITTED AND DATED this 20th day of June, 2025.

13　　　　　　　　　　　　TERRELL MARSHALL LAW GROUP PLLC

14
15　　　　　　　　　　　*I certify that the foregoing memorandum contains 6,886 words in compliance with the Local Civil Rules.*

16

17　　　　　　　　　　　By: /s/ Blythe H. Chandler, WSBA #43387
　　　　　　　　　　　　Beth E. Terrell, WSBA #26759

18　　　　　　　　　　　Email: bterrell@terrellmarshall.com
　　　　　　　　　　　　Jennifer Rust Murray, WSBA #36983

19　　　　　　　　　　　Email: jmurray@terrellmarshall.com
　　　　　　　　　　　　Blythe H. Chandler, WSBA #43387

20　　　　　　　　　　　936 North 34th Street, Suite 300
　　　　　　　　　　　　Seattle, Washington 98103

21　　　　　　　　　　　Telephone: (206) 816-6603

22　　　　　　　　　　　Facsimile: (206) 319-5450

23　　　　　　　　　　　Sophia M. Rios, Admitted *Pro Hac Vice*
　　　　　　　　　　　　Email: srios@bm.net

24　　　　　　　　　　　BERGER MONTAGUE PC
　　　　　　　　　　　　8241 La Mesa Blvd., Suite A

25　　　　　　　　　　　La Mesa, California 91942
　　　　　　　　　　　　Telephone: (619) 489-0300

26　　　　　　　　　　　Facsimile: (215) 875-4604

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

E. Michelle Drake, Admitted *Pro Hac Vice*
Email: emdrake@bm.net
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5933

Colleen Fewer, Admitted *Pro Hac Vice*
Email: cfewer@bm.net
BERGER & MONTAGUE, P.C.
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 376-2097

Mark DeSanto, Admitted *Pro Hac Vice*
Email: mdesanto@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3046

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS - 20
CASE NO. 2:23-cv-00781-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com