

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROXANN BROWN and MICHELLE SMITH, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC; GPS SERVICES, INC.; and THE GAP, INC., inclusive,<br><br>Defendants. | Case No. 2:23-cv-00781-JHC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Noted for Consideration: June 27, 2025 |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 1
(Case No. 2:23-cv-00781-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

## INTRODUCTION

While Plaintiffs concede they must prove that misrepresentations are material to consumers' purchasing decisions to prevail on a claim under CEMA, they otherwise double down on a strict liability theory. Plaintiffs expressly disclaim allegations of "fraud." Opp. 11. They cite authority that is pre-*Virtumundo* or out-of-state for the proposition that "[t]here is no requirement" to plead scienter, reliance, or injury, *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005), and thus do not plead those elements. And while Plaintiffs admit materiality must be pled, they fail to point to a single allegation that Defendants' purported misstatements were material to their purchase decisions. Instead, they simply ask the Court to assume any misrepresentation regarding the duration of a sale would be "material to consumer purchasing decisions," without citation of supporting authority. Opp. 8-9.

These admissions and omissions are fatal. Some of Plaintiffs' own cases stress the importance of "*intentional* deception" and "*material, intentional* misrepresentation[s]" to the preemption exception. *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *11-12 (N.D. Cal. 2010)[1]; *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *5 (N.D. Cal. 2010) ("*Member Source*"). Moreover, Plaintiffs admit only claims sounding in fraud or deceit survive preemption; yet, Plaintiffs expressly disavow such a theory. Indeed, Plaintiffs' lead case, *Beyond Systems, Inc. v. Kraft Foods, Inc.*, held that claims under California and Maryland's anti-spam statutes implicitly incorporate "common law principles," including "causation" and other elements "necessary to compose a *complete regime* of tort liability," and thus avoid preemption. 777 F.3d 712, 717 (4th Cir. 2015) ("*Beyond*"). By contrast, Plaintiffs advance a strict liability theory under CEMA, a statute which they say foregoes these requirements—which, if true, makes CEMA "quite distinct" from California and Maryland's laws. *See Subscriberbase*, 2010 WL 1267763, at *11.

Because the strict liability theory Plaintiffs advance fails as a matter of law, the Complaint should be dismissed with prejudice.

---

[1] All emphases are added by Defendants unless otherwise noted.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 2
(Case No. 2:23-cv-00781-JHC)

# ARGUMENT

## I. PLAINTIFFS' CLAIMS ARE PREEMPTED

### A. Plaintiffs Misconstrue Defendants' Preemption Argument.

Plaintiffs try to knock down a strawman. They argue CEMA is not *facially* preempted because it is theoretically possible to advance a claim based on traditional tort theories that would survive preemption. Opp. 5-6, 8. But Defendants do not ask the Court to hold that CEMA is facially preempted *entirely*. Rather, Defendants argue the claim *pled in the Complaint* is preempted. *Virtumundo* and *Omega* prescribe how to resolve such an "as applied" challenge. What matters is not whether a hypothetical theory could survive preemption but whether the *claim actually pled* does so. *Virtumundo*, 575 F.3d at 1064.

Plaintiffs' cited authorities confirm why their tack fails. Like *Virtumundo*, their cases focus on whether a specific theory was preempted. *See, e.g.*, *Member Source*, 2010 WL 1610066, at *4-5 ("[T]here is a *portion of Asis's claim* that is in fact preempted because it fails to meet the standards established in *Gordon*"). The CEMA claims here are preempted.

### B. Plaintiffs' Claims Are Preempted Because They Do Not Plead Materiality.

The Complaint fails where it must begin—materiality. Plaintiffs concede that claims based on "immaterial" misstatements "are preempted"; that only claims alleging materiality under a traditional tort theory survive preemption; and that CEMA imposes a materiality requirement. Opp. 6-7; *Virtumundo*, 575 F.3d at 1059, 1061-62.

To establish materiality, Plaintiffs must plead facts demonstrating each alleged misstatement was material to a *purchase decision* by Plaintiffs, as would be required under the traditional tort concepts discussed in *Virtumundo* and *Omega* (Br. 13)—not simply that a subject line *could be* material to a hypothetical recipient's sense of urgency to open an email. As support, Defendants cited controlling authority on whether "representations were material *to the plaintiffs' decision*" to make the relevant purchase. *See, e.g.*, *Martin v. Miller*, 24 Wash. App. 306, 309 (1979); Br. 13. Plaintiffs do not mention this authority, Opp. 7, and they implicitly concede this test controls. Opp. 3 (arguing without authority that "Old Navy's false or misleading subject lines are material to consumer *purchasing decisions*"). Instead, they invoke

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 3
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

the discussion of "puffery" in *Brown*," Opp. 7, which is beside the point. *Brown* did not mention materiality, *Brown v. Old Navy, LLC*, 567 P.3d 38, 41 (2025); it simply held that "puffery" is not a "representation[] of *fact*" and thus cannot create liability under CEMA. Opp. 7. *Brown* thus addressed a different element of a claim—whether puffery is *misleading*—not materiality.

Plaintiffs also fail to point to a factual allegation establishing that any allegedly misleading subject line was material to any purchase decision by *Plaintiffs*, as Rule 8(a)(2) requires. Br. 12-13; Compl., ¶¶ 99-106; Opp. 1. Instead, Plaintiffs effectively proclaim that *any* alleged misrepresentation regarding the duration of a sale is *per se* material. Opp. 2-3. But Plaintiffs fail to cite any facts or law that supports that blanket supposition. Nor is there any basis to assume the misrepresentations *alleged here* were in fact material to Plaintiffs. Br. 13-14 (collecting examples of facially *immaterial* subject lines regarding sale durations, which Plaintiffs allege create liability). Indeed, Plaintiffs' *per se* theory, if adopted, would nullify the materiality requirement.

Finally, the Complaint fails for the independent reason that it is devoid of facts plausibly establishing Defendants' alleged misstatements would be material to a *reasonable consumer*'s purchase decisions. Once again, Plaintiffs' bald speculation that such statements could create a "sense of urgency" for a consumer (Compl. ¶¶ 2, 30, 53) fails without "facts to support such inferences." *Window World Int'l, LLC v. O'Toole*, 2020 WL 7041814, at *4 (E.D. Mo. 2020); *Ross v. Sioux Honey Ass'n, Co-op.*, 2013 WL 146367, at *18 n.9 (N.D. Cal. 2013) (rejecting "conclusory statements" regarding materiality under *Iqbal*).

### C. Plaintiffs Do Not Adequately Allege Scienter.

#### 1. Plaintiffs Must Plead Scienter to Avoid Preemption.

*Virtumundo* suggested that, to survive preemption, a claim must adequately allege "deceitfulness." *Omega*, 469 F.3d at 353-54 (fraud or deceit tort requires sender "knew" statements were false); 575 F.3d at 1059, 1061–1063 ("traditionally *tortious* or *wrongful* conduct" is needed); Br. 10-11. Plaintiffs themselves cite cases supporting this requirement. *See, e.g.*, *Member Source,* 2010 WL 1610066, at *5 (stressing importance of "*intentional* deception" to preemption exception); *Subscriberbase*, 2010 WL 1267763, at *11-13 (stressing

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 4
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

importance of "*material*, *intentional* misrepresentation" and "*intentional* deception" to survive preemption). This requirement accords with Congress's focus on persons "seek[ing] to defraud consumers," S. REP. 108-102, 2, by "purposefully" sending misleading information. 15 U.S.C. § 7701(a)(8); 15 U.S.C. § 7704(a)(2) (expressly requiring "knowledge" of falsity to impose liability).

2. <u>Plaintiffs Do Not Adequately Allege Scienter.</u>

Rather than plausibly plead scienter (Compl. ¶¶ 100-106; Br. 15), Plaintiffs *disclaim* that the Complaint "alleged fraud" or "sound[s] in fraud." Opp. 11. And they direct the Court to cases ostensibly confirming "[t]here is no requirement" to plead scienter under CEMA. *See Gordon*, 375 F. Supp. 2d at 1048 (cited at Opp. 1, 11); *accord Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *4 (W.D. Wash. 2009). These admissions are fatal. Because only claims premised on intentional misstatements survive preemption, the Complaint must be dismissed.

Plaintiffs' conclusory allegations that Defendants understated the length of advertised sales to create a "false sense of urgency" are properly disregarded, because they conflict with their own disclaimers. Compl. ¶¶ 2, 30, 53; Opp. 2-3, 10. To the extent the Court considers them, Plaintiffs' speculation that Defendants predetermined the ultimate length of each sale at the outset, then misstated its duration, is insufficient under Rule 8(a)(2). *Id*.

As an initial matter, no "facts [are] alleged from which this conclusion may reasonably be inferred." *Gray v. Twitter Inc.*, 2021 WL 11086642, at *6 (W.D. Wash. 2021). Therefore, Plaintiffs' "speculation stops short of the line between possibility and plausibility of entitlement to relief." *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018); *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016). Scienter allegations based on "mere speculation" are insufficient. *Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020).

The lone support Plaintiffs cite for fraudulent intent are emails extending certain sales. Opp. 2-3. But Plaintiffs fail to point to anything in those emails establishing Defendants knew *when the original email was sent* that the advertised sale period was false. *Id*. So, their

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 5
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

"unwarranted deductions of fact" and "unreasonable inferences" flunk Rule 8(a)(2)'s plausibility requirement. *In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *8 (W.D. Wash. 2024); *accord Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 363 (9th Cir. 2016). Critically, "[i]n evaluating plausibility, courts *must* also consider an 'obvious alternative explanation.'" *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844 (9th Cir. 2021). Retailers routinely extend sales where inventory remains; the mere extension of a sale does not amount to fraud. The Court "need not accept the conclusion" that Defendants defrauded Plaintiffs "when [their] actions are in line with lawful rational and competitive business strategy." *Id.*; *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Indeed, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability," the Ninth Circuit has held, "*Something more is needed*, such as facts *tending to exclude the possibility* that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020). But the Opposition points to nothing more—just emails extending an initial sale period. Opp. 10. Absent "something more" to support Plaintiffs' allegations of intent, the Complaint fails.

### D. Plaintiffs Confirm Their Claims Do Not Sound in Tort.

To survive preemption without triggering Rule 9(b), Plaintiffs advance conflicting positions. On the one hand, they admit only claims premised on traditional tort theories associated with fraud and deceit survive preemption. Opp. 6, 8; Br. 10-11. They thus proclaim their claims are "squarely in the vein of tort." Opp. 9. On the other hand, Plaintiffs disclaim the elements of traditional tort theories associated with fraud or deceit, which would require pleading *intentional* misrepresentations with particularity under Rule 9(b). Opp. 11; Br. 9. Plaintiffs cannot have it both ways. Their admission that their claims neither "sound in fraud" nor include allegations of fraud forecloses their attempt to invoke the preemption exception for misrepresentation torts associated with fraud and deceit.

Apart from this fatal admission, Plaintiffs' attempt to label their claims as "in the vein of tort" is foreclosed by *Omega* and *Virtumundo*. Opp. 9. *Omega* confirmed that scienter, reliance,

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 6
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

and injury are cornerstones of tort theories like fraud and deceit, 469 F.3d at 354; Br. 9; the Ninth Circuit relied on *Omega* and adopted its conclusions. *Virtumundo*, 575 F.3d at 1061. Yet, Plaintiffs fail to point to *any* allegations in the Complaint pleading these elements. Opp. 6-12.

*Beyond Systems, Inc.*, cited by Plaintiffs (Opp. 8-9), also supports preemption. There, the Fourth Circuit concluded that claims under California and Maryland's anti-spam statutes were "in the vein of a tort" because those statutes did *not* "exempt" "common law principles," including "causation" and other elements "necessary to compose a *complete regime* of tort liability." 777 F.3d at 717. But Plaintiffs admit their CEMA claim is the opposite of this "complete regime." *Id*. In fact, in the absence of CAN-SPAM, Plaintiffs posit that CEMA would include no scienter, reliance, or injury requirement *at all*, *see* RCW § 19.190.020. Opp. 11. For this exact reason, *Subscriberbase Inc.*, cited by Plaintiff (Opp. 9), deemed California's anti-spam statute, which imposes a scienter requirement, to be "*quite distinct* from the Washington statute in *Virtumundo,*" which Plaintiff argues imposes none. 2010 WL 1267763, at *11. Similarly, *Harbers v. Eddie Bauer, LLC*, cited by Plaintiffs (Opp. 9), deemed of "particular relevance" the *contrast* between Maryland's anti-spam statute—which requires proof of actual injury—and CEMA, which does *not* require "injury or causation" and instead purportedly imposes strict liability. 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019). *Harbers* thus analogized CEMA claims that are based on strict liability (as opposed to a fraud theory) to a "nuisance" claim. *Id*. at 1008. Because Plaintiffs expressly try to pursue a strict liability theory without pleading essential elements of a fraud or deceit claim, including scienter, their claim is preempted.

Finally, Plaintiffs erroneously assert that *Brown* implicitly concluded that CEMA claims sound in "tort" (Opp. 9), because the Court foreclosed claims based on "puffery." *Brown*, 567 P.3d at 47. But the Court dismissed puffery on different grounds, and never hinted CEMA imposes a complete regime of tort liability. *Id*.

### E. Plaintiffs' Fail to Plead Reliance and Injury.

Apart from scienter and materiality, the Complaint is separately preempted because it does not adequately allege reliance and injury.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 7
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Plaintiffs concede two dispositive facts. First, CEMA itself does not require proof of reliance or injury. Br. 12; *Isomedia*, 2009 WL 10676391, at *4; *Gordon*, 375 F. Supp. at 1048 (cited at Opp. 1, 11). And second, the Complaint does not plead those elements. Br. 15; Opp. 8-11. Plaintiffs counter that reliance and injury are unnecessary to survive preemption, but their cited authorities directly conflict with the reasoning in *Virtumundo*, in six key respects. *Virtumundo* is controlling authority and contrary district court case law should be disregarded.

***First***, the authorities cited erred by "broad[ly]" reading the preemption exception as "not limited *just* to common-law fraud and other similar torts." *Asis Internet Servs. v. Consumerbargaingiveaways, LLC,* 622 F. Supp. 2d at 941-42 (N.D. Cal. 2009); *Hypertouch, Inc. v. ValueClick, Inc.,* 192 Cal. App. 4th 805, 826 (2011). *Virtumundo* forecloses this "broader" reading. 575 F.3d at 1061-63 (Congress created a "*limited*, narrow exception" for claims involving "traditional tort theories" like fraud or deceit).

***Second***, Plaintiffs' cited cases drew inferences from the text of the preemption provision that the Ninth Circuit expressly rejected. Opp. 9-10. In *Consumerbargaingiveaways*, the court attached controlling significance to the term, "fraud," in Section 7701(b)(2), and its omission in Section 7707(b)(1). Based on this disparate language, the court assumed Congress intended the preemption exception in Section 7707(b)(1) to extend *beyond* traditional misrepresentation torts. 622 F. Supp. 2d at 942. Similarly, in *Hypertouch*, the court concluded that the use of the disjunctive, "falsity *or* deception" and "fraudulent *or* deceptive ... subject lines," meant that Congress did not intend to limit the preemption to traditional fraud claims, for which reliance and injury are necessary. 192 Cal. App. 4th at 826-27; Opp. 10-11.

But the Fourth Circuit and the Ninth Circuit rejected this reading. In *Omega*, the Fourth Circuit stressed that the "maxim of *noscitur a sociis*" applies in "the context of disjunctive lists," and that the above "pre-emption clause links 'falsity' with 'deception'—one of the several tort actions based upon misrepresentations." 469 F.3d at 354. The Ninth Circuit relied upon and adopted *Omega*'s reasoning and conclusions. *See Virtumundo*, 575 F.3d at 1061. Although the Fourth Circuit was able to affirm dismissal solely based on materiality—the issue on appeal— the court stressed that fraud and deceit claims also require reliance and injury. *Omega*, 469 F.3d

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 8
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

at 354.  As a result, the logical reading of the disjunctive clause, "falsity or deception," is that only claims involving reliance and injury survive preemption.  Br. 8-9.

***Third***, Plaintiffs' cited cases err by purporting to find ambiguity in *Virtumundo* where there is none.  Opp. 9.  In *Subscriberbase Inc.*, 2010 WL 1267763, at *10, and *Member Source*, 2010 WL 1610066, at *2, the court presumed *Virtumundo* failed to resolve whether claims premised on harmless misstatements survive preemption.  To the contrary, the Ninth Circuit stated unequivocally, "[A]llowing a state to attach liability to *bare immaterial error*" would be "inconsistent with the federal Act's preemption text," "structure," and "purpose." 575 F.3d at 1061 (claims based on "mere error" or "insignificant inaccuracies" preempted).

Other language in *Omega* and *Virtumundo* also underscores the importance of reliance and injury.  In *Omega*, the Fourth Circuit concluded CAN-SPAM preempted claims based on an Oklahoma analogue to CEMA that, like CEMA, "reach[ed] beyond common law fraud or deceit"—torts that require reliance and injury.  469 F.3d at 353.  The Fourth Circuit stressed that the Oklahoma statute was "not limited to inaccuracies" that "led to *detrimental reliance*" by the recipient.  *Id*.  Nor did the plaintiff's claim allege reliance, injury, materiality, or scienter—cornerstones of a traditional fraud or deceit claim.  Accordingly, plaintiff's claim was not based on "one of the several tort actions based upon misrepresentations." *Id.* at 353-54.  In *Virtumundo*, the Ninth Circuit likewise stressed that plaintiff "was not in any way misled or deceived," i.e., there was no detrimental reliance.  575 F.3d at 1063.

*Kleffman* emphasized the importance of detrimental reliance even more resoundingly.  It found the plaintiff's claims were "clearly preempted" because the complaint "does not allege a traditional tort theory at all, *or even that he was at any point mislead by any of the eleven Vonage emails*."  *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, *3 (C.D. Cal. 2007).  Plaintiffs' attempt to dismiss this ruling as "dicta" is unconvincing: the court devoted more space to preemption than any other substantive issue.  *Id*. at *2-3; Opp. 10.  And while Plaintiffs observe, "*Kleffman* was decided before *Virtumundo*" (Opp. 10), they ignore the Ninth Circuit twice invoked *Kleffman's* preemption analysis.  *Virtumundo*, 575 F.3d at 1063-64.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 9
(Case No.  2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

***Fourth***, Plaintiffs' cited authorities err by reading the preemption exception coextensively with the Federal Trade Commission Act—a statute that imposes strict liability *without* proof of fraudulent intent. *Consumerbargaingiveaways, LLC.*, 622 F. Supp. 2d at 942; *Hypertouch*, 192 Cal. App. 4th at 827. But courts, including the Fourth Circuit and Ninth Circuit, have stressed the importance of scienter in this context. *Supra* at § I.C.2.

***Fifth***, Plaintiffs' cited authorities err by concluding Plaintiffs' theory comports with Congress's aims. *Member Source*, 2010 WL 1610066, at *3; *Subscriberbase Inc.*, 2010 WL 1267763, at *12; *Hypertouch*, 192 Cal. App. 4th at 829; Opp. 9. But if claims premised on harmless misstatements survive preemption, "[t]he strict liability standard imposed by a state such as [Washington] would become a *de facto* national standard, with all the burdens that imposed, even though the CAN–SPAM Act indicates that Congress believed a less demanding standard would best balance the competing interests at stake." *Omega*, 469 F.3d at 356; *accord Virtumundo*, 575 F.3d at 1061. Indeed, as Plaintiffs admit, their theory would enable *any* individual state to unilaterally "broadens the class of persons who may be held responsible" for sending emails with misleading subject lines and thus upend the delicate balance Congress struck. Opp. 11 (citing *Hypertouch*, 192 Cal. App. 4th at 829).

Plaintiffs counter that permitting claims where there is no reliance or injury would not disturb the national standard Congress created, because those elements have nothing to do with the content of the email. Opp. 11. But permitting states to impose "different [liability] standards"—with some requiring reliance, others requiring actual injury, others requiring neither, and still others requiring both—is the *opposite* of "one national standard" and would sow the very confusion Congress sought to avoid. *See Virtumundo*, 575 F.3d at 1063.

***Finally***, *Hoang*, cited by Plaintiff (Opp. 9), erred by similarly misconstruing the explicit purpose of the preemption proviso. 2010 WL 1340535, at *5. *Hoang* assumed Congress intended to exempt from preemption claims where there was no reliance or injury because Congress: (i) "is presumed to have been aware of [CEMA]" when it enacted CAN–SPAM; but (ii) did not expressly state that such claims are preempted. *Id*. But again, Congress's language confirms that only traditional tort theories, which require reliance and injury, survive

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 10
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

preemption. *Supra* at § I.D. Compounding this error, *Hoang* ignored that CAN-SPAM was intended to *eliminate*—not perpetuate—the "ineffective" "patchwork" of "different standards and requirements" that Washington and other states had enacted. *Virtumundo*, 575 F.3d at 1062-63.

## II. PLAINTIFFS' CPA CLAIM FAILS

Because Plaintiffs' CEMA claim must be dismissed, the same is true of their CPA claim, which is expressly and solely predicated on a violation of CEMA. Compl. ¶¶ 109-112.

## III. PLAINTIFFS' RULE 12(G)(2) OBJECTION IS MERITLESS

Plaintiffs' objection under Rule 12(g)(2) elevates form over substance. Plaintiffs ask the Court to consider the arguments raised by this motion in a subsequent motion for judgment on the pleadings, rather than now—thus requiring the parties to re-brief (and the Court to re-review) the same arguments under the same legal standard all over again. That alternative should be rejected for several reasons.

***First***, Plaintiffs assert this Court's decision to deny Defendant's first motion to dismiss "without prejudice" has "no bearing on the Rule 12(g)(2) analysis." Opp. 17. This makes no sense. The phrase "without prejudice" would have been meaningless if the Court's Order foreclosed a subsequent motion to dismiss. Br. 21-22. Plaintiffs' Rule 12(g) objection thus fails at the threshold.

***Second***, Plaintiffs concede the Ninth Circuit adopts a "forgiving" rather than "rigid" approach (Opp. 16), and thus rejects a second motion to dismiss *only* when brought for a "strategically abusive purpose," or when concrete prejudice is identified. *Leishman v. Washington Att'y Gen.'s Off.*, 2023 WL 7166183, at *4 (W.D. Wash. 2023). Here, Plaintiffs allege neither. The empty formalism they urge contravenes the Ninth Circuit's "more flexible and efficiency-oriented" approach. *Milstead v. Gen. Motors LLC*, 2023 WL 4410502, at *7 (N.D. Cal. 2023).

***Third***, Plaintiffs have no answer to Defendants' arguments that forcing them to "repeat the briefing they have already undertaken" in a Rule 12(c) motion would cause "unnecessary and costly delays" and "expense," "slow down the case," and thus contravene Rule 1. *Leishman*,

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 11
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

2023 WL 7166183, at *3; *Miller v. Sawant,* 2022 WL 2718059, at *4 (W.D. Wash. 2022) (rejecting Rule 12(g)(2) objection even where defendant "fails to articulate a persuasive reason" for failing to present issue earlier); *Brown v. Transworld Sys., Inc.*, 2024 WL 4201976, at *5 (W.D. Wash. 2024). Requiring Defendants to "jump through an extra procedural hurdle to end up in the same place" is the epitome of inefficiency. *Reflex Media, Inc. v. Luxy Ltd.*, 2021 WL 4134839, at *2 (C.D. Cal. 2021).

Importantly, Plaintiffs themselves decided to have their Rule 12(g)(2) objection briefed as *part of this motion* on May 20, 2025, after they reviewed Defendants' detailed arguments explaining why their objection failed.[2] *See* Declaration of Damon C. Elder ("Elder Decl."), ¶ 3, Ex. 2. Plaintiffs' strategic choice means that, *if* their objection succeeds, Defendants' preemption argument would need to be briefed and considered twice—a pointless inefficiency.

**Fourth**, Plaintiffs' insistence that Defendants could have raised preemption earlier ignores the subsequent shift in the legal terrain. Opp. 18; Br. 22. When Defendants initially moved to dismiss, the lone case addressing CEMA's scope required dismissal of the Complaint on CEMA's own terms. *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1093 (W.D. Wash. 2023). Rejecting *Chen*, the Supreme Court clarified—for the first time—CEMA's expansive reach. *Plaintiffs' own* extensive citation of *Brown* to oppose preemption underscores its significance. Opp. 7 ("What matters is the Washington Supreme Court's explanation that misleading subject lines that would not be material to consumers do not create liability under CEMA."). As *Brown* reset CEMA's legal landscape, "it is reasonable for the court to consider more fully how [the Supreme Court's] holding impacts the viability" of Plaintiffs' claims. *Banko v. Apple, Inc.*, 2013 WL 6623913, at *2 (N.D. Cal. 2013). This Court explicitly permitted this possibility when it denied Defendants' first motion to dismiss without prejudice.

---

[2] Plaintiffs misleadingly assert Defendants were "on notice" of a Rule 12(g) procedural bar. Opp. 17. They omit that (1) Defendants provided them a recitation of authority contrary to their position in a draft JSR, and (2) Defendants asked Plaintiffs whether they preferred to raise their procedural objection *before* the motion was filed, and Plaintiffs *chose* to have Defendants file the motion and litigate this procedural issue as part of the motion. *See* Elder Decl. ¶¶ 2-3, Exs. 1-3 (attaching additional parts of the email correspondence omitted by Plaintiffs).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 12
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

***Finally***, none of Plaintiffs' authorities involves an intervening decision of a State Supreme Court construing the operative statute. Instead, each involved inapposite facts—i.e., a motion presenting the "[same] argument again," *Fairhaven Health, LLC v. BioOrigyn, LLC*, 2021 WL 5987023, at *6 (W.D. Wash. 2021), a *fourth* motion to dismiss, *De Coster v. Amazon.com, Inc.*, 2024 WL 4949037, at *6 (W.D. Wash. 2024), and a motion based entirely on previously-available arguments. *Fair v. King Cnty.*, 2024 WL 4476616, at *7 (W.D. Wash. 2024). In any event, Plaintiffs have no answer to the extensive jurisprudence permitting a second motion to dismiss *even when* the defendant "could have" raised an argument earlier. Br. 23-24.[3]

## IV. CONCLUSION

Defendants request that the Court dismiss the Complaint with prejudice. Because Plaintiffs' strict liability theory cannot survive preemption on *any* set of facts, amendment would be futile. *Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1163 (W.D. Wash. 2014).

DATED this 27th day of June, 2025.

*I certify that this memorandum contains 4,179 words, in compliance with the Local Civil Rules*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Damon C. Elder*
Damon C. Elder, WSBA No. 46754
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: damon.elder@morganlewis.com
andrew.decarlow@morganlewis.com

Ari Micah Selman (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0060
Phone: (212) 309-6000
Email: ari.selman@morganlewis.com

*Counsel for Defendants*

---

[3] To the extent Plaintiffs argue discovery may be delayed, that argument is premature: the parties are conferring on the scope of discovery, and whether a discovery stay is warranted.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS – PAGE 13
(Case No. 2:23-cv-00781-JHC)

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401